*Let This be Filed* ~~1~~ 9/12/19

wdm

O R I G I N A L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA  . DOCKET NO. CR 89-162-1, -2,
                          . -3, -4, -5, -6, -10, -19, -20
                          . -22, -23  *order*
          VS.             . WASHINGTON, D.C. *Tuesday, Feb 20, 1990*
                          . ~~WEDNESDAY, NOVEMBER 29, 1989~~
RAYFUL EDMOND, III, <u>ET AL.</u>,  . 10:00 A.M.
                          .
          DEFENDANTS.     .
. . . . . . . . . . . . . .

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE CHARLES R. RICHE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:          BETTY ANN SOIEFER, ESQ.

FOR THE DEFENDANTS:

  JERRY MILLINGTON #5        JOSEPH CONTE, ESQ.

COURT REPORTER:             WILLIAM D. MC ALLISTER
                            OFFICIAL COURT REPORTER
                            ROOM 4806-B, U.S. COURTHOUSE
                            WASHINGTON, D.C. 20001
                            (202) 371-6446

PROCEEDINGS RECORDED BY STENOMASK, TRANSCRIPT PRODUCED
FROM DICTATION

PAGES 1 THROUGH 119

# FILED

### SEP 1 2 2019

Clerk, U.S. District and
Bankruptcy Courts

P R O C E E D I N G S

(DEFENDANT PRESENT.)

THE CLERK:  THIS IS THE CASE IN THE MATTER OF UNITED STATES OF AMERICA VERSUS JERRY MILLINGTON.  CRIMINAL NUMBER 89-162-05.  FOR THE GOVERNMENT, BETTY ANN SOIEFER.  FOR THE DEFENDANT, JOSEPH CONTE.

MR. CONTE:  GOOD MORNING, YOUR HONOR.  AS WE DISCUSSED EARLIER, I AM GOING TO ASK FOR A CONTINUANCE IN THIS MATTER FOR SEVERAL REASONS.  ONE, THE GOVERNMENT, THE PROBATION OFFICER AND I MET THIS MORNING AT 8:30. AS THE COURT KNOWS, WE ARE AT A POSITION WHERE WE STILL HAVE NUMEROUS DIFFERENCES OF OPINION AS TO THE EVIDENCE ADDUCED AT TRIAL AND THE EVIDENCE THAT SHOULD GO INTO THE PRE-SENTENCE REPORT.  I HAVE NOT FULLY HAD TIME TO SYNOPSIZE THOSE DIFFERENCES SO THAT I CAN PRESENT A UNIFIED POSITION AT SENTENCING.

SECONDLY, YOUR HONOR, MY CLIENT WAS AWAKEN AT 2:00 A.M. THIS MORNING TO TRAVEL HERE FROM PETERSBURG.  HE HAS NOT HAD DINNER SINCE LAST EVENING, AND I'M NOT SURE THAT HE HIMSELF IS PHYSICALLY PREPARED TO PROCEED TO SENTENCING UNDER THOSE CIRCUMSTANCES.

THE COURT:  MR. CONTE, YOU FILED ON FEBRUARY 12, AND THIS IS FEBRUARY 20, A COMPREHENSIVE MEMORANDUM WHICH WAS SUBMITTED TO ME CONCERNING ALLEGED FACTUAL INACCURACIES IN THE PRE-SENTENCE INVESTIGATION REPORT AND A RESPONSE TO THE GOVERNMENT'S MEMORANDUM CONCERNING THE SAME AND THE ADDENDUM TO

1  THE P.S.I.

2  THE COURT HAD REVIEWED SOME EIGHT, I THINK, IN

3  SUMMARY FASHION, ARGUMENTS YOU'VE MADE AND ALSO HAS JUST HAD A

4  DISCUSSION WITH THE PROBATION OFFICERS WHO HAVE ADVISED THAT

5  YOU WERE GOING TO MOVED TO STRICT THE PORTION OF THE OFFENSE

6  CONDUCT SECTION DEALING WITH THE MATTERS PERTAINING TO MS.

7  DEBORAH PHILLIPS.

8  MR. CONTE:  THAT'S CORRECT.

9  THE COURT:  I DON'T KNOW WHAT OTHER ARGUMENT YOU

10  COULD MAKE.  I DO WANT TO ADVISE YOU THAT YOUR ARGUMENT ABOUT

11  THE YOUTH CORRECTIONS ACT CONVICTION OF YOUR CLIENT HAS BEEN

12  ARGUED BEFORE ON BEHALF OF OTHER CLIENTS.

13  ONE OF THE LAWYERS WITHDREW THAT AFTER CONSULTING

14  WITH THE GUIDELINES AND ADMITTED CORRECTLY THAT A SET-ASIDE OF

15  A Y.C.A. CONVICTION IS NOT AN EXPUNGEMENT AND MUST BE COUNTED.

16  SO THAT'S A FRIVOLOUS ARGUMENT FOR ANY LAWYER TO MAKE.

17  MR. CONTE:  YOUR HONOR, I THINK THE ARGUMENT THAT

18  I'M MAKING, AND I DON'T DISAGREE THAT A SET-ASIDE SHOULD BE

19  COUNTED.  IT'S IN THE GUIDELINES UNDER THE OFFENSE SECTION THAT

20  SPECIFICALLY STATES THAT SET-ASIDE CONVICTIONS SHOULD BE

21  COUNTED.

22  THE COURT:  SHOULD BE COUNTED.

23  MR. CONTE:  SHOULD BE COUNTED, YES, YOUR HONOR.

24  THE COURT:  YOU'RE RIGHT.

25  MR. CONTE:  OUR CONTENTION IS THAT IT WAS AN

1  INDETERMINANT SENTENCE AND THE GUIDELINES REQUIRE A SENTENCE OF

2  ONE YEAR OR MORE.

3          THE COURT:  YOUR CLIENT SERVED MORE THAN A YEAR, DID

4  HE NOT?

5          MR. CONTE:  YES, YOUR HONOR, BUT THE GUIDELINES SAY A

6  SENTENCE OF A YEAR OR MORE, AND THE SENTENCE WAS AN

7  INDETERMINANT YOUTH ACT SENTENCE.

8          THE COURT:  I UNDERSTAND THAT, MR. CONTE, AND THAT

9  ARGUMENT HAS BEEN WITHDRAWN ALSO, AND TO THE EXTENT THAT YOU

10  REQUIRE THE COURT TO RULE, THAT'S OVERRULED AND DENIED.  THAT

11  WILL BE COUNTED.

12          I KNOW WHAT YOUR ARGUMENTS ARE, AND YOUR REQUEST FOR

13  A CONTINUANCE IS DENIED.  YOU'VE HAD THIS P.S.I. SINCE FEBRUARY

14  2 AND HAD MORE THAN AMPLE TIME TO CONSIDER IT.  YOU WERE

15  OFFERED AN OPPORTUNITY TO GO TO PETERSBURG WITH THE DEFENSE

16  LAWYERS.  YOU ELECTED NOT TO GO.  YOU WENT DOWN ON YOUR OWN,

17  DID NOT GET YOUR CLIENT TO SIGN IT BECAUSE I WAS ADVISED BY THE

18  PROBATION OFFICER YOU FORGOT IT.

19          MR. CONTE:  THAT'S CORRECT, YOUR HONOR.

20          THE COURT:  THAT'S ALL RIGHT.  NO SIN IN THAT.  I

21  MERELY ASK YOU TO GET YOUR CLIENT TO SIGN IT NOW.

22          MR. CONTE:  I CAN DO THAT.  LET ME JUST STATE, YOUR

23  HONOR --

24          THE COURT:  IT'S IN HIS INTEREST -- IT'S IN YOUR

25  CLIENT'S INTEREST TO KNOW WHAT HIS SENTENCE IS GOING TO BE.

1          ISN'T THAT RIGHT, MR. MILLINGTON?

2          THE DEFENDANT:  YES, SIR.

3          MR. CONTE:  WE DON'T DISAGREE WITH THAT, YOUR HONOR.

4    I DO HAVE A FEW THINGS TO SAY IN THAT REGARD, THOUGH --

5          THE COURT:  YOU CAN SAY ANYTHING YOU WANT.

6          MR. CONTE:  AT THE TIME OF THE BUS TRIP WHICH THE

7    COURT ARRANGED, MY CLIENT'S PRE-SENTENCE REPORT WAS NOT EVEN

8    DONE AT THAT TIME.

9          THE COURT:  WHAT WAS THE DATE YOU WENT TO PETERSBURG?

10         MR. HUNT:  I BELIEVE IT WAS THE 31ST OF JANUARY.

11         THE COURT:  THAT'S RIGHT.

12         MR. HUNT:  THE PRE-SENTENCE WASN'T COMPLETED.

13         THE COURT:  THE REASON IT WAS NOT DONE THEN WAS

14   BECAUSE YOU WENT ON VACATION.

15         MR. HUNT:  YOUR HONOR, IT WAS REASSIGNED FROM MR.

16   TERZA TO MYSELF.

17         THE COURT:  AND YOU TOLD MR. CONTE YOU WERE GOING ON

18   VACATION BEFOREHAND, WOULD THAT BE ALL RIGHT WITH HIM TO

19   POSTPONE IT UNTIL THE 2ND, AND HE SAID YES, IS THAT RIGHT?

20         MR. HUNT:  THAT IS RIGHT.

21         MR. CONTE:  I HAVE NO OBJECTION TO MR. HUNT TAKING A

22   VACATION, YOUR HONOR.

23         THE COURT:  WELL, YOU TOLD HIM IT WAS ALL RIGHT TO

24   GET IT BY THE 2ND OF FEBRUARY.

25         MR. CONTE:  THAT IS CORRECT, YOUR HONOR, AND I GOT IT

1 THE 2ND OF FEBRUARY, I TRAVELED MYSELF TO PETERSBURG AND SPOKE

2 TO MR. MILLINGTON AT LENGTH ON THE 4TH. I FILED MY RESPONSES,

3 AS THE COURT MAY NOTE, WITHIN THE 10 DAYS REQUIRED BY TITLE 18,

4 UNITED STATE CODE.

5 I DID NOT HAVE THE OPPORTUNITY OR I DID NOT MEET WITH

6 THE PROBATION OFFICE AND MS. SOIEFER UNTIL THIS MORNING. I WAS

7 ANTICIPATING SENTENCING ON MARCH 1ST PURSUANT TO THIS COURT

8 ORDER.

9 THE COURT: PURSUANT TO WHAT?

10 MR. CONTE: THE ORDER OF THIS COURT.

11 THE COURT: THAT WAS A MISTAKE AND YOU WERE ADVISED

12 OF THAT SEVERAL DAYS AGO BECAUSE YOU KNOW AND KNEW THAT I HAD

13 ALREADY SET THE TRIAL TO BEGIN ON MONDAY, FEBRUARY 26.

14 MR. CONTE: I KNEW THAT. I JUST ASSUMED THAT MY

15 SENTENCING WOULD BE DURING A LUNCH BREAK IN THAT TRIAL.

16 THE COURT: I REALLY CAN'T DO THAT WITH ALL THESE

17 OBJECTIONS YOU HAVE MADE. THERE IS NO WAY WE CAN DO IT. AS

18 YOUR CLIENT JUST SAID A MOMENT AGO, HE WANTS TO BE SENTENCED

19 NOW.

20 ISN'T THAT RIGHT, MR. MILLINGTON?

21 DEFENDANT MILLINGTON: YES, SIR.

22 MR. CONTE: I DON'T THINK MY CLIENT --

23 THE COURT: HE JUST SAID SO TWICE.

24 MR. CONTE: MAY I CONSULT WITH MY CLIENT, YOUR HONOR?

25 THE COURT: ALL RIGHT. DO YOU WANT TO GO TELL HIM

1   NOT TO SAY THAT?  HE SAID IT TWICE. --

2       (PAUSE.)

3           MR. CONTE:  VERY WELL, YOUR HONOR.  OVER MY REQUEST

4   TO THE CONTRARY, MY CLIENT IS WILLING TO PROCEED TODAY.

5           THE COURT:  ALL RIGHT.  THANK YOU.  LET'S PROCEED.

6           DO YOU HAVE ANYTHING TO SAY BEFORE THE COURT IMPOSES

7   SENTENCE OTHER THAN WHAT IS IN YOUR MEMORANDUM?

8           MR. CONTE:  YES, YOUR HONOR.  EVERYTHING IN MY

9   MEMORANDUM I THINK NEEDS TO BE DISCUSSED TODAY, YOUR HONOR.

10          THE COURT:  ALL RIGHT.  I HAVE CONSIDERED THAT.  IS

11  THERE ANYTHING ELSE YOU WANT ME TO CONSIDER?

12          MR. CONTE:  IS THE COURT NOT GOING TO HEAR ANYTHING

13  ON MY MEMORANDUM?

14          THE COURT:  I HAVE REVIEWED YOUR MEMORANDUM MOST

15  CAREFULLY.  I HAVE MADE NOTES ON IT.

16          MR. CONTE:  MAY I CONFER WITH MY CLIENT?

17          THE COURT:  SURELY, AND THE PROBATION OFFICER HAS

18  CONSIDERED IT, TOO.

19          MR. CONTE:  YOUR HONOR, WE HAVE AGREED THAT PAGE 1

20  WILL BE AMENDED TO REFLECT 1009 PECONIC PLACE.

21          THE COURT:  1009?

22          MR. CONTE:  THAT IS CORRECT, YOUR HONOR.

23          THE COURT:  OKAY.  FINE.

24          MR. CONTE:  YOUR HONOR, WE ARE AT A DISAGREEMENT AS

25  TO PAGE 2.

1          THE COURT:  YES.

2          MR. CONTE:  THE LANGUAGE OF THE VERY FIRST SENTENCE,

3    WHICH IS A LONG SENTENCE WHICH ENDS ABOUT TWO-THIRDS OF THE WAY

4    DOWN THE PARAGRAPH WITH THE LINE SECTION 883 --

5          THE COURT:  GIVE ME THE LINE.

6          MR. CONTE:  YOUR HONOR, IT IS THE WHOLE FIRST LINE,

7    AND IT RUNS FOR --

8          THE COURT:  JUST TELL ME WHAT LINE IT IS, SIR.

9          MR. CONTE:  THE FIRST LINE, IT IS THE FIRST 23 LINES.

10   IT IS ONE SENTENCE ENCOMPASSING 23 LINES.

11         THE COURT:  YES.

12         MR. CONTE:  NOW, THAT SENTENCE SAYS, IN THE PLAIN

13   ENGLISH LANGUAGE TRANSLATION OF THAT SENTENCE, THAT MY CLIENT

14   WAS CHARGED WITH CONTINUING CRIMINAL ENTERPRISE, CONSPIRACY,

15   ALL THE OFFENSES LISTED IN THAT FIRST SENTENCE.

16         THE PLAIN ENGLISH LANGUAGE TRANSLATION OF THAT

17   SENTENCE SAYS THAT MY CLIENT WAS CHARGED WITH EACH OF THOSE

18   OFFENSES, WHICH IS NOT CORRECT.  MY CLIENT WAS ONLY CHARGED

19   WITH TWO OFFENSES OUT OF THE ENTIRE INDICTMENT.

20         NOW, MR. HUNT HAS ADVISED --

21         THE COURT:  THAT IS NOT CORRECT.  YOUR CLIENT WAS

22   ONLY CONVICTED THUS FAR OF TWO COUNTS IN THE WHOLE INDICTMENT.

23         MR. CONTE:  WELL, WE ARE TALKING ABOUT THE RETYPED

24   INDICTMENT, YOUR HONOR.

25         THE COURT:  CORRECT.  AND I UNDERSTAND THAT HE IS NOT

1   CHARGED WITH THE CRIME OF CONTINUING CRIMINAL ENTERPRISE.  THE

2   COURT UNDERSTANDS THAT.

3           MR. CONTE:  MY POSITION, YOUR HONOR, IS THIS PRE-

4   SENTENCE REPORT WILL GO IN HIS JACKET WITH THE FEDERAL

5   CORRECTIONAL INSTITUTE.  IT WILL BE PART OF HIS RECORD.

6           THE COURT:  WHAT YOU DON'T UNDERSTAND, MR.

7   MILLINGTON, IS THIS.  YES, THE PRE-SENTENCE INVESTIGATION

8   REPORT DOES FOLLOW A DEFENDANT THROUGHOUT HIS INCARCERATION.

9           HOWEVER, LET ME SAY TO YOU, YOU ARE CORRECT, THAT THE

10  FIRST SENTENCE DOES MAKE IT APPEAR THAT YOUR CLIENT AND SOME

11  OTHERS WERE CHARGED WITH VIOLATING COUNT 1, AND TO THE EXTENT

12  THAT THAT IS SO, IF IT IS SO, THAT IS A MISTAKE, AND I HAVE

13  ALWAYS CONSIDERED IT A MISTAKE.  YOU DON'T GIVE THE COURT ANY

14  CREDIT FOR REALIZING WHAT YOUR CLIENT IS CHARGED WITH.  THAT IS

15  NOT FAIR.

16          MR. CONTE:  YOUR HONOR, I KNOW THIS COURT KNOWS WHAT

17  MY CLIENT IS CHARGED WITH.  I AM CONCERNED WITH THE BUREAU OF

18  CORRECTIONS PEOPLE FOR THE NEXT --

19          THE COURT:  THERE IS NO SUCH THING AS THE BUREAU OF

20  CORRECTIONS.  IT IS THE FEDERAL BUREAU OF PRISONS IN CASE YOU

21  NEED TO KNOW.

22          MR. CONTE:  VERY WELL, YOUR HONOR.

23          THE COURT:  YOU'RE NOT IN THE SUPERIOR COURT ANY

24  MORE.  MAYBE YOU HAD BETTER GO BACK ACROSS THE STREET AND

25  PRACTICE LAW OVER THERE.

1          MR. CONTE:  MY APOLOGIES TO THE COURT.

2          THE COURT:  I WOULD THINK SO.  WHAT ELSE DO YOU HAVE?

3          MR. CONTE:  YOUR HONOR, ALL WE ARE ASKING IS THAT

4    THESE CHANGES BE TYPED AND INCLUDED IN THE REPORT.

5          THE COURT:  DID YOU TELL THAT TO THE PROBATION

6    OFFICE?

7          MR. CONTE:  YES.  THEIR POSITION IS THAT IT WOULD

8    ELONGATE THE REPORT TO TWO OR THREE PAGES, AND THAT TO SAVE

9    MONEY AND TIME, THAT THEY ARE NOT WILLING TO DO THAT.

10          THE COURT:  WELL, LET ME TELL YOU SOMETHING.  YOU ARE

11    PRESUMED TO KNOW THE LAW.  OTHERWISE, YOU ARE NOT ENTITLED TO

12    BE ON THE CRIMINAL JUSTICE ACT LIST OF APPROVED ATTORNEYS.  BUT

13    I AM GOING TO TELL YOU SOMETHING.  THE PRONOUNCEMENT OF

14    SENTENCE IS WHAT GOVERNS, NOT EVEN THE JUDGMENT AND COMMITMENT,

15    WITH RESPECT TO EACH DEFENDANT.

16          UNDER THE LAW, THE COURT REPORTER WILL PREPARE THE

17    VERSION OF WHAT THE COURT SAYS IN PRONOUNCING SENTENCE.  THAT

18    IS THE LAW THAT CONTROLS, AND THERE WILL BE NO CRIME OF

19    CONTINUING CRIMINAL ENTERPRISE INSOFAR AS YOUR CLIENT IS

20    CONCERNED.

21          NOW, PROCEED WITH YOUR NEXT POINT.

22          MR. CONTE:  VERY WELL, YOUR HONOR.  YOUR HONOR, PAGE

23    3, PARAGRAPH 5, WE DO NOT BELIEVE THAT THE GOVERNMENT EVER

24    ESTABLISHED THREE LEVELS OF RESPONSIBILITY WITHIN THE, QUOTE,

25    "EDMOND ORGANIZATION."

ajh

1          THE COURT:  ALL RIGHT.  NEXT?

2          MR. CONTE:  PAGE 3, PARAGRAPH 5.  YOUR HONOR, MY

3  CLIENT WAS CHARGED WITH POSSESSION WITH INTENT TO DISTRIBUTE

4  AND DISTRIBUTION IN EXCESS OF 5 KILOGRAMS OF A MIXTURE AND

5  SUBSTANCE CONTAINING A DETECTABLE AMOUNT OF COCAINE.

6          OUR POSITION IS, YOUR HONOR, THAT --

7          THE COURT:  PARDON ME.  WHERE IS THAT?

8          MR. CONTE:  THE COURT'S INDULGENCE.  IN THE SECOND

9  SENTENCE --

10          THE COURT:  THE SECOND SENTENCE, PAGE WHAT?

11          MR. CONTE:  PAGE 3, PARAGRAPH 5.

12          THE COURT:  THE SECOND SENTENCE.  THREE LEVELS OF

13  RESPONSIBILITY?

14          MR. CONTE:  YES, YOUR HONOR.

15          THE COURT:  LET ME TELL YOU ABOUT THOSE SENTENCES

16  STARTING WITH THE WORD YOU JUST MENTIONED, THERE WERE THREE

17  LEVELS OF RESPONSIBILITY.

18          THE QUESTION THAT IS PERTINENT IN CONNECTION WITH

19  SENTENCING, MR. CONTE, IS WHETHER YOUR CLIENT OR ANY OTHER

20  DEFENDANT PLAYED A MAJOR ROLE IN THE COMMISSION OF THE INSTANT

21  OFFENSE FOR WHICH HE STANDS CONVICTED BY THE JURY.

22          THAT IS THE QUESTION.  IT IS NOT WHAT THE GOVERNMENT

23  CALLED HIM.  IT IS THE WORD THAT I UTILIZED BASED ON THE TRIAL

24  TESTIMONY WHICH IS WHAT I AM GOING TO RELY ON IN DETERMINING

25  WHAT HIS APPROPRIATE AND PROPER ROLE IS IN THIS OFFENSE, AND I

1  CALL YOUR ATTENTION TO GUIDELINE 3B1.B.

2       THAT IS THE FACTUAL BASIS UPON WHICH THE COURT WILL

3  MAKE THAT DETERMINATION, NOT WHAT MS. SOIEFER SAID IN HER

4  OPENING STATEMENT, NOT WHAT MR. TAPP SAID IN HIS FINAL

5  ARGUMENT.

6       AS I TOLD YOU, I AM NOT GOING TO RELY ON THE RAW

7  FILES OR WHAT THE UNITED STATES PROBATION OFFICE RELIED UPON IN

8  CONNECTION WITH DEBORAH PHILLIPS OR ANYBODY ELSE, ALTHOUGH THAT

9  IS ENTIRELY APPROPRIATE AND PROPER FOR THEM TO DO SO, ENTIRELY

10 APPROPRIATE FOR THEM TO DO SO.  I JUST DON'T NEED IT IN THIS

11 CASE.

12      MR. CONTE:  THE COURT DOESN'T NEED IT TO IMPOSE

13 SENTENCE.  THE COURT CAN TAKE THE INFORMATION ADDUCED AT TRIAL.

14 BUT THERE IS A SECOND PROBLEM WITH THAT, YOUR HONOR.

15      THE COURT:  ALL RIGHT.  WHAT IS THAT?

16      MR. CONTE:  THAT IS THE PROBLEM I HAVE ADDRESSED

17 BEFORE, THE FACT THAT THIS PRE-SENTENCE REPORT WILL FOLLOW MR.

18 MILLINGTON FOR THE REST OF HIS LIFE.

19      THE COURT:  WELL, THE TRANSCRIPT WILL FOLLOW HIM THE

20 REST OF HIS LIFE, AND THAT WILL BE THE DETERMINING FACTOR, AND

21 I AM SURE YOU WILL AGREE WITH MR. NESBITT THAT THE COURT MAY,

22 WITH YOUR PERMISSION, PREPARE FULL POST-FINDINGS OF FACT AND

23 CONCLUSIONS OF LAW BASED ON THE TRIAL RECORD.  HOPEFULLY, IF IT

24 CAN FIND TIME, IT WILL DO SO, AND I ASSUME YOU HAVE NO

25 OBJECTIONS TO DOING THAT LATER.

1          MR. CONTE:  IF THE COURT INTENDS TO DO THAT, WE

2    WOULDN'T OBJECT CERTAINLY.

3          THE COURT:  OH, YOU WOULD.  WELL, NOBODY ELSE HAS

4    OBJECTED.

5          MR. CONTE:  WOULD NOT OBJECT, YOUR HONOR.

6          THE COURT:  ALL RIGHT.  THANK YOU.

7          MR. CONTE:  MORE IMPORTANTLY, YOUR HONOR, THE AMOUNT

8    OF THE SUBSTANCE ALLEGED IN THIS PARAGRAPH GOES TO THE

9    COMPUTATION OF THE GUIDELINE RANGE.

10          THE COURT:  IT SURE DOES, AND UNDER THE LAW,

11    CONSPIRACY, AS WELL AS THE GUIDELINES, THE QUANTITY OF DRUGS AS

12    DETERMINED BY THE PROBATION OFFICE AND CALCULATED UNDER THE

13    GUIDELINES PROVIDES THAT THE DEFENDANT IS RESPONSIBLE, NOT ONLY

14    FOR THE GUNS, BUT THE QUANTITY OF DRUGS AS FOUND BY THE JURY IN

15    CONNECTION WITH THE CONSPIRACY.

16          EACH DEFENDANT IS RESPONSIBLE FOR THE CONDUCT OF ALL

17    OTHERS IN CONNECTION WITH THE CONSPIRACY, AND THE CONDUCT OF

18    ALL MEMBERS OF THE CONSPIRACY IS ATTRIBUTABLE TO EACH AND EVERY

19    MEMBER OF THAT CONSPIRACY UNDERTAKEN IN CONNECTION WITH THE

20    CRIMINAL CONDUCT FOR WHICH THIS DEFENDANT HAS BEEN FOUND GUILTY

21    AND WHICH WAS REASONABLY FORESEEABLE BY THE DEFENDANT.

22          THE COURT HAS MADE A FINDING OF FACT, AND DOES SO

23    AGAIN, THAT MR. MILLINGTON NOT ONLY WAS A MEMBER OF THE

24    CONSPIRACY, BUT HE IS RESPONSIBLE FOR THE DRUGS, AS WELL AS THE

25    GUNS, IN EXCESS OF 5 KILOGRAMS OF COCAINE AND IN EXCESS OF 50

1  GRAMS OF COCAINE BASE OR CRACK.

2  THAT WAS REASONABLY FORESEEABLE BY HIM AND, AS I SAY,

3  HE IS RESPONSIBLE AS A MEMBER OF THIS CONSPIRACY FOR THE

4  CONDUCT OF OTHERS IN FURTHERING THE OBJECTS OF THE CONSPIRACY.

5  MR. CONTE:  VERY WELL, YOUR HONOR.  OUR POINT AGAIN

6  IS THAT HE WAS CHARGED WITH 5 KILOGRAMS OR MORE --

7  THE COURT:  THAT ARGUMENT HAS BEEN MADE AND REJECTED.

8  MR. CONTE:  VERY WELL, YOUR HONOR.  WE ARE JUST

9  PRESERVING OUR RIGHT ON APPEAL ON DUE PROCESS GROUNDS TO RAISE

10  THE ISSUE.

11  THE COURT:  YOU HAVE RAISED IT AND IT HAS BEEN

12  REJECTED.

13  MR. CONTE:  VERY WELL, YOUR HONOR.

14  THE COURT:  WHAT ELSE?

15  MR. CONTE:  YOUR HONOR, AS CONCERNS PAGE 3, PARAGRAPH

16  6, I RECALL NO TESTIMONY THAT MR. LEWIS WAS A PARTNER WITH MR.

17  EDMOND.

18  AS CONCERNS PAGE 3 AGAIN, PARAGRAPH 6, I RECALL NO

19  PROOF AT TRIAL THAT MR. LEWIS HAD AN OPERATION ON BATES STREET.

20  AS CONCERNS PAGES 3 TO 4, PARAGRAPH 6, THERE WAS NO

21  TESTIMONY THAT MR. BUTLER OBTAINED COCAINE FROM BRIAN BO

22  BENNETT AND THAT HE HAD A COLOMBIAN CONNECTION IN MARIO ERNESTO

23  VILLABONA AL VAREZ.

24  THE COURT:  I THINK YOU ARE CORRECT ABOUT THAT.

25  THOSE WAS NO TRIAL TESTIMONY, BUT THERE WAS EVIDENCE SUBMITTED

1 TO THIS JURY FROM WHICH A REASONABLE JURY COULD HAVE FOUND THAT

2 THESE DRUGS CAME FROM COLOMBIA BY VIRTUE OF THE WORDS "CALI" ON

3 THE COCAINE BLOCKS, THAT WERE COMING FROM CALIFORNIA TO

4 WASHINGTON, D.C. IS THAT NOT CORRECT, MS. SOIEFER? DO YOU

5 REMEMBER THOSE BLOCKS THAT SAID CALI ON THEM, AND THERE WAS A

6 BIG OBJECTION THAT THAT WAS PREJUDICIAL, AND SO ON, AND SO

7 FORTH? IT STILL CAME IN, WITH THE WORDS CALI ON THEM? DO YOU

8 REMEMBER THAT?

9 　　　　MS. SOIEFER: OF COURSE, I REMEMBER. THE GOVERNMENT

10 IS NOT RELYING ON THAT ARGUMENT ALONE WITH REGARD TO THE

11 FACTUAL BASIS FOR THAT PARAGRAPH.

12 　　　　THE COURT: WHAT ELSE, IF I MAY ASK?

13 　　　　MS. SOIEFER: WE HAVE PROFFERED PREVIOUSLY TO THE

14 COURT AN INDICTMENT FROM THE CENTRAL DISTRICT OF CALIFORNIA.

15 WE WILL DO THAT ONCE AGAIN WITH REGARD TO MR. MILLINGTON'S

16 SENTENCING.

17 　　　　THE COURT: FOR SOMEBODY THAT IS ABOUT TO BE ON

18 TRIAL?

19 　　　　MS. SOIEFER: THEY ARE IN TRIAL, YOUR HONOR. THEY

20 HAVE BEEN ON TRIAL FOR SOME TIME.

21 　　　　THE COURT: BENNETT, AND WHAT WERE THE OTHERS, AL

22 VAREZ ARE ON TRIAL OR ABOUT TO BE ON TRIAL?

23 　　　　MS. SOIEFER: YES, YOUR HONOR, MR. VILLABONA AND MR.

24 BENNETT ARE IN TRIAL IN LOS ANGELES. THE INDICTMENT

25 SPECIFICALLY STATES THAT MR. MELVIN BUTLER WAS AN UNINDICTED

1  CO-CONSPIRATOR IN THAT CASE, WHO TRANSPORTED COCAINE FOR BOTH

2  MR. BENNETT AND MR. VILLABONA.

3        THE COURT:  SO YOU HAVE TWO BASES FOR THIS FOR MR.

4  MILLINGTON.

5        MS. SOIEFER:  YES, YOUR HONOR.

6        MR. CONTE:  YOUR HONOR, FIRST OF ALL, AN INDICTMENT

7  IS NOT EVIDENCE, AS THE COURT WELL KNOWS.  SECOND OF ALL, THERE

8  HAS BEEN NO TESTIMONY OR ANY EVIDENCE THAT CONNECTS THE WORD

9  CALI TO EITHER MR. BENNETT OF MR. VILLABONA.

10        THE COURT:  WHY DID YOU OBJECT AT TRIAL THEN?

11        MR. CONTE:  I BEG YOUR PARDON, YOUR HONOR.

12        THE COURT:  WHY DID YOU OBJECT AT TRIAL THEN, IF IT

13  WASN'T PREJUDICIAL TO YOU?

14        MR. CONTE:  I DID OBJECT.

15        THE COURT:  YOU DIDN'T.

16        MR. CONTE:  I DID NOT OBJECT TO WHAT?

17        THE COURT:  TO THE WORD "CALI."

18        MR. CONTE:  I BELIEVE I DID OBJECT, AND IF I DIDN'T,

19  MS. LOBO OBJECTED AND I JOINED HER OBJECTION.

20        THE COURT:  I KNOW YOU OBJECTED.  I REMEMBER.  WHY

21  DID YOU OBJECT?  BECAUSE YOU DIDN'T WANT ANY EVIDENCE COMING IN

22  SHOWING THAT YOUR CLIENT HAD A CONNECTION WITH THE NATION OR

23  STATE OF COLOMBIA.

24        MR. CONTE:  YOUR HONOR, I OBJECTED BECAUSE THERE WAS

25  NOT AN ADEQUATE FOUNDATION TO LINK THAT TO MR. MILLINGTON.

1    THE COURT:  ALL RIGHT.  THANK YOU.  NEXT?

2        MR. CONTE:  PAGE 4, PARAGRAPH 6, I RECALL NO OTHER

3    PROOF THAT THE EDMOND ORGANIZATION PAID MR. BUTLER

4    APPROXIMATELY 10,000 FOR EACH KILOGRAM OF COCAINE OR THAT THEY

5    CAN SELL IT FOR $20,000.

6        THE COURT:  IF IT WOULD HELP YOU, I HAVE GOT, AS I

7    SAY, I HAVE READ EVERY PARAGRAPH OF YOUR MEMORANDUM.  IF YOU

8    WANT, WE WILL MAKE THAT A PART OF THE RECORD OF THIS CASE.  IT

9    ALREADY IS, IT IS A PLEADING FILED BY YOU.  YOU DON'T HAVE TO

10   STAND UP HERE AND REPEAT IT.

11       MR. CONTE:  YOUR HONOR, I WOULD LIKE TO EXPAND ON MY

12   PLEADINGS, YOUR HONOR.

13       THE COURT:  I AM NOT PREVENTING YOU FROM EXPANDING ON

14   ANYTHING.  JUST TELL ME WHAT YOU WANT THAT IS NOT IN THIS

15   MEMORANDUM THAT YOU HAVE FILED WITH THE COURT, WHICH YOU

16   OBVIOUSLY KNOW THE COURT HAS READ CAREFULLY.

17       MR. CONTE:  YOUR HONOR, WE ARE REQUESTING THAT THAT

18   PART BE DELETED.  THERE IS NO FOUNDATION IN THE RECORD.

19       THE COURT:  VERY WELL.  PROCEED.

20       MR. CONTE:  THE COURT'S INDULGENCE.  YOUR HONOR, AS

21   CONCERNS THE FOOTNOTE ON PAGE 4, THE COURT MAY RECALL THAT WE

22   NEVER HAD AN EXPERT WITNESS TESTIFY DURING THIS TRIAL ABOUT

23   COCAINE AND HOW MUCH COULD BE PRODUCED FROM A KILOGRAM OF

24   COCAINE.

25       THEREFORE, YOUR HONOR, WE BELIEVE THAT THE FOOTNOTE

1   IS INACCURATE, IT SHOULD BE DELETED, THAT THERE IS NOT

2   SUBSTANTIAL EVIDENCE AS TO BASE HOW MUCH MR. EDMOND'S

3   ORGANIZATION COULD HAVE MADE FROM ONE KILOGRAM OF COCAINE.

4          THE COURT:  NEXT?

5          MR. CONTE:  YOUR HONOR, WE OBJECT TO THE NAME OF ANY

6   UNCONVICTED CO-CONSPIRATOR BEING IN MY CLIENT'S REPORT.  THE

7   HARM WILL FOLLOW MR. MILLINGTON THROUGHOUT HIS LIFE.  IF MR.

8   STEWART AND MS. RACHELLE EDMOND ARE FOUND NOT GUILTY OF THESE

9   OFFENSES DURING THE NEXT TRIAL, THE DAMAGE WILL HAVE ALREADY

10  BEEN DONE TO MR. MILLINGTON.

11         THE COURT:  IN WHAT RESPECT?

12         MR. CONTE:  YOUR HONOR, THE REPORT IS GOING TO GO TO

13  THE BUREAU OF PRISONS.  IT WILL BE A PART OF HIS RECORD.

14         THE COURT:  IF RACHELLE EDMOND IS FOUND NOT GUILTY,

15  HOW IS THAT GOING TO HURT YOUR CLIENT?

16         MR. CONTE:  YOUR HONOR, JUST THE CONNECTION THAT MY

17  CLIENT WAS THE COMMON LAW WIFE OF RACHELLE EDMOND, AND NOW, IN

18  THIS REPORT, AS IT STANDS, FOR THIS REPORT MS. RACHELLE EDMOND

19  IS GUILTY OF THIS OFFENSE WHETHER SHE IS ULTIMATELY FOUND NOT

20  GUILTY OR NOT.

21         WE DON'T BELIEVE THAT HER NAME OR ANY UNTRIED --

22         THE COURT:  WHAT PARAGRAPH ARE YOU TALKING ABOUT?

23         MR. CONTE:  YOUR HONOR, RIGHT NOW -- I AM TALKING

24  ABOUT NUMEROUS PARAGRAPHS IN THE REPORT -- BUT RIGHT NOW I AM

25  ADDRESSING MR. MELVIN STEWART ON PAGE 4, PARAGRAPH 7.

1    THE COURT:  VERY WELL.  NEXT?

2    MR. CONTE:  MR. BUTLER'S CONFESSION TO THE CALIFORNIA

3  POLICE, YOUR HONOR, WE DON'T BELIEVE THAT SHOULD BE ADMITTED IN

4  THIS REPORT.  WE HAVE NEVER HAD THE OPPORTUNITY TO CROSS-

5  EXAMINE MR. BUTLER CONCERNING THIS STATEMENT.

6    WE WOULD SUBMIT, YOUR HONOR, THAT IT IS AKIN TO A

7  STATEMENT WITHOUT THE ABILITY FOR US TO CROSS-EXAMINE THE MAKER

8  OF THE STATEMENT AND, THEREFORE, SHOULD NOT BE INCLUDED.

9    THE COURT:  VERY WELL.  THANK YOU.  NEXT?

10    MR. CONTE:  THE COURT'S INDULGENCE.  YOUR HONOR, PAGE

11  5, PARAGRAPH 12, MR. BROOKS TESTIFIED AT TRIAL THAT WHEN HE

12  WENT TO CALIFORNIA, HE DID NOT REMEMBER WHO BESIDES MR. RAYFUL

13  EDMOND TRAVELED WITH HIM TO LOS ANGELES.  I BELIEVE THE

14  GOVERNMENT WOULD CONCUR IN THAT.

15    THE COURT:  IS THAT CORRECT OR INCORRECT, MS.

16  SOIEFER?

17    MS. SOIEFER:  CORRECT WITH AN EXPLANATION, YOUR

18  HONOR.  WITH THE COURT'S PERMISSION, I CAN EITHER ADDRESS EVERY

19  PARAGRAPH, AS MR. CONTE DOES, OR DO IT ALL AT ONCE.

20    THE COURT:  ALL RIGHT.  YOU CAN DO IT WHEN HE IS

21  FINISHED.  YOU CAN DO IT FOR EVERYONE.  LET HIM GO AHEAD.

22    MR. CONTE:  THE SAME GOES FOR PARAGRAPH 12 AT PAGE 5,

23  YOUR HONOR.  I DON'T RECALL MR. BROOKS TESTIFYING COLUMBUS

24  DANIELS AND MELVIN STEWART WERE PRESENT AT THE BAGGING CONTEST.

25    THE COURT:  NEXT?

1    MR. CONTE: AGAIN, YOUR HONOR, PAGE 5, PARAGRAPH 13,

2  THE LEVELS OF THE ORGANIZATION, THERE WAS NO PROOF DURING THE

3  TRIAL. I TALKED TO MS. SOIEFER. SHE SAYS IT IS AN INFERENCE

4  FROM THE EVIDENCE, AND WE STRONGLY OBJECT.

5    THE COURT: NEXT?

6    MR. CONTE: PARAGRAPH 5, PAGE 13, YOUR HONOR. WE

7  DON'T BELIEVE THERE IS ANY FOUNDATION IN THE RECORD THAT --

8    THE COURT: PARAGRAPH 5, PAGE 13, IS THAT WHAT YOU

9  SAID?

10    MR. CONTE: YES, YOUR HONOR -- THAT MR. MILLINGTON IS

11  A MANAGER OF THE ORGANIZATION. WE STRONGLY DISAGREE WITH THIS,

12  YOUR HONOR. WE BELIEVE THAT THERE SHOULD BE NO ADJUSTMENT FOR

13  ROLE IN THE OFFENSE, THAT THE EVIDENCE AT TRIAL JUST SIMPLY DID

14  NOT MAKE OUT ANY POSITION OF MR. MILLINGTON AS HAVING ANY KIND

15  OF LEADERSHIP ROLE IN THIS ORGANIZATION.

16    THE COURT: VERY WELL.

17    MR. CONTE: WE WOULD ASK SPECIFICALLY ON THIS POINT

18  FOR FINDINGS OF FACT AS TO WHAT THE BASIS IS.

19    THE COURT: NEXT?

20    MR. CONTE: THE COURT'S INDULGENCE. YOUR HONOR, THE

21  LAST PARAGRAPH, PARAGRAPH 13 AT PAGE 6, WHERE IT SAYS THAT

22  EMANUEL SUTTON, JAMES JONES, JERRY MILLINGTON, ROYAL BROOKS,

23  RACHELLE EDMOND, BERNICE HILLMAN MCCRAW, DAVID MCCRAW, JOHN

24  MONFORD, ARMARETTA PERRY, CONSTANCE PERRY, MELVIN STEWART,

25  JEFFREY THOMPSON, AND RAYNICE THOMPSON WERE RESPONSIBLE FOR

1  WHOLESALE DISTRIBUTION OF COCAINE, THERE WAS NO TESTIMONY FOR

2  THE MAJORITY OF THOSE PEOPLE THAT THEY WERE DISTRIBUTING

3  WHOLESALE QUANTITIES OF COCAINE.

4            THE COURT:  NEXT?

5            MR. CONTE:  IF I CAN JUST EXPAND ON THAT.  I BELIEVE

6  THERE WAS TESTIMONY THAT OFFICER SCOTT ATTEMPTED TO BUY A HALF

7  KILO FROM EMANUEL SUTTON, AND HE SAID HE DIDN'T HAVE IT

8  AVAILABLE.  THERE WAS NO TESTIMONY TO MY KNOWLEDGE THAT JAMES

9  ANTONIO JONES EVER SOLD ANYBODY A KILO OR A WHOLESALE QUANTITY

10 OF COCAINE.

11           AT THE MOST, YOUR HONOR, I BELIEVE THAT MS. ZANVILLE

12 TESTIFIED HE MAY HAVE DELIVERED A KILO AT ONE TIME TO HER

13 APARTMENT.

14           AS CONCERNS MR. MILLINGTON, AS I RECALL, MS.

15 ZANVILLE, AND ONLY MS. ZANVILLE, TESTIFIED THAT AT ONE TIME MR.

16 MILLINGTON DELIVERED A KILO OF COCAINE TO HER APARTMENT OVER IN

17 SOUTHEAST WASHINGTON.  ROYAL BROOKS, WE BELIEVE THAT WOULD BE

18 CORRECT.  RACHELLE EDMOND, THERE WAS NEVER ANY TESTIMONY FROM

19 ANY PERSON THAT MS. RACHELLE EDMOND DEALT IN WHOLESALE

20 QUANTITIES OF COCAINE.  THE ONLY TESTIMONY THAT I CAN RECALL IS

21 THAT MS. ZANVILLE SAID THAT SHE PICKED UP SOME COCAINE FROM HER

22 HOUSE IN SOUTHEAST WASHINGTON.

23           BERNICE HILLMAN MCCRAW, THERE WAS NO TESTIMONY THAT

24 SHE PARTICIPATED IN THE WHOLESALE DISTRIBUTION OF COCAINE.

25 CONSTANCE PERRY, I RECALL NO TESTIMONY ABOUT HER AND THE

1  WHOLESALE DISTRIBUTION --

2          THE COURT:  SUPPOSE THAT THERE IS AN ERROR IN

3  THAT -- AND I DON'T SUGGEST THERE NECESSARILY IS -- WHAT HAS

4  THAT GOT TO DO WITH MR. JERRY MILLINGTON?  THAT DOESN'T HAVE

5  ANYTHING TO DO WITH HIM.

6          MR. CONTE:  THE SAME THING I SAID BEFORE, YOUR HONOR.

7          THE COURT:  PARDON?

8          MR. CONTE:  THE SAME THING I SAID BEFORE, THIS PRE-

9  SENTENCE REPORT WILL FOLLOW HIM THROUGHOUT THE REST OF HIS

10  LIFE.  THE COURT USES THIS PRE-SENTENCE REPORT IN IMPOSING

11  SENTENCE EVEN THOUGH I KNOW THE COURT IS USING THE EVIDENCE

12  ADDUCED AT TRIAL, BUT THE REPORT SHOULD ACCURATELY REFLECT THE

13  EVIDENCE THAT HAS BEEN PRESENTED TO THE COURT.

14          THE COURT:  THE COURT WILL RELY UPON WHAT WAS

15  PRESENTED DURING THE COURSE OF THE TRIAL, AS I HAVE PREVIOUSLY

16  SAID TWO OR THREE TIMES THIS MORNING.  I DON'T KNOW WHY YOU

17  HAVE TO CONTINUE TO REPEAT THE SAME ARGUMENT.  THAT WILL BE

18  WHAT GOVERNS NOT ONLY YOUR CLIENT, BUT ALSO EVERYBODY ELSE THAT

19  HAS TO DEAL WITH HIM.

20          MR. CONTE:  I BEG YOUR PARDON?

21          THE COURT:  IT WILL NOT ONLY GOVERN WHAT HAPPENS TO

22  YOUR CLIENT, BUT EVERYBODY ELSE, INCLUDING THE BUREAU OF

23  PRISONS, THAT HAD TO DEAL WITH HIM.  THERE IS NO MORE PAROLE

24  COMMISSION, AS YOU WELL KNOW.

25          MR. CONTE:  I KNOW THAT, YOUR HONOR.

1    THE COURT:  THE UNITED STATES BUREAU OF PRISONS AND

2    THEIR CLASSIFICATION PEOPLE WILL BE GOVERNED BY WHAT THE COURT

3    SAYS.

4    MR. CONTE:  YOUR HONOR, IN MANY RESPECTS ALL I AM

5    ASKING FOR IS CHANGES IN THE WORDINGS OF THESE PARAGRAPHS AND A

6    FEW MINOR DELETIONS.  I DON'T THINK THAT IS A LOT TO ASK.

7    THE COURT:  WELL, AS YOU HAVE CONSENTED, THE COURT

8    WILL MAKE APPROPRIATE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

9    THEY WILL BE FILED AND GO WITH YOUR CLIENT.

10   MR. CONTE:  I BEG THE COURT'S PARDON?

11   THE COURT:  THEY WILL BE FILED IN THE JACKET AND GO

12   WITH YOUR CLIENT.

13   MR. CONTE:  VERY WELL.  THE COURT'S INDULGENCE.  YOUR

14   HONOR, PAGE 6, FOOTNOTE 2, THE TESTIMONY OF ROYAL BROOKS

15   CONCERNING RACHELLE EDMOND AT THE TIME OF MR. BROOKS' ARREST IN

16   CALIFORNIA, I DISCUSSED THIS WITH MS. SOIEFER.  I THINK WE ARE

17   OF A COMBINED MIND THAT THERE SHOULD BE SOME EXPLANATION IN

18   THIS PARAGRAPH.

19   MS. RACHELLE EDMOND WAS NEVER CONTACTED ABOUT

20   DISPOSING OF ANY COCAINE.  SHE WAS CALLED BY MR. BROOKS.  THE

21   ONLY THING THAT MS. RACHELLE EDMOND WAS REQUIRED TO DO WAS TO

22   ATTEMPT TO CONTACT DESIREE MURPHY AND HER BROTHER.  I BELIEVE

23   THE TESTIMONY WAS --

24   THE COURT:  ALL RIGHT.  THAT FOOTNOTE ON PAGE 6, YOUR

25   ARGUMENT THERE IS A MATTER OF SEMANTICS.  I UNDERSTAND YOUR

1  POINT.  I ALSO UNDERSTAND WHAT MR. BROOKS SAID AT TRIAL ABOUT

2  WHAT HE DID IN REGARD TO THAT SUBJECT MATTER, SO YOU MAY

3  PROCEED.

4       MR. CONTE:  YOUR HONOR, PARAGRAPH 15, THE FOURTH LINE

5  FROM THE BOTTOM, IT SAYS, "ON AT LEAST FIVE OCCASIONS, MR.

6  BROOKS RECEIVED LARGE AMOUNTS OF MONEY BETWEEN 200,000 AND" --

7  IT SHOULD BE 800,000 --

8       THE COURT:  THE COURT HAS ALREADY MADE THAT

9  CORRECTION.

10      MR. CONTE:  WHAT CORRECTION HAS THE COURT MADE?

11      THE COURT:  8 MILLION TO 800,000.

12      MR. CONTE:  VERY WELL.

13      "ON AT LEAST FIVE OCCASIONS HE RECEIVED LARGE AMOUNTS

14 OF MONEY BETWEEN 200,000 AND 800,000 FROM MR. EDMOND AT THE

15 RESIDENCE OF HIS SISTER, RACHELLE EDMOND, AND HER BOYFRIEND,

16 JERRY MILLINGTON."

17      THE COURT:  DO YOU WANT THEM TO SAY AT HER COMMON LAW

18 HUSBAND'S HOUSE?

19      MR. CONTE:  NO, YOUR HONOR.  I WANT THE RECORD TO

20 REFLECT THAT MR. BROOKS TESTIFIED THAT ON ONE OCCASION HE

21 PICKED MONEY UP FROM THE TRUNK OF A CAR PARKED IN FRONT OF MR.

22 MILLINGTON'S HOUSE, AND ON ANOTHER OCCASION HE PICKED UP MONEY

23 FROM INSIDE MR. MILLINGTON'S HOUSE THAT WAS UNDERNEATH SOME

24 CLOTHES, AND THAT HE HAD NO CONVERSATION WITH ANYBODY BUT

25 RAYFUL EDMOND, III, ABOUT THE MONEY BEING IN THE HOUSE, AND IT

1  IS CERTAINLY NOT FIVE TIMES.

2  THE COURT:  CERTAINLY NOT WHAT?

3  MR. CONTE:  FIVE TIMES.  IT WAS ONLY TWICE, AND THAT

4  WAS THE EXTENT OF HIS TESTIMONY.  AT NEITHER TIME WAS MR.

5  MILLINGTON'S NAME EVER MENTIONED AS HAVING ANY KNOWLEDGE OF THE

6  MONEY.

7  THE COURT:  IT WASN'T HIS HOUSE, THEN, IS THAT WHAT

8  YOU ARE SAYING, THE 1009 PECONIC PLACE, THAT WASN'T HIS HOUSE?

9  MR. CONTE:  YES, YOUR HONOR, HIS NAME IS ON THE DEED.

10  THE COURT:  THAT IS WHAT I THOUGHT.  ALL RIGHT.  GO

11  AHEAD.

12  MR. CONTE:  I AM JUST SAYING THAT IT SHOULD BE TWICE,

13  AND THE RECORD SHOULD REFLECT THAT THE TESTIMONY INDICATES THAT

14  MR. MILLINGTON COULD WELL HAVE HAD NO KNOWLEDGE OF THE MONEY.

15  THE COURT:  THANK YOU.  NEXT?

16  MR. CONTE:  ON MY LETTER, YOUR HONOR, PAGE 7,

17  PARAGRAPH 16, I DON'T RECALL TESTIMONY OF LARGE QUANTITIES OF

18  DRUGS FROM 407.

19  THE COURT:  ALL RIGHT.

20  MR. CONTE:  YOUR HONOR, PAGE 7, PARAGRAPH 16,  THE

21  ONE-HALF KILOGRAM SALE FROM 407 M STREET, MS. SOIEFER ADVISES

22  ME THAT THAT WAS STEVENSON MCARTHUR'S TESTIMONY.  I HAVE NOT

23  HAD A CHANCE -- THAT IS ONE OF THE THINGS I WANTED TO CHECK --

24  I HAVE NOT HAD A CHANCE TO REVIEW THE TRANSCRIPT OF MR.

25  MCARTHUR'S TESTIMONY TO FIND OUT WHETHER THAT IS, IN FACT,

1 CORRECT.

2          THE COURT: NEXT?

3          MR. CONTE: PAGE 7, PARAGRAPH 16, AGAIN, THIS IS

4 ANOTHER THING THAT MS. SOIEFER ADVISES ME INVOLVES STEVENSON

5 MCARTHUR, AND AGAIN, I HAVE NOT HAD TIME TO VERIFY SINCE WE

6 ONLY MET THIS MORNING.

7          YOUR HONOR, PAGE 7, PARAGRAPH 17, I BELIEVE MS.

8 ZANVILLE'S TESTIMONY WAS THAT IT WAS ONLY ONE OCCASION THAT MR.

9 MILLINGTON BROUGHT COCAINE TO HER APARTMENT.

10          THE COURT: ALL RIGHT. PAGE 7, PARAGRAPH 17, I

11 UNDERSTAND YOUR POINT. DO YOU WANT TO AMPLIFY THAT?

12          MR. CONTE: NOT AT THIS TIME, YOUR HONOR.

13          THE COURT: ALL RIGHT. PAGE 7, PARAGRAPH 18, DO YOU

14 WANT TO AMPLIFY THAT?

15          MR. CONTE: THE COURT'S INDULGENCE. YES, YOUR HONOR,

16 PARAGRAPH 18, MS. SELLERS NEVER TESTIFIED THAT RACHELLE EDMOND

17 PICK UP COCAINE FROM THAT APARTMENT. AS I RECALL MS. SELLERS'

18 TESTIMONY, THE ONLY INVOLVEMENT MS. RACHELLE EDMOND HAD WAS

19 THAT MS. SELLERS APPROACHED MS. EDMOND ABOUT WORKING FOR THE

20 ORGANIZATION.

21          THE COURT: VERY WELL. NEXT? PAGE 8, PARAGRAPH 19?

22          MR. CONTE: YOUR HONOR, THIS IS AGAIN A SITUATION,

23 YOUR HONOR, WHERE I WOULD LIKE TO HAVE TIME TO RESEARCH THAT

24 PARTICULAR STATEMENT.

25          THE COURT: WHAT DO MEAN "RESEARCH?"

1    MR. CONTE:  TO LOOK AT THE TRANSCRIPT FOR THAT, YOUR

2 HONOR.

3    THE COURT:  IT HAS BEEN AVAILABLE DOWNSTAIRS IN THE

4 CLERK'S OFFICE.

5    MR. CONTE:  I REALIZE THAT, YOUR HONOR, BUT I DIDN'T

6 BELIEVE I WAS GOING TO GET AN OBJECTION TO THAT.  I THOUGHT THE

7 TESTIMONY WAS QUITE CLEAR FROM MS. SELLERS AND WHAT SHE DID,

8 BUT IF THE GOVERNMENT HAS ANY OTHER KNOWLEDGE AT THIS TIME,  I

9 WOULD WELCOME IT.

10    THE COURT:  ALL RIGHT.  THANK YOU.  YOU MAY PROCEED.

11 PAGE 8, PARAGRAPH 19?

12    MR. CONTE:  THE COURT'S INDULGENCE.  YOUR HONOR, PAGE

13 8, PARAGRAPH 19, IS JUST WRITTEN POORLY AND DOES NOT REFLECT

14 THE TESTIMONY AT TRIAL.

15    THE COURT:  IT IS IN UPPER MARLBORO.  EVERYBODY KNOWS

16 THAT.

17    MR. CONTE:  NO, YOUR HONOR.  WELL, FIRST, THAT IS THE

18 MOST GLARING ERROR, YOUR HONOR.  THERE WAS NOT TESTIMONY THAT

19 ANY DRUGS WERE EVER STORED AT 1009 PECONIC PLACE.  THERE WAS

20 TESTIMONY, I BELIEVE, THAT DRUGS WERE STORED AT MR.

21 MILLINGTON'S APARTMENT IN SUITLAND.  THE RECORD SHOULD REFLECT

22 THAT THE SUITLAND ADDRESS HAS NEVER BEEN ESTABLISHED, TO MY

23 KNOWLEDGE.

24    MS. SOIEFER CLAIMS THAT SHE DOES KNOW THE ADDRESS IN

25 SUITLAND.

1          THE COURT:  THAT SHE DOES KNOW THE ADDRESS?

2          MR. CONTE:  YES, BUT I HAVEN'T BEEN PROVIDED THAT

3    INFORMATION, NOR TIME TO RESEARCH TO FIND OUT WHETHER, IN FACT,

4    THAT IS THE ADDRESS THAT MR. MILLINGTON RESIDED AT.

5          THE COURT:  YOU HAVE GOT YOUR CLIENT.  YOU CAN ASK

6    HIM.

7          MR. CONTE:  YOUR HONOR, THAT IS NOT MY BURDEN.

8          THE COURT:  YOU CAN ASK HIM.

9          MR. CONTE:  I WOULD PREFER NOT TO, YOUR HONOR.

10         THE WHOLE PARAGRAPH, YOUR HONOR, IS JUST WRITTEN

11   INCORRECTLY.

12         THE COURT:  PARAGRAPH 19?

13         MR. CONTE:  YES, YOUR HONOR.

14         THE COURT:  ALL RIGHT.  NEXT?  PAGE 8, PARAGRAPH 21?

15         MR. CONTE:  THE COURT'S INDULGENCE.  YOUR HONOR,

16   THERE WAS NO TESTIMONY THAT MS. RACHELLE EDMOND WAS COUNTING

17   MONEY AT PECONIC PLACE.

18         THE COURT:  ALL RIGHT.  THANK YOU.  NEXT?

19         MR. CONTE:  YOUR HONOR, THE COURT'S INDULGENCE HERE.

20   YOUR HONOR, PARAGRAPH 20, DEBORAH PHILLIPS WAS THE WITNESS WHO

21   DID NOT TESTIFY.

22         THE COURT:  WHAT DID I TELL YOU EARLIER ABOUT THAT?

23         MR. CONTE:  IS THAT BEING STRICKEN, YOUR HONOR?

24         THE COURT:  WILL NOT BE RELIED UPON BY THE COURT.

25         MR. CONTE:  VERY WELL.  WE WOULD BE ASKING THAT THE

1  PARAGRAPH BE STRICKEN.

2        THE COURT:  I HEARD YOU.  THAT IS NOT TO SAY IT DOES

3  NOT HAVE A FACTUAL BASIS, BUT THAT IS NOT GOING TO BE NECESSARY

4  TO IMPOSE A SENTENCE ON YOUR CLIENT.  IT COULD BE RELIED UPON

5  IF I WANTED TO.

6        MR. CONTE:  YOUR HONOR, PARAGRAPH 21, MS. SELLERS

7  NEVER TESTIFIED THAT MR. MILLINGTON WOULD CALL HER.

8        THE COURT:  NEXT?

9        MR. CONTE:  WHILE WE ARE SPEAKING OF MS. SELLERS, I

10  THINK THE RECORD SHOULD ALSO REFLECT THAT MS. SELLERS WAS

11  INVOLVED WITH A PERSON BY THE NAME OF MAURICE GRAYTON, AND I

12  BELIEVE THAT SHE WAS INVOLVED WITH DISTRIBUTION OF DRUGS WITH

13  MR. MAURICE GRAYTON.

14        THAT EVIDENCE WAS NEVER -- I WAS PRECLUDED FROM

15  PUTTING THAT EVIDENCE ON AT TRIAL.  I BELIEVE A FACTUAL BASIS

16  EXISTS TO BELIEVE THAT MS. SELLERS WAS INDEED INVOLVED IN A

17  CONSPIRACY WITH A PERSON BY THE NAME OF MR. MAURICE GRAYTON,

18  THAT MR. GRAYTON HAD, IN FACT, STORED A KILOGRAM OF COCAINE IN

19  MS. SELLERS' APARTMENT, THAT THAT KILOGRAM OF COCAINE WAS

20  STOLEN FROM MS. SELLERS' APARTMENT BY PERSONS UNKNOWN TO ME.

21        THE RECORD WILL REFLECT THAT MS. SELLERS USED MR.

22  MAURICE GRAYTON'S CAR TO MAKE DELIVERIES TO THE STRIP.  IT IS

23  OUR CONTENTION, YOUR HONOR, THAT SHE WAS MAKING DELIVERIES TO

24  THE STRIP FOR HER FIANCE, MR. MAURICE GRAYTON.

25        THE COURT:  I THINK I RECALL YOUR TESTIMONY WITH

1  REGARD TO THAT -- PROFFERED TESTIMONY, I MEAN TO SAY.

2          MR. CONTE:  PROFFERED, YES, SIR.

3          THE COURT:  ALL RIGHT.  NEXT?

4          MR. CONTE:  YOUR HONOR, PARAGRAPH 21, I DON'T RECALL

5  ANY TESTIMONY THAT MS. SELLERS DELIVERED MONEY TO MR.

6  MILLINGTON.  THE COURT'S INDULGENCE.

7          YOUR HONOR, PAGE 9, PARAGRAPH 24, WHICH WE BELIEVE IS

8  IN PART THE BASIS FOR THE TWO POINTS FOR THE GUNS AND THREE

9  POINTS FOR MANAGEMENT IN THE OFFENSE, AND WE DISAGREE THAT THE

10 TESTIMONY ADDUCED AT TRIAL PROVES ANY OF THIS.

11         AGAIN, PAGE 9, PARAGRAPH 24, NO EVIDENCE WHATSOEVER

12 THAT MR. MILLINGTON WAS AN ENFORCER FOR THE ORGANIZATION.

13         THE COURT:  ALL RIGHT.  NEXT?

14         MR. CONTE:  PAGE 9, PARAGRAPH 24, THE COURT WILL

15 RECALL THAT THE GUN THAT THEY RECOVERED, THEY WERE SEARCHING

16 FOR THAT GUN IN RELATION TO A HOMICIDE THAT OCCURRED A FEW

17 BLOCKS FROM THE STRIP, THAT HAD NOTHING TO DO WITH THE COCAINE

18 DISTRIBUTION ON THE STRIP.

19         THE COURT:  BUT MR. MILLINGTON WAS OVERHEARD ON THE

20 WIRETAP ASKING ABOUT THE GUN, WASN'T HE?

21         MR. CONTE:  YES, HE WAS -- WELL, HE WAS BEING TOLD

22 ABOUT THE GUN BY A PERSON UNKNOWN.

23         THE COURT:  HE ASKED IF THE POLICE HAD FOUND THE GUN,

24 DID HE NOT?

25         MR. CONTE:  NO, YOUR HONOR.  THE PERSON CALLING HIM

1  TOLD HIM THAT THE POLICE WERE ON A PHONE AND THAT THEY FOUND A

2  GUN, AN UZI IN THE ALLEY.  IT TURNED OUT THAT THE UZI THEY WERE

3  TALKING ABOUT --

4          THE COURT:  I AM JUST READING FROM YOUR SENTENCE.

5  "THE GOVERNMENT'S MEMORANDUM STATES THAT A GUN WAS FOUND IN THE

6  ALLEY BEHIND MORTON PLACE AND THAT MR. MILLINGTON WAS RECORDED

7  ON A WIRETAP ASKING IF THE POLICE HAD FOUND THAT GUN."  THAT IS

8  YOUR WORDS, NOT THE GOVERNMENT'S, NOT THE PROBATION OFFICE.

9          MR. CONTE:  THE COURT'S INDULGENCE.  YES, THAT IS

10 WHAT THE GOVERNMENT IS SAYING.  I AM SAYING THAT THAT, IN FACT,

11 IS NOT CORRECT.

12         THE COURT:  ALL RIGHT.  I UNDERSTAND.

13         MR. CONTE:  IN FACT, THE TAPE SAYS IT IS AN UZI.  IT,

14 IN FACT, TURNED OUT TO BE THIS .22-CALIBER PISTOL INVOLVED IN

15 THE SHOOTING OF THIS DELIVERYMAN, OR WHATEVER HE WAS.

16         THE COURT:  ALL RIGHT.  THANK YOU.

17         MR. CONTE:  IT CERTAINLY WASN'T AN UZI.

18         THE COURT:  AND YOU SAY ALL OF THAT IS BENIGN.  I

19 UNDERSTAND.

20         MR. CONTE:  YES, YOUR HONOR, IT CERTAINLY IS.

21         THE COURT:  ALL RIGHT.

22         MR. CONTE:  YOUR HONOR, THE RECORD SHOULD REFLECT

23 THAT SHAWN MAGUIRE SEARCHED MY CLIENT ON AT LEAST 10 OCCASIONS

24 AND NEVER FOUND A GUN ON HIM.  THE RECORD SHOULD ALSO REFLECT

25 THAT THE TAPE --

1        THE COURT:  SUPPOSING 500 PEOPLE SEARCHED MR.

2   MILLINGTON AND FOUND NO GUN, UNRELATED TO THIS CONSPIRACY, OR

3   EVEN IF IT WAS RELATED DURING THE PERIOD OF THIS CONSPIRACY,

4   SHOULD THAT BE IN THE PRE-SENTENCE INVESTIGATION REPORT?

5   SHOULD THAT BE IN THE P.S.I.?

6        MR. CONTE:  WELL, YOUR HONOR, BARRING ANY INFORMATION

7   TO MY KNOWLEDGE THAT WE HAD THAT MR. MILLINGTON CARRIED A GUN,

8   YES.  I THINK THE WEIGHT OF THE EVIDENCE WOULD INDICATE THAT HE

9   DIDN'T UNDER THOSE CIRCUMSTANCES, AND I BELIEVE THE WEIGHT OF

10  THE EVIDENCE RIGHT NOW IS THAT HE NEVER CARRIED A GUN.

11       THE COURT:  I SEE.  THANK YOU.

12       MR. CONTE:  PAGE 25, YOUR HONOR.  AGAIN, WE ARE JUST

13  OBJECTING.  THE GOVERNMENT HASN'T ESTABLISHED A THREE-POINT

14  INCREASE FOR ROLE IN THE OFFENSE, NOR THE TWO-POINT INCREASE

15  FOR THE USE OF A HANDGUN.

16       THE COURT:  VERY WELL.

17       MR. CONTE:  YOUR HONOR, AS CONCERNS THE REPORT, I

18  AWAIT THE GOVERNMENT'S RESPONSE.

19       THE COURT:  PARDON?

20       MR. CONTE:  I WOULD AWAIT THE GOVERNMENT'S RESPONSE

21  TO THE PRE-SENTENCE REPORT BEFORE WE GO ANY FURTHER.

22       THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH, MR.

23  CONTE.

24       MS. SOIEFER?

25       MS. SOIEFER:  THANK YOU, YOUR HONOR.  WITH THE

1 COURT'S PERMISSION, I AM GOING TO OUTLINE THE PROCEDURE THAT I

2 AM GOING TO FOLLOW.

3 THE FIRST THING I AM GOING TO DO, YOUR HONOR, IS GO

4 THROUGH MR. CONTE'S OBJECTIONS AND COMMENTS IN HIS MEMORANDUM

5 WITH THE GOVERNMENT'S RESPONSES AND THE POSITION. THESE WERE

6 ALL OUTLINED. WE SPENT AN HOUR THIS MORNING GOING THROUGH THAT

7 WITH MR. HUNT, BUT OBVIOUSLY I WANT TO MAKE SURE THAT THE

8 GOVERNMENT'S POSITION IS ON THE RECORD FOR PURPOSES OF THIS

9 HEARING.

10 SECONDLY, I WILL THEN SUPPORT AND INDICATE WHY I

11 BELIEVE THE COURT SHOULD FIND THAT THE COMPUTATIONS AS TO THE

12 SENTENCING GUIDELINES PREPARED BY MR. HUNT ARE CORRECT AND

13 ACCURATE, AND THAT IS THE TWO-POINT INCREASE FOR THE GUNS, THE

14 THREE-POINT INCREASE FOR THE ROLE IN THE OFFENSE, LEAVING A

15 BASE LEVEL OFFENSE OF 41 AND A CRIMINAL HISTORY OF 4.

16 FINALLY, YOUR HONOR, I WILL ARGUE WITH REGARD TO THE

17 GOVERNMENT'S PERSPECTIVE AS TO THE APPROPRIATE SENTENCE UNDER

18 THAT RANGE OF THE GUIDELINES.

19 FIRST, TURNING TO MR. CONTE'S MEMORANDUM, YOUR HONOR,

20 OVERALL, IT IS THE GOVERNMENT'S POSITION -- AND I WON'T REPEAT

21 IT 20 TIMES -- THAT THE NAMES OF UNTRIED DEFENDANTS SHOULD

22 REMAIN IN THE PRE-SENTENCE REPORT IF THE TESTIMONY SUPPORTED OR

23 IF, IN FACT, THERE IS A FACTUAL BASIS FOR THAT STATEMENT.

24 THAT IS, FOR INSTANCE, WHERE MR. MELVIN STEWART OR

25 MS. RACHELLE EDMOND'S NAMES ARE MENTIONED, IF THOSE NAMES WERE

1   MENTIONED DURING THE COURSE OF THE TRIAL, OR IF THE GOVERNMENT

2   CAN OTHERWISE SUPPORT IT, WE BELIEVE THAT IT IS ACCURATE.

3           AND WE THINK THAT, FIRST OF ALL, THERE IS ABSOLUTELY

4   NO PREJUDICE TO MR. MILLINGTON BECAUSE THE STATEMENTS CAME OUT

5   DURING THE COURSE OF TRIAL, AND NUMBER TWO, AS THE COURT NOTED

6   IN RESPONSE TO MR. CONTE'S ARGUMENT, IF FOR SOME REASON MS.

7   EDMOND IS FOUND NOT GUILTY HERSELF, THAT DOES NOT AFFECT THE

8   FACT THAT THE STATEMENT WAS MADE DURING THE COURSE OF MR.

9   MILLINGTON'S TRIAL.

10          IT IS, THEREFORE, THE GOVERNMENT'S POSITION ALL THE

11  WAY THROUGH THAT THOSE NAMES SHOULD REMAIN.

12          SECONDLY, IT IS ALSO THE GOVERNMENT'S POSITION ALL

13  THE WAY THROUGH MR. CONTE'S REMARKS THAT SO LONG AS ANY

14  INFORMATION WHICH IS PRESENTED TO THE COURT IS FOUND TO BE

15  RELIABLE OR CREDIBLE IN ANY REGARD, THAT INFORMATION MAY BE

16  CONSIDERED BY THE COURT.

17          I THINK IN THAT SENSE, THE SENTENCING GUIDELINES AND

18  THIS NEW FORM OF SENTENCING THAT WE ARE ALL LEARNING TO LIVE

19  WITH DOES NOT CHANGE WHAT THE PAST PRACTICE HAD BEEN, AND THAT

20  IS, OF COURSE, THAT NEITHER THIS COURT NOR THE PROBATION OFFICE

21  IS BOUND BY THE FOUR CORNERS OF THE TRIAL TESTIMONY, AND WE

22  SUBMIT THAT THAT IS APPROPRIATE UNDER THE SENTENCING GUIDELINES

23  AS IT WAS PRIOR TO THE SENTENCING GUIDELINES.

24          THOSE ARE MY GENERAL STATEMENTS WITH REGARD TO THE

25  MEMORANDUM.  I WILL GO THROUGH THE PARAGRAPHS AS LETTERED BY

1  MR. CONTE. WE HAVE NO OBJECTION TO A, WHICH IS A TYPOGRAPHICAL

2  ERROR, TO 1009 BEING CHANGED FROM 1002.

3      WE HAVE NO OBJECTION TO B. WITH REGARD TO C, WE HAVE

4  NO OBJECTION TO ADDING THE PHRASE "VARIOUS CHARGES INCLUDING,"

5  WHICH WOULD THEN MAKE IT CLEAR THAT ALL OF THE DEFENDANTS

6  LISTED WERE NOT CHARGED WITH ALL OF THE COUNTS.

7      WE THINK THAT THE PARAGRAPH IS CLEAR AS IT STANDS,

8  BUT IN AN EFFORT TO MAKE IT CRYSTAL-CLEAR, WE HAVE NO OBJECTION

9  TO THAT PHRASE BEING ADDED. IT IS MY UNDERSTANDING MR. HUNT

10  HAD NO OBJECTION TO THAT EITHER.

11      WITH RESPECT TO PARAGRAPH D, WE SUBMIT THAT THE

12  EVIDENCE WAS ABUNDANTLY CLEAR AS TO THE LEVELS OF

13  RESPONSIBILITY IN THE ORGANIZATION. WE THINK THAT IT CAN BE

14  INFERRED FROM THE TESTIMONY THAT WAS PRESENTED.

15      WE DO NOT SUBMIT -- WITH REGARD TO ANY OF THE LABELS

16  OR TITLES THAT WERE GIVEN IN THE PRE-SENTENCE REPORT -- WE DO

17  NOT SUBMIT THAT THEY WERE NECESSARILY WORDS USED BY WITNESSES.

18  WE SUBMIT THAT THEY ARE, HOWEVER, SUPPORTED BY THE EVIDENCE

19  PRODUCED AT TRIAL.

20      THEREFORE, WITH REGARD TO D, WE SUBMIT THAT THE COURT

21  MAY FIND THAT THERE WERE THREE LEVELS OF RESPONSIBILITY IN THE

22  EDMOND ORGANIZATION FROM THE TESTIMONY THAT THE COURT HEARD

23  DURING TRIAL.

24      SPECIFICALLY, I WOULD REFER TO THE WITNESSES ROYAL

25  BROOKS, RAE ZANVILLE, KATHY SELLERS, JAMES MINOR, JAMES MATHIS,

1  AND A NUMBER OF THE POLICE OFFICERS WHO TESTIFIED.

2         FURTHER, WITH REGARD TO THE LAST LINE OF PARAGRAPH D

3  OF MR. CONTE'S MEMORANDUM, WE BELIEVE WE DID ESTABLISH THAT THE

4  COCAINE WAS SOLD AT RETAIL ON MORTON PLACE AND ORLEANS PLACE,

5  NORTHEAST.  THAT WAS DONE PRIMARILY BY THE TESTIMONY OF KATHY

6  SELLERS, WHO INDICATED THAT WHEN SHE TOOK THE PACKAGES TO THE

7  STRIP, AS SHE CALLED IT, IN THE BROWN PAPER BAG, THEY WERE

8  PACKAGED FOR STREET SALE.

9         THAT, COMBINED WITH THAT TESTIMONY OF I BELIEVE IT

10  WAS OFFICER SITEK AND OFFICER MUZZATTI, THAT A $50 BAG OF

11  COCAINE WAS THE STREET SALE, THE TYPE OF COCAINE THAT WAS BEING

12  SOLD ON MORTON AND ORLEANS PLACE, IS SUFFICIENT TO SUPPORT THAT

13  STATEMENT IN THE PRE-SENTENCE REPORT.

14         LETTER E, THE COURT HAS PRETTY MUCH ALREADY ADDRESSED

15  THAT.  IT IS OUR POSITION, AS THE COURT ARTICULATED, THAT MR.

16  MILLINGTON IS RESPONSIBLE FOR THE TOTAL AMOUNT OF COCAINE FOUND

17  TO HAVE BEEN DISTRIBUTED BY THE CONTINUING CRIMINAL ENTERPRISE

18  RUN BY MR. EDMOND.  WE, OF COURSE, AGREE THAT MR. MILLINGTON

19  WAS NOT CHARGED WITH THE C.C.E. COUNT, BUT WE DO BELIEVE THAT

20  THE BASE LEVEL OFFENSE IS A 36 BY VIRTUE OF THAT 150-KILOGRAM

21  FIGURE.

22         WE WOULD NOTE, AS WE HAVE FOR PREVIOUS DEFENDANTS,

23  THAT MR. MILLINGTON WAS NAMED AS ONE OF THE PEOPLE WITH WHOM

24  MR. EDMOND WORKED IN CONCERT BY THE JURY IN ITS OWN VERDICT

25  FORM.

1    FOR F, I IN SOME MEASURE AGREE WITH MR. CONTE THAT I

2   AM NOT CERTAIN THAT ANYONE ACTUALLY USED THE WORD THAT MR.

3   LEWIS WAS A PARTNER WITH MR. EDMOND. WE BELIEVE THAT THAT CAN

4   BE INFERRED FROM THE TESTIMONY AND THAT, IN FACT, THE COURT HAS

5   ALREADY FOUND THAT WITH REGARD TO THE SENTENCING OF MR. LEWIS,

6   AND I WON'T REPEAT MY ARGUMENTS WITH REGARD TO MR. LEWIS' ROLE

7   AND THE REASON THAT I THINK THAT THAT IS AN APPROPRIATE

8   ASSESSMENT.

9    G, WE BELIEVE THAT AGAIN IT IS A MATTER OF SEMANTICS.

10  WHETHER ANYONE ACTUALLY TESTIFIED THAT THE ORGANIZATION REALLY

11  BEGAN TO "FLOURISH" IN THE SPRING OF 1987 IS A MATTER THAT CAN

12  BE INFERRED FROM THE TESTIMONY AT TRIAL.

13    WE BELIEVE IT IS AN APPROPRIATE INFERENCE BECAUSE THE

14  TESTIMONY WAS THAT IN THE SPRING OF 1987, MS. ZANVILLE, ALONG

15  WITH MR. EDMOND, MET MR. BUTLER AT THE FIGHT IN LAS VEGAS.

16  SUBSEQUENTLY, MR. EDMOND BEGAN WORKING WITH MR. BUTLER, AND IT

17  WAS THEN THAT THE REALLY LARGE QUANTITIES OF COCAINE BEGAN TO

18  MAKE THEIR WAY FROM CALIFORNIA TO THE DISTRICT OF COLUMBIA.

19  SO, WE BELIEVE THAT IS APPROPRIATE.

20    PARAGRAPH H, WE BELIEVE THERE WAS DIRECT PROOF THAT

21  MR. LEWIS HAD HIS OWN OPERATION ON BATES STREET, NORTHWEST, IN

22  THE TESTIMONY OF JAMES MINOR DURING TRIAL.

23    PARAGRAPH I, AS THE COURT RECALLS, THERE WAS THE

24  TESTIMONY THAT THERE WERE 16 KILOGRAMS WITH THE WORDS "CALI"

25  WRITTEN ON THEM. IN ADDITION, WE RELY ON THE CALIFORNIA

1    INDICTMENT FOR THE PURPOSES OF PROVING THAT MR. BENNETT AND MR.

2    VILLABONA WERE THE SUPPLIERS OF MR. BUTLER.

3              AND, OF COURSE, IT ALSO STATES IN THAT INDICTMENT

4    THAT MR. VILLABONA WAS A COLOMBIAN, A COLOMBIAN NATIVE.

5              THE COURT:  I MIGHT INTERRUPT YOU RIGHT HERE.  IT

6    WOULD BE ALTOGETHER APPROPRIATE AND PROPER, WOULD IT NOT, UNDER

7    THE SENTENCING REFORM ACT, FOR THE PROBATION OFFICE AND THE

8    COURT TO CONSIDER THE CALIFORNIA INDICTMENT, WHICH IS A FINDING

9    BY THE GRAND JURY IN THE CENTRAL DISTRICT OF THE UNITED STATES

10   DISTRICT COURT FOR CALIFORNIA OF PROBABLE CAUSE, MEANING THAT

11   THE OFFENSE WAS MORE LIKELY SO THAN NOT, NAMELY, BY A

12   PREPONDERANCE OF THE EVIDENCE, THE GRAND JURY FOUND THAT THESE

13   PEOPLE WERE GUILTY OF THIS OFFENSE AND DID EXACTLY WHAT THE

14   PROBATION OFFICE STATED AT THIS PORTION, NAMELY, PARAGRAPH 6 OF

15   THE PRE-SENTENCE INVESTIGATION REPORT?  THAT WOULD BE ENTIRELY

16   PROPER, WOULD IT NOT?

17             MS. SOIEFER:  WE BELIEVE IT WOULD BE, YOUR HONOR.

18             THE COURT:  ALL YOU HAVE TO PROVE IS BY A

19   PREPONDERANCE OF THE EVIDENCE.

20             MS. SOIEFER:  YES, YOUR HONOR, AND I DON'T THINK WE

21   NEED TO DEBATE THE LAW SCHOOL QUESTION OF WHETHER PROBABLE

22   CAUSE IS THE EXACT EQUIVALENT OF PREPONDERANCE.

23             THE COURT:  WHAT IT MEANS IS MORE LIKELY SO THAN NOT,

24   DOES IT NOT?

25             MS. SOIEFER:  YES, YOUR HONOR, MORE PROBABLE THAN

1   NOT.

2          THE COURT:  EVEN YOU DON'T QUARREL WITH THAT, DO YOU?

3          MR. CONTE:  NOT WITH THAT MATTER OF LAW, YOUR HONOR.

4   I HAVE NOT HAD TIME TO REVIEW THAT DOCUMENT AS YET EITHER, YOUR

5   HONOR.

6          THE COURT:  IT HAS BEEN IN THE HANDS OF THE PROBATION

7   OFFICE FOR A LONG TIME.

8          MR. CONTE:  YOUR HONOR, MS. SOIEFER SHOWED IT TO ME

9   THIS MORNING, AND THE RECORD SHOULD REFLECT THAT MR. HUNT LEFT

10  THE COURTROOM AT 11:59.  HE IS NOT PRESENT.

11         THE COURT:  WELL, WE HAVE GOT THE CHIEF DEPUTY HERE.

12  HE IS FULLY FAMILIAR WITH THE REPORT.  MR. CARRINGTON KNOWS

13  ABOUT IT.

14         MR. CARRINGTON:  IF THE COURT PLEASE, MR. HUNT IS

15  FEELING ILL.  HE HAS BEEN FEELING ILL FOR THE LAST WEEK.

16         THE COURT:  HE CAME IN ESPECIALLY TO SEE MR. CONTE

17  THIS MORNING, DID HE NOT?

18         MR. CARRINGTON:  I PRESUME SO, BUT I GAVE HIM

19  PERMISSION TO LEAVE.

20         THE COURT:  I KNOW HE DID BECAUSE HE DID IT AT THE

21  COURT'S REQUEST.  THANK YOU VERY MUCH.

22         MR. CONTE:  I WOULD ASK THE PROBATION OFFICER OR MS.

23  SOIEFER BE DIRECTED TO TURN OVER A COPY OF THE INDICTMENT TO

24  ME.

25         THE COURT:  YOU MAY PROCEED, MS. SOIEFER.

1      MS. SOIEFER:  I WILL BE HAPPY TO GIVE MR. CONTE A

2   COPY.

3      THE COURT:  YOU MAY PROCEED.

4      MS. SOIEFER:  THANK YOU, YOUR HONOR.  THE COURT'S

5   QUESTION WAS WHETHER THE COURT COULD RELY ON THE INDICTMENT.

6   IT IS CERTAINLY THE POSITION OF THE GOVERNMENT THAT THE COURT

7   CAN.

8      WE BELIEVE THAT THE COURT CAN RELY ON ANY RELIABLE

9   INFORMATION THAT IS PUT BEFORE IT FROM ANY SOURCE, AND WE

10  BELIEVE THAT AN INDICTMENT RETURNED BY A FEDERAL GRAND JURY

11  SITTING IN THE CENTRAL DISTRICT OF CALIFORNIA IS CERTAINLY SUCH

12  RELIABLE EVIDENCE, PARTICULARLY AS TO THE CHARGES CONTAINED IN

13  THE INDICTMENT.

14     THE INDICTMENT ITSELF SPECIFICALLY STATES EXACTLY

15  WHAT IS STATED IN THE PRE-SENTENCE REPORT.  THERE IS NO

16  INFERENCE NECESSARY.  IT STATES THAT WITH PARTICULARITY.

17     THE COURT:  THANK YOU.  NEXT?

18     MS. SOIEFER:  PARAGRAPH J.  MY MEMORY DIFFERS WITH

19  MR. CONTE.  I DO RECALL TESTIMONY AS TO THE $10,000 FIGURE

20  COMING FROM ROYAL BROOKS, AND AS TO THE $20,000 FIGURE COMING

21  FROM STEVENSON MCARTHUR.

22     OF COURSE, ON ALL OF THESE, I HAVE ATTEMPTED IN THE

23  SHORT PERIOD OF TIME I HAD TO TRY AND FIND TRANSCRIPTS WHERE I

24  COULD.  AS THE COURT KNOWS, WE DON'T HAVE ALL THE TRANSCRIPTS

25  YET, AND I HAVE BEEN UNABLE TO PROVIDE THE COURT WITH THE

1 SPECIFICS, SO I AM RELYING ON MY MEMORY. OF COURSE, IF MINE

2 DIFFERS FROM MR. CONTE, IN THIS CASE IT IS NOT THE JURY, BUT

3 THE COURT THAT CONTROLS.

4       AS TO PARAGRAPH K, THERE WAS TESTIMONY AT TRIAL AS TO

5 THE AMOUNT OF MONEY THAT COULD BE MADE FOR A WHOLESALE KILO. K

6 IS THE STREET PRICE OF COCAINE AS OPPOSED TO THE WHOLESALE

7 PRICE. I DON'T THINK THAT IS CONJECTURE AT ALL.

8       THAT COMES FROM THE TESTIMONY AT TRIAL. IT ALSO

9 COMES FROM THE KNOWLEDGE OF NOT JUST THE PROBATION OFFICE, BUT

10 I AM SURE THE COURT HAS ON PREVIOUS OCCASIONS HEARD, AND IT

11 ONLY TAKES COMMON SENSE TO KNOW THAT SOMETHING THAT IS CUT FROM

12 A LARGER BLOCK AND SELLS FOR MORE MONEY PER SMALL PACKAGE WILL

13 MAKE MONEY. I MEAN THAT WAS THE PURPOSE. THERE WAS AN

14 INDICATION THAT A PROFIT OF A SUBSTANTIAL AMOUNT, I BELIEVE IT

15 WAS BETWEEN 80- AND $100,000 COULD BE MADE ON EACH KILO.

16       PARAGRAPH L IN MR. CONTE'S MEMORANDUM, WE BELIEVE THE

17 TESTIMONY SUPPORTS THAT FACT. MR. STEWART WAS IDENTIFIED IN A

18 PHOTOGRAPH BY MS. ZANVILLE, AND MR. BROOKS, FOR THAT MATTER.

19       PARAGRAPH M IS MR. BUTLER'S STATEMENT IN WHICH HE

20 ADMITTED SENDING COCAINE. THAT STATEMENT WAS THE SUBJECT OF A

21 MOTIONS HEARING WHICH THE COURT MAY RECALL. MS. LOBO THEN HAD

22 THE OPPORTUNITY TO CROSS-EXAMINE THE WITNESS DURING THE COURSE

23 OF THAT MOTIONS HEARING.

24       WE BELIEVE THAT THAT WAS RELIABLE INFORMATION WHICH

25 THE COURT CAN TAKE INTO ACCOUNT FOR THE PURPOSES OF SENTENCING.

1  THE COURT DID FIND THAT THE STATEMENT WAS ADMISSIBLE.  IT WAS

2  THE GOVERNMENT'S TACTICAL CHOICE NOT TO PRESENT IT.

3         THEREFORE, WE BELIEVE THAT THE COURT MAY TAKE SUCH

4  INFORMATION INTO ACCOUNT FOR PURPOSES OF SENTENCING.  EVEN

5  ASSUMING ARGUENDO THAT THE COURT DOES NOT WISH TO DO SO, IT HAS

6  ABSOLUTELY NO EFFECT ON THE SENTENCING OF MR. MILLINGTON.

7         WITH REGARD TO PARAGRAPH N, THAT IS THE SAME ARGUMENT

8  WITH REGARD TO MR. HARDY.  HE WAS IDENTIFIED BY A PHOTOGRAPH.

9  WE BELIEVE THE TESTIMONY SUPPORTS THE STATEMENT IN THE

10 PRE-SENTENCE REPORT.

11        PARAGRAPH O, THIS WAS A PARAGRAPH THAT CAME UP IN

12 OTHER SENTENCINGS, YOUR HONOR, AND THE WAY WE TOOK CARE OF IT

13 WAS TO SPLIT THE PARAGRAPH IN HALF, AND MR. HUNT HAD PREVIOUSLY

14 DONE THAT.

15        THAT IS TO SAY, THAT ONE SENTENCE INDICATES THAT MR.

16 BROOKS WENT TO CALIFORNIA WITH RAYFUL EDMOND, COLUMBUS DANIELS,

17 AND MELVIN STEWART.  THOSE THREE NAMES WERE NAMES THAT WERE

18 MENTIONED BY MR. BROOKS DURING THE COURSE OF HIS TESTIMONY.

19        A SECOND SENTENCE WOULD SAY THAT THE AIRLINE TICKETS

20 PRODUCED AT TRIAL LISTED -- AND THEN THE VARIOUS OTHER NAMES,

21 INCLUDING DEREK STEADMAN AND FRANK PERRY, AND WE HAVE NO

22 OBJECTION TO THAT CHANGE.  THAT IS WHAT I THINK MR. CONTE WAS

23 REFERRING TO IN SAYING THAT WE AGREED ON THAT CHANGE.

24        PARAGRAPH P, THE GOVERNMENT STANDS BY ITS STATEMENT

25 THAT MR. DANIELS AND MR. STEWART WERE PRESENT AT THE BAGGING

1   CONTEST.  WE BELIEVE IT IS SUPPORTED BY THE TESTIMONY, AND

2   AGAIN, MR. DANIELS, LITTLE NUT, AND MR. STEWART, MELBO, WERE

3   BOTH IDENTIFIED BY PHOTOGRAPH OVER AND OVER AGAIN BY NUMEROUS

4   WITNESSES DURING THE COURSE OF TRIAL.

5            PARAGRAPH Q IS AN ARGUMENT.  THE GOVERNMENT BELIEVES

6   THAT IT IS APPROPRIATE THAT THE LEVELS WITH REGARD TO THE

7   ORGANIZATION ARE A MATTER FOR THE COURT'S FINDINGS FROM THE

8   EVIDENCE PRESENTED AT TRIAL.  WE THINK THAT THE PROBATION

9   REPORT IS ACCURATE.

10           PARAGRAPH R -- AND THAT MAY BE THE HEART OF MR.

11  CONTE'S ENTIRE ARGUMENT -- WE BELIEVE THAT MR. MILLINGTON WAS A

12  MANAGER, AND WE BELIEVE THAT MS. SELLERS TESTIFIED FAR MORE

13  THAN JUST WHAT IS STATED BY MR. CONTE IN THIS PARAGRAPH, AND,

14  AS WELL, THAT MS. ZANVILLE IMPLICATED MR. MILLINGTON.

15           I WILL ADDRESS THE SPECIFICS OF HIS ROLE IN TALKING

16  ABOUT WHY I BELIEVE THE THREE-POINT INCREASE IS APPROPRIATE FOR

17  THE ROLE IN THE OFFENSE.

18           PARAGRAPH S, IT IS THE SAME ARGUMENT, YOUR HONOR.

19  ALL THOSE PERSONS, MS. EDMOND, MS. PERRY, MR. STEWART ARE

20  PENDING TRIAL, HOWEVER, THEY WERE ALL NAMED DURING THE COURSE

21  OF THE TRIAL IN WHICH MR. MILLINGTON WAS CONVICTED.

22           PARAGRAPH T, IT IS MY UNDERSTANDING THAT THAT WAS

23  WITHDRAWN BY MR. CONTE.

24           THE COURT:  CORRECT?

25           MS. SOIEFER:  DURING OUR MEETING THIS MORNING.

1          MR. CONTE:  YOU ARE TALKING ABOUT THE LAST PARAGRAPH?

2          THE COURT:  PARAGRAPH T, PARAGRAPH 13, NO TESTIMONY

3   AT TRAIL THAT THE PERSONS NAMED IN THIS PARAGRAPH WERE

4   RESPONSIBLE FOR WHOLESALE DISTRIBUTION OF COCAINE.

5          MR. CONTE:  THAT IS TRUE.

6          THE COURT:  THAT IS NOT WITHDRAWN?

7          MR. CONTE:  NO.  THAT LAST SENTENCE LISTS ALL THESE

8   PEOPLE ON PAGE 5 AS DEALING IN WHOLESALE QUANTITIES, AND I

9   DON'T BELIEVE THAT THE TESTIMONY FOR EACH ONE OF THOSE IS TRUE,

10  CONSTANCE PERRY, RAYNICE THOMPSON, I DO NOT RECALL THAT.

11         MS. SOIEFER:  THE GOVERNMENT'S POSITION, YOUR HONOR,

12  THEN IN THAT CASE, SINCE IT IS NOT WITHDRAWN, IS THAT IF THE

13  COURT, AS IT HAS PREVIOUSLY DONE, ADDS THE PHRASE AT THE TOP OF

14  PAGE 6, SECOND SENTENCE, "IN AT LEAST ONE RESPECT," THAT THAT

15  MAKES IT CLEAR THAT NOT EVERY DEFENDANT DID EVERYTHING AND THAT

16  THE GENERAL RESPONSIBILITIES WERE SHARED BY ALL OF THE CO-

17  DEFENDANTS.  WE BELIEVE THAT THAT CLARIFIES THE STATEMENT.

18         WITH REGARD TO PARAGRAPH U --

19         MR. CONTE:  MAY I RESPOND OR SHALL I WAIT?

20         THE COURT:  WAIT.

21         MS. SOIEFER:  WE HAVE NO OBJECTION TO THE SENTENCES

22  WRITTEN BY MR. CONTE BEING ADDED TO THE REPORT.  WE DON'T THINK

23  THE REPORT IS INACCURATE AS WRITTEN, HOWEVER.

24         THE COURT:  PARAGRAPH U?

25         MS. SOIEFER:  PARAGRAPH U, THAT IS RIGHT, YOUR HONOR.

1  I THINK THEY SAY THE SAME THING, BUT WE DON'T HAVE ANY

2  OBJECTION TO IT.

3  PARAGRAPH V, MR. CONTE INDICATES THAT HE WANTS

4  PARAGRAPH 15 DELETED IN TOTAL.  WE DISAGREE WITH THAT.  WE

5  BELIEVE THAT IT IS ACCURATE AND THAT THE COURT MUST TAKE IT ALL

6  IN CONTEXT AND RELY ON THE TESTIMONY.  IN THIS CASE WITH REGARD

7  TO THESE PARTICULAR FACTS, THERE WAS TESTIMONY AT TRIAL.

8  WITH EXCEPTION OF THE CORRECTION THAT HAS ALREADY

9  BEEN STATED, THAT IS, FROM 8 MILLION TO 800,000, WE BELIEVE

10  THAT IT IS ACCURATE.

11  THE SPECIFICS AS INDICATED BY MR. CONTE ARE

12  MISLEADING IN THAT THEY DON'T DEAL WITH THE ENTIRETY OF THE

13  TESTIMONY, AND, THEREFORE, WE DON'T BELIEVE THAT THEY ARE

14  ACCURATE, AND WE DISAGREE WITH MR. CONTE'S PROPOSED CHANGES.

15  PARAGRAPH W, WHICH IS PARAGRAPH 16, THERE WAS

16  TESTIMONY THAT LARGE QUANTITIES OF DRUGS WERE TAKEN TO M STREET

17  BEFORE DELIVERY TO THE STRIP BY -- I BELIEVE THE WITNESS WHO

18  SUPPORTED THAT WAS DENISE JOHNSON, YOUR HONOR.

19  THE COURT MAY RECALL THAT MS. JOHNSON DELIVERED

20  QUANTITIES OF COCAINE TO 407 M STREET RIGHT BEFORE IT WAS

21  RAIDED ON FEBRUARY 5, 1988.

22  PARAGRAPH X, THE KILOGRAM SALE WAS TO STEVENSON

23  MCARTHUR.  THERE WAS TESTIMONY TO THAT EFFECT.

24  PARAGRAPH Y, THE SAME OBJECTION AS PREVIOUSLY, WE

25  DISAGREE.  MR. STEWART WAS NAMED DURING THE COURSE OF THE

1  TESTIMONY OF DARRYL YOUNG, THE UNDERCOVER OFFICER, WITH REGARD

2  TO THAT TRANSACTION.

3          PARAGRAPH Z, THE SALE DID INVOLVE MR. EDMOND AND IT

4  DID INVOLVE A HALF A KILOGRAM OF COCAINE.  IT WAS TO STEVENSON

5  MCARTHUR ONCE AGAIN.  THERE ARE FOUR PLACES DURING THAT

6  PARAGRAPH, PARAGRAPH 16, WHERE WE ARE REQUESTING THAT THE WORDS

7  UNDERCOVER OFFICER BE CHANGED TO STEVENSON MCARTHUR.

8          WITH THOSE CHANGES, IT BECOMES ABSOLUTELY ACCURATE,

9  AND I HAVE POINTED THOSE OUT --

10          THE COURT:  WAIT JUST A MINUTE.

11          MS. SOIEFER:  I POINTED THOSE OUT TO MR. HUNT.  HE

12  KNOWS EXACTLY WHICH ONES THEY ARE.

13          PARAGRAPH AA, IT IS NOT MY RECOLLECTION THAT MS.

14  ZANVILLE TESTIFIED THAT MR. MILLINGTON BROUGHT COCAINE ON ONLY

15  ONE OCCASION.  I ATTEMPTED TO CHECK THAT AFTER OUR MEETING THIS

16  MORNING, AND WE DON'T HAVE THAT PORTION OF THE TRANSCRIPT.  WE

17  HAVE ABOUT 200 OTHER PAGES OF HER TESTIMONY, BUT NOT THAT.

18          IT IS MY RECOLLECTION THAT SHE TESTIFIED THAT SHE

19  TESTIFIED THAT ANTONIO JONES ACCOMPANIED MR. MILLINGTON ON ONLY

20  ONE OCCASION, BUT THAT MR. MILLINGTON HIMSELF CAME ON MORE THAN

21  ONE OCCASION.

22          I WOULD NOTE THAT MR. CONTE APPEARS TO HAVE AGREED

23  WITH ME IF ONE TURNS BACK TO HIS PARAGRAPH R.  THE SECOND TO

24  THE LAST LINE OF THAT PARAGRAPH STATES, "MS. ALTA RAE ZANVILLE

25  TESTIFIED THAT MR. MILLINGTON DELIVERED KILOGRAMS OF COCAINE TO

1  HER APARTMENT." NOW, HE DOES NOT STATE ON HOW MANY OCCASIONS,

2  BUT IT IS --

3          THE COURT: WAIT A MINUTE. THANK YOU.

4          MS. SOIEFER: IN ANY EVENT, YOUR HONOR, THERE IS AT

5  LEAST THE ONE OCCASION. I BELIEVE IT WAS MORE THAN THAT.

6          PARAGRAPH BB, AGAIN, WE HAVE THE QUESTION OF MS.

7  RACHELLE EDMOND'S NAME REMAINING IN THE REPORT. WE THINK THAT

8  IT SHOULD. IT WAS STATED AT TRIAL. WITH REGARD TO MS. EDMOND

9  BEING ABLE TO PICK UP COCAINE FROM MS. ZANVILLE, IF THE COURT

10  IS ADDING THAT WHOLE PARAGRAPH AS ASKED BY MR. CONTE -- AND WE

11  TAKE NO POSITION WITH REGARD TO THAT -- WE DO THINK THAT IT IS

12  INACCURATE AS STATED BY MR. CONTE.

13          IN OTHER WORDS, MR. CONTE PUTS IT IN ABSOLUTE TERMS,

14  THAT DURING THE PERIOD THAT MS. ZANVILLE TESTIFIED ABOUT,

15  JANUARY THROUGH MARCH OF 1988, MS. EDMOND WAS UNABLE TO PICK UP

16  COCAINE, PHYSICALLY UNABLE.

17          WE BELIEVE THAT THAT IS NOT AT ALL SUPPORTED BY THE

18  EVIDENCE, NOT AT ALL SUPPORTED BY ANY PROFFER THAT MR. CONTE

19  CAN MAKE. TO THE CONTRARY, THE PERIOD OF TIME FOR WHICH MS.

20  EDMOND WAS UNAVAILABLE OR WAS RECUPERATING FROM BOTH HER

21  CESAREAN SECTION AND HER PREGNANCY, EVEN BY MR. CONTE'S OWN

22  EVIDENCE, DID NOT INCLUDE THE ENTIRE PERIOD OF TIME.

23          THEREFORE, IF THE COURT IS GOING TO ADD THESE

24  SENTENCES, WE ASK THAT IT BE AMENDED TO READ THAT MS. EDMOND

25  WAS PHYSICALLY UNABLE TO PICK UP COCAINE DURING SOME OF THE

1   TIME FRAME THAT MS. ZANVILLE TESTIFIED ABOUT.

2           IN OTHER WORDS, YOUR HONOR, THE TIME PERIOD IS

3   JANUARY THROUGH MARCH OF 1988.  THERE IS ABSOLUTELY NO EVIDENCE

4   TO INDICATE THAT MS. EDMOND WAS INCAPACITATED FOR ALL THREE OF

5   THOSE MONTHS.  THERE WAS SOME EVIDENCE TO INDICATE SHE WAS

6   INCAPACITATED DURING A PORTION OF THAT TIME.

7           PARAGRAPH CC, I THINK IT IS APPROPRIATE AND PROPER AS

8   WRITTEN, BECAUSE ON OCCASION, MS. SELLERS TESTIFIED THAT

9   RACHELLE EDMOND WENT WITH HER TO PICK UP COCAINE, AND I BELIEVE

10  RAE ZANVILLE TESTIFIED THAT MS. SELLERS AND MS. EDMOND ARRIVED

11  AT HER APARTMENT TO PICK UP COCAINE.

12          AGAIN, I ATTEMPTED TO CHECK THAT TRANSCRIPT, AND WE

13  DON'T HAVE THAT PORTION.

14          PARAGRAPH DD, I HAVE SPOKEN TO MR. HUNT ABOUT IT.

15  THERE IS A LITTLE CONFUSION THERE WITH REGARD TO THE APARTMENT

16  AND THE HOUSE.  WE AGREE WITH MR. CONTE THAT THE DRUGS WERE

17  STORED AT THE APARTMENT IN SUITLAND, AND NOT AT THE HOUSE.  THE

18  MONEY WAS COUNTED AT THE HOUSE, AND NOT AT THE APARTMENT.

19          I WORKED WITH MR. CONTE AND MR. HUNT TO EDIT THE

20  PARAGRAPH IN SUCH A WAY THAT --

21          THE COURT:  MONEY COUNTED AT THE?

22          MS. SOIEFER:  AT PECONIC PLACE, THAT IS, MS.

23  CONSTANCE PERRY COUNTING THE MONEY.

24          THE COURT:  ALL RIGHT.

25          MS. SOIEFER:  I HAVE WORKED WITH MR. HUNT AND MR.

1  CONTE TO EDIT THAT PARAGRAPH IN SUCH A WAY THAT IT IS ACCURATE.

2          THE COURT:  EXCUSE ME.  YOU HAVE WORKED WITH THOSE

3  TWO IN SUCH A WAY THAT IT IS ACCURATE, BUT I DON'T HAVE THAT.

4          MS. SOIEFER:  STARTING AT THE EIGHTH LINE --

5          THE COURT:  EXCUSE ME, IF YOU WILL WAIT JUST A

6  MINUTE.

7          MS. SOIEFER:  I APOLOGIZE.  I THOUGHT MR. HUNT HAD

8  GIVEN IT TO YOU.

9          THE COURT:  THAT IS ALL RIGHT.  TAKE YOUR TIME, OR

10 LET ME TAKE MY TIME.  YOU ARE TALKING ABOUT PAGE 8, PARAGRAPH

11 19.

12         MS. SOIEFER:  THE EIGHTH LINE DOWN, THERE IS A

13 SENTENCE THAT BEGINS, "MONEY RETRIEVED FROM THIS TRIP."

14         THE COURT:  YES, MA'AM.

15         MS. SOIEFER:  IF THE COURT PUTS A PERIOD AFTER THE

16 WORD "APARTMENT," AND THEN CROSSES OFF "TO BE COUNTED BY

17 RACHELLE EDMOND AND HER MOTHER, CONSTANCE PERRY," THAT IS THE

18 REST OF THAT LINE, THAT SENTENCE IS THEN ACCURATE.

19         THE COURT:  ALL RIGHT.

20         MS. SOIEFER:  IF THE COURT THEN ADDS "ON ONE

21 OCCASION" AND THEN STARTS, "KATHY SELLERS RECALLED SEEING MS.

22 CONSTANCE PERRY," PUT IN THE WORD "CONSTANCE COUNTING

23 MONEY" --

24         THE COURT:  ON ONE OCCASION KATHY SELLERS --

25         MS. SOIEFER:  -- RECALLED SEEING MS. CONSTANCE PERRY

1   COUNTING MONEY --

2           THE COURT:  -- AT THIS LOCATION.

3           MS. SOIEFER:  IF THE COURT CROSSES OFF THE WORDS

4   "THIS LOCATION" AND REPLACES IT WITH "THE PECONIC PLACE HOUSE

5   OF EDMOND AND MILLINGTON," IT IS THEN ACCURATE.

6           THE COURT:  THANK YOU.

7           MS. SOIEFER:  MR. CONTE IS CORRECT THAT THE ADDRESS

8   OF THE SUITLAND APARTMENT WAS NEVER ENTERED INTO EVIDENCE, AND

9   I SEE ABSOLUTELY NO RELEVANCE TO THE FACT THAT IT WAS OR WAS

10  NOT.  THE PURPOSE OF STATING THAT IT WAS THE SUITLAND APARTMENT

11  IS TO DISTINGUISH THE APARTMENT FROM THE HOUSE.

12          THE QUESTION WAS DID MR. MILLINGTON OR MS. EDMOND

13  CONDUCT ANY ILLEGAL ACTIVITIES AT EITHER LOCATION, AND IT WAS

14  CLEAR FROM THE TESTIMONY THAT WHAT IS CONTAINED IN PARAGRAPH 19

15  WAS ACCURATELY SUPPORTED BY THE EVIDENCE AT TRIAL.

16          SO, WHETHER OR NOT WE HAVE THE ADDRESS, WHETHER MR.

17  CONTE HAS IT, REALLY HAS ABSOLUTELY NOTHING TO DO WITH ANYTHING

18  ELSE.

19          THE COURT:  ALL RIGHT.

20          MS. SOIEFER:  PARAGRAPH EE ON MR. CONTE'S MEMO, MS.

21  SELLERS DID, IN FACT, TESTIFY THAT MR. MILLINGTON CALLED HER

22  FREQUENTLY, HE PAGED HER, SHE PAGED HIM ON OCCASION, AND HE

23  WOULD CALL HER BACK.  THERE WERE NUMEROUS COMMUNICATIONS

24  BETWEEN MS. SELLERS AND MR. MILLINGTON, AND I REALLY DON'T

25  UNDERSTAND THAT OBJECTION.

1    THE COURT: I MIGHT ADD PARENTHETICALLY, EVEN THOUGH

2 IT IS UNNECESSARY, I DON'T EITHER. GO AHEAD.

3    MS. SOIEFER: PARAGRAPH FF, MS. SELLER DID TESTIFY

4 THAT SHE DELIVERED MONEY TO MR. MILLINGTON AT THE SUITLAND

5 APARTMENT AND AT OTHER LOCATIONS. SHE TOOK THE PROCEEDS FROM

6 THE STRIP, FROM ORLEANS AND MORTON, AND DELIVERED THEM DIRECTLY

7 TO MR. MILLINGTON.

8    THE COURT: WAIT A MINUTE.

9    MS. SOIEFER: I APOLOGIZE, YOUR HONOR. WE DON'T HAVE

10 THE DIRECT OF KATHY SELLERS EITHER YET, THE TRANSCRIPT.

11    PARAGRAPH GG, THERE WERE NUMEROUS WITNESSES THAT

12 TESTIFIED TO THIS. KATHY SELLERS, JAMES MINOR, DENISE JOHNSON,

13 AND RAE ZANVILLE COME TO MIND IMMEDIATELY, AND WE BELIEVE IT IS

14 SUPPORTED BY THE EVIDENCE.

15    THE COURT: TELL ME AGAIN WHO THEY WERE.

16    MS. SOIEFER: KATHY SELLERS, JAMES MINOR, DENISE

17 JOHNSON, AND RAE ZANVILLE.

18    PARAGRAPH HH, WE BELIEVE THAT THE CONCLUSIONS STATED

19 IN THAT PARAGRAPH ARE ADEQUATELY SUPPORTED BOTH BY THE

20 TESTIMONY AT TRIAL AND THE TESTIMONY AT THE MOTIONS HEARING.

21    THE COURT WILL RECALL THAT THERE WAS TESTIMONY THAT

22 MR. MILLINGTON SPENT A GREAT DEAL OF TIME ON ORLEANS PLACE AND

23 MORTON PLACE. HE WAS SEEN BY MANY OF THE CO-CONSPIRATORS DOWN

24 THERE. UNLIKE MR. JONES, HE DID NOT LIVE THERE.

25    HE WAS A PERSON TO WHOM KATHY SELLERS REPORTED

 1  DIRECTLY.  HE WAS THE PERSON THAT SHE RECEIVED THE COCAINE FROM

 2  AND TO WHOM SHE TOOK THE PROCEEDS, AND HE WAS PRESENT AND

 3  SUPERVISING THE CLEAN-UP OF ONE OF THE STASH HOUSES ON ORLEANS

 4  PLACE AFTER THE POLICE RAID.

 5          HE AND ANTONIO JONES WERE STANDING THERE SUPERVISING,

 6  AND THE COURT MAY RECALL THAT THERE WAS A TAPED CONVERSATION

 7  WHERE RACHELLE EDMOND AND RAE ZANVILLE TALKED ABOUT MR.

 8  MILLINGTON ONCE HAVING HAD A GUN AT HIS HOME, AS REFERRED TO BY

 9  MR. CONTE.

10          WE BELIEVE THAT THE COURT MAY ALSO TAKE INTO ACCOUNT

11  THE TESTIMONY OF SHAWN MAGUIRE, LIEUTENANT MAGUIRE, AT THE

12  MOTIONS HEARING, AND NOT SO MUCH GETTING INTO THE QUESTION OF

13  THE SEARCHES OF MR. MILLINGTON, BUT THE REASONS FOR THE

14  SEARCHES, AND THAT IS THAT LIEUTENANT MAGUIRE INDICATED THAT HE

15  HAD BEEN TOLD OVER AND OVER AGAIN THAT MR. MILLINGTON ALWAYS

16  HAD A GUN EITHER ON HIM OR SOMEWHERE IN THE VICINITY.  THAT WAS

17  THE REASON THAT HE STOPPED HIM, NOT JUST BECAUSE HE FELT LIKE

18  TALKING TO JERRY MILLINGTON.

19          AND IT WAS THE REASONS FOR THE STOP THAT THE COURT

20  MAY TAKE INTO ACCOUNT, THAT IS, THE FACT THAT LIEUTENANT

21  MAGUIRE HAD RELIABLE INFORMATION THAT MR. MILLINGTON WAS KNOWN

22  TO CARRY A GUN.  WE BELIEVE THAT THAT ALSO SUPPORTS THE FACTS

23  CONTAINED IN PARAGRAPH 24.

24          DEALING WITH PARAGRAPH JJ AT THE SAME TIME, YOUR

25  HONOR, BECAUSE IT IS ALONG THE SAME LINES, IT IS NOT A QUESTION

1 OF WHETHER MR. MILLINGTON ACTUALLY HAD A GUN, IT IS WHETHER IT

2 WAS REASONABLY FORESEEABLE FOR HIM TO KNOW THAT THERE WERE GUNS

3 BEING USED DURING THE COURSE OF THE CONSPIRACY.  WE BELIEVE

4 THAT THAT IS AN APPROPRIATE CONCLUSION WHICH I WILL ADDRESS IN

5 A MOMENT.

6          GOING BACK TO PARAGRAPH II FOR A MINUTE, MR. CONTE

7 SEEMS TO ARGUE THAT THE TAPE RECORDING REGARDING A GUN AND THE

8 QUESTIONS ASKED BY MR. MILLINGTON DURING THE COURSE OF THAT

9 TAPE RECORDING PROVE NOTHING.

10          WE SUBMIT THAT THEY ARE DISPOSITIVE OF THE FACT THAT

11 MR. MILLINGTON, NOT JUST SHOULD HAVE KNOWN, BUT DID KNOW THAT

12 GUNS WERE BEING USED DURING THE COURSE OF THIS CONSPIRACY,

13 BECAUSE HE IS THE ONE ASKING IF THEY FOUND THE GUN.

14          SO, WE SUBMIT THAT THAT IS THE UTILITY AND THE VALUE

15 OF THAT PARTICULAR TAPED CONVERSATION FOR THE PURPOSES OF

16 SENTENCING, AND IT IS ACCURATE AS STATED IN THE ADDENDUM THAT

17 WE SUBMITTED.

18          THE CALIBER OF THE GUN OR THE FACT THAT THE GUN HAD

19 BEEN USED IN A HOMICIDE REALLY DOESN'T GO TO NEGATE THE

20 KNOWLEDGE OF MR. MILLINGTON THAT GUNS WERE BEING USED DURING

21 THE COURSE OF THE CONSPIRACY IN THIS CASE.

22          MOVING ON TO PARAGRAPH KK, AGAIN, THIS IS AN ARGUMENT

23 THAT I WILL ADDRESS WITH REGARD TO THE ROLE IN THE

24 ORGANIZATION, AND MOVING ON TO PARAGRAPH LL.  I DON'T THINK

25 THERE IS REALLY MUCH THAT I HAVE TO ANSWER.  IT APPEARS THAT

1  MR. CONTE IS SIMPLY SAYING THAT MR. MILLINGTON CANNOT SEEK THE

2  TWO-POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.  WE

3  AGREE.

4           THE COURT:  YOU AGREE?

5           MS. SOIEFER:  THAT HE CANNOT SEEK IT, YES, YOUR

6  HONOR.

7           THE COURT:  I ASSUME YOU DON'T AGREE FOR THE REASONS

8  HE STATED THROUGH HIS LAWYER.

9           MS. SOIEFER:  NO, BUT WE AGREE THAT HE HAS IN NO WAY

10  ACCEPTED RESPONSIBILITY, THEREFORE, HE CAN'T SEEK IT.

11          THE COURT:  I UNDERSTAND THAT, BUT YOU DON'T

12  AGREE -- I THOUGHT WHAT YOU JUST SAID COULD BE TAKEN AS YOU

13  AGREE WITH MR. CONTE'S ARGUMENT THERE.

14          MS. SOIEFER:  NO, YOUR HONOR.  WE JUST AGREE THAT

15  THERE IS NO NECESSITY FOR THE COURT --

16          THE COURT:  HIS ARGUMENT IS THAT BECAUSE OF THE

17  PENDENCY OF OTHER CHARGES, HE CAN'T SEEK A TWO-POINT REDUCTION

18  FOR ACCEPTANCE OF RESPONSIBILITY.

19          MS. SOIEFER:  YES, YOUR HONOR.  NO, WE SIMPLY TAKE

20  THE POSITION THAT THE COURT NEED NOT ADDRESS THE QUESTION OF

21  ACCEPTANCE OF RESPONSIBILITY.  WE AGREE WITH MR. CONTE IN THAT

22  REGARD, THAT THE COURT NEED NOT ADDRESS IT.

23          THE COURT:  HE IS NOT PREVENTED FROM DOING SO BECAUSE

24  OF THE PENDENCY OF OTHER CHARGES.

25          MS. SOIEFER:  NO, YOUR HONOR, BUT SIMPLY THAT THE

1  COURT NEED NOT ADDRESS IT, SO I AM NOT GOING TO TALK ABOUT IT.

2            THE COURT:  THANK YOU.  PROCEED.

3            MS. SOIEFER:  WE BELIEVE, THEREFORE, YOUR HONOR, THAT

4  THE PROBATION OFFICE APPROPRIATELY ASSESSED THE LEVEL 36 AS THE

5  BASE LEVEL OF THIS OFFENSE.  THEY THEN ADDED A TWO-POINT

6  INCREASE FOR THE POSSESSION OF A FIREARM IN CONNECTION WITH THE

7  OFFENSE.

8            WE BELIEVE WITH REGARD TO THE TWO-POINT INCREASE AS

9  TO GUNS, THAT MR. MILLINGTON SHOULD APPROPRIATELY RECEIVE THAT

10 TWO-POINT INCREASE.  THERE ARE SEVERAL REASONS FOR THAT.  MOST

11 OF THEM HAVE BEEN STATED DURING THE COURSE OF MY DISCUSSION OF

12 THE OTHER PARTS THAT MR. CONTE OBJECTED TO.

13           NUMBER ONE, MR. MILLINGTON SHOWED HIS PERSONAL

14 KNOWLEDGE THAT GUNS WERE BEING USED DURING THE COURSE OF THE

15 CONSPIRACY IN THE TAPE RECORDING WHICH WAS INTRODUCED AT TRIAL

16 REGARDING THE GUN FOUND IN THE ALLEY ON OCTOBER 13, 1988.

17           NUMBER TWO, DURING THE COURSE OF THE TAPE RECORDING

18 BETWEEN --

19           THE COURT:  EXCUSE ME JUST A MINUTE.  YES?

20           MS. SOIEFER:  DURING THE COURSE OF THE CONSENSUAL

21 TAPE RECORDING BETWEEN RAE ZANVILLE AND RACHELLE EDMOND, MS.

22 EDMOND STATES SPECIFICALLY THAT MR. MILLINGTON HAD HAD A GUN IN

23 HER HOME DURING THE COURSE OF THE CONSPIRACY, THAT IS, DURING

24 THE TIME FRAME THAT WE CHARGED AND THAT WAS PROVEN AT TRIAL --

25 I KNOW, YOUR HONOR, I SAY PROVEN -- WITH REGARD TO THE

1  CONSPIRACY IN THIS CASE.

2        AND, THIRDLY, THAT LIEUTENANT MAGUIRE TESTIFIED AT

3  THE MOTIONS HEARING IN THIS CASE THAT HE HAD INFORMATION FROM

4  MORE THAN ONE SOURCE, AND ON MORE THAN ONE OCCASION, THAT JERRY

5  MILLINGTON WAS KNOWN TO CARRY A GUN.

6        IN THIS CASE, EVEN APART FROM THE GENERAL ARGUMENT

7  THAT WE HAVE MADE WITH REGARD TO EVERY CO-DEFENDANT, THERE IS

8  SPECIFIC, CONCRETE INFORMATION BEFORE THE COURT THAT SHOWS THE

9  COURT THAT MR. MILLINGTON KNEW THAT GUNS WERE BEING USED DURING

10  THE COURSE OF THIS CONSPIRACY, NOT THAT HE EVEN SHOULD HAVE

11  KNOWN, BUT THAT HE DID KNOW.

12        APART FROM THAT, WE, OF COURSE, RELY ON THE SAME

13  ARGUMENT AS INDICATED IN THE BURKE CASE AND THE WHITE CASE,

14  THAT A CO-CONSPIRATOR WHO IS CHARGED AND CONVICTED OF A

15  CONSPIRACY OFFENSE IS RESPONSIBLE FOR THE ACTS OF THE CO-

16  CONSPIRATORS, AND I AM NOT GOING TO REPEAT THAT ARGUMENT AGAIN.

17        WE THEN BELIEVE THAT A THREE-POINT ADJUSTMENT

18  INCREASE FOR ROLE IN THE CONSPIRACY IS ALSO CORRECT, ROLE IN

19  THE OFFENSE IS ALSO CORRECT IN THIS CASE.

20        WE RELY PRIMARILY ON THE TESTIMONY AT TRIAL, AND THAT

21  IS VARIOUS WITNESSES WHO TESTIFIED THAT, NUMBER ONE, MR.

22  MILLINGTON SPENT A GREAT DEAL OF TIME DOWN ON ORLEANS PLACE AND

23  MORTON PLACE.  HE WAS ALWAYS SEEN SORT OF ROAMING THE STREETS,

24  KIND OF KEEPING AN EYE OUT FOR WHAT WAS GOING ON.

25        THE COURT MAY RECALL THAT MANY OF THE POLICE OFFICERS

1 WERE FAMILIAR WITH MR. MILLINGTON, AND THE EVIDENCE WAS USUALLY

2 THAT HE WAS JUST DOWN THERE, HE WAS WANDERING AROUND.  HE WAS,

3 HOWEVER, NOT A NATIVE TO THE AREA AS OPPOSED TO MR. JONES FROM

4 WHOM THE COURT HEARD TESTIMONY THAT HE LIVED ON 6TH STREET.

5 RATHER, MR. MILLINGTON WOULD DRIVE IN FROM EITHER HIS

6 SUITLAND APARTMENT OR THE PECONIC PLACE ADDRESS TO GET DOWN TO

7 ORLEANS PLACE TO WANDER AROUND.

8 THE TESTIMONY OF KATHY SELLERS WAS THAT MR.

9 MILLINGTON REPORTED DIRECTLY -- SHE REPORTED DIRECTLY TO MR.

10 MILLINGTON, THAT WHEN SHE STARTED TO WORK IN THE ORGANIZATION,

11 SHE WENT TO HER FRIEND, RACHELLE EDMOND.  RACHELLE EDMOND THEN

12 HAD JERRY MILLINGTON CALL HER OR GET BACK IN TOUCH WITH HER.

13 FROM THAT TIME FORWARD, MS. SELLERS STATED SPECIFICALLY THAT

14 SHE WORKED FOR THE "EDMOND ORGANIZATION" AND THAT SHE ANSWERED

15 TO JERRY MILLINGTON.

16 SHE TESTIFIED THAT SHE RECEIVED THOUSANDS AND

17 THOUSANDS OF DOLLARS IN PROCEEDS FROM THE STRIP, WHICH SHE TOOK

18 BACK DIRECTLY TO MR. MILLINGTON, AND SHE TESTIFIED FURTHER THAT

19 SHE RECEIVED HUNDREDS AND HUNDREDS OF $50 PACKETS OF COCAINE,

20 WHICH SHE DELIVERED DIRECTLY TO THE STRIP.

21 SHE GENERALLY DELIVERED TO THE STREET LIEUTENANTS,

22 SUCH AS KEITH COOPER, BUT ON OCCASION, WHEN SHE HAD TO, SHE

23 WOULD GIVE THE COCAINE TO JERRY MILLINGTON WHO WAS ALSO DOWN

24 THERE IN HIS CAPACITY AS THE, IN ESSENCE, MANAGER OF THE STREET

25 OPERATIONS.

THE COURT ALSO HEARD TESTIMONY THAT MR. MILLINGTON

SUPERVISED THE CLEAN-UP OF THE HOUSE ON ORLEANS PLACE AND

PERHAPS MOST IMPORTANTLY, THE COURT HEARD THE TESTIMONY OF MS.

RACHELLE EDMOND TALKING ABOUT THE ROLE OF HER COMMON LAW

HUSBAND, MR. JERRY MILLINGTON.

THE COURT MAY RECALL THE TAPE --

THE COURT: AT THE MOTIONS HEARING.

MS. SOIEFER: NO, YOUR HONOR, DURING TRIAL. THE

COURT MAY RECALL THAT THERE WAS A TAPE PLAYED WHICH WE

COLLOQUIALLY CALLED THE PECONIC PLACE TAPE. THAT WAS A TAPE

RECORDING MADE BY MS. ZANVILLE CONSENSUALLY AT PECONIC PLACE.

SHE WAS CALLED BY MR. EDMOND AND ASKED TO COME OUT TO

PECONIC PLACE. I BELIEVE THE DATE OF THE TAPE WAS IN JANUARY,

RIGHT AFTER NEW YEAR'S, IN JANUARY OF 1989. SHE WENT OUT TO

PECONIC PLACE. THE FIRST PEOPLE WHO WERE THERE WERE JERRY

MILLINGTON AND RACHELLE EDMOND, OF COURSE, WHO LIVED THERE.

MR. MELVIN STEWART WAS THERE FOR A SHORT PERIOD OF TIME, AND

LATER ON MR. RAYFUL EDMOND ARRIVED.

THERE WERE A NUMBER OF PEOPLE DURING THE COURSE OF

THIS MEETING WHO CAME AND WENT FROM THE HOUSE, ALL OF THEM CO-

CONSPIRATORS IN THIS CASE. DURING THE COURSE OF THAT

CONVERSATION, MS. EDMOND TALKED ABOUT THE ROLE OF MR.

MILLINGTON, AND SHE SPECIFICALLY TALKED -- THAT WAS WHEN SHE

HAD THE CONVERSATION ABOUT THE GUNS IN THE HOUSE.

SHE TALKED ABOUT HOW SHE WAS DESTROYING DOCUMENTS SO

1  NO ONE WOULD EVER BE ABLE TO FIND ANYTHING, AND SHE ALSO MADE A

2  RATHER INTERESTING COMMENT THAT IS VERY TELLING AS TO BOTH HER

3  OWN KNOWLEDGE OF THE CONSPIRACY AND MR. MILLINGTON'S ROLE IN

4  THE CONSPIRACY. THAT IS, THAT MS. EDMOND SAID THAT SHE WASN'T

5  GOING TO MARRY JERRY, SHE WASN'T GOING TO MARRY MR. MILLINGTON,

6  THEY WERE LIVING TOGETHER COMMON LAW, UNTIL HE HAD A JOB.

7        THAT IS, SHE ACKNOWLEDGED THAT HE HAD NOT BEEN

8  EMPLOYED, WAS NOT EMPLOYED, AND WAS BASICALLY DOING HIS, QUOTE,

9  "WORK" ON THE STRIP IN ORDER TO EARN MONEY, AND SHE WASN'T

10 GOING TO BECOME HIS LEGITIMATE -- I SHOULDN'T SAY

11 LEGITIMATE -- HIS LAWFUL WIFE AS OPPOSED TO COMMON LAW WIFE,

12 UNTIL SUCH TIME AS HE HAD LEGITIMATE INCOME.

13       SHE STATES THAT SPECIFICALLY. SHE SAYS SHE WOULD NOT

14 MARRY HIM UNTIL HE HAD A JOB, AND THE REASON FOR THAT THAT SHE

15 GIVES IS THAT SHE KNOWS THAT THE GOVERNMENT CAN SEIZE ASSETS,

16 AND SHE KNOWS THAT IF SHE IS ON A PARTICULAR ASSET, DEEDED OR

17 TITLED ON THAT ASSET, IT CAN BE SEIZED AS HER PROPERTY, AS WELL

18 AS HER COMMON LAW HUSBAND'S PROPERTY.

19       UNFORTUNATELY, SHE WASN'T AS SOPHISTICATED IN THE LAW

20 AS PERHAPS HER ATTORNEY IS, SO IT HAPPENED ANYWAY, AND SHE

21 WASN'T ABLE TO PREVENT WHAT SHE WAS ATTEMPTING TO PREVENT

22 DURING THE COURSE OF THAT CONVERSATION.

23       BUT BY MS. EDMOND'S OWN WORDS, SHE LETS ALL OF US

24 KNOW THAT MR. MILLINGTON'S JOB WAS DOWN ON ORLEANS PLACE AND

25 THAT HE HAD NO OTHER LEGITIMATE EMPLOYMENT.

1    WE SUBMIT THAT ALL OF THE TESTIMONY THAT THE COURT

2  HEARD AT TRIAL SUPPORTS THE CONCLUSION OF THE PROBATION OFFICER

3  AND THE UNITED STATES THAT MR. MILLINGTON SHOULD RECEIVE A

4  THREE-POINT INCREASE FOR HIS ROLE IN THE OFFENSE.

5    THAT LEAVES, YOUR HONOR, A BASE LEVEL OFFENSE OF 41.

6  THE CRIMINAL HISTORY, AS PREPARED BY THE PROBATION OFFICER, IS

7  A 4, AND I BELIEVE THAT THE COURT HAS ALREADY ADDRESSED THE

8  QUESTION OF THE APPROPRIATE WAY IN WHICH TO COMPUTE THE

9  CRIMINAL HISTORY.

10    EVEN IF THE CRIMINAL HISTORY IS REDUCED TO 3, IT DOES

11  NOT CHANGE THE GUIDELINES' COMPUTATION, AND THAT IS, 360 MONTHS

12  TO LIFE.  THAT IS THE COMPUTATION WITH EITHER A CRIMINAL

13  HISTORY OF 3 OR 4.

14    THE COURT:  THAT BEING SO, WHAT IS THE GOVERNMENT'S

15  RECOMMENDATION?

16    MS. SOIEFER:  OUR RECOMMENDATION, YOUR HONOR, IS THAT

17  THE COURT USE THE GUIDELINES AND THE STATUTE AS PROVIDED BY LAW

18  TO IMPOSE THE MAXIMUM SENTENCE POSSIBLE IN THIS CASE.  WE

19  SUBMIT THAT MR. MILLINGTON WAS INTRICATELY INVOLVED IN THE

20  CONSPIRACY, HE WAS A HIGH-LEVEL MANAGER.

21    FROM THE PHONE CALLS ON WHICH HE WAS TAPE-RECORDED,

22  IT WAS CLEAR THAT PEOPLE REPORTED TO HIM.  THE PERSON CALLING

23  ABOUT THE GUN IN THE ALLEY WAS CALLING TO REPORT TO MR.

24  MILLINGTON.  HE RECEIVED THE PROCEEDS FROM THE STRIP.  HE

25  DIRECTED OTHER PEOPLE AS TO WHAT THEY WERE SUPPOSED TO DO AND

1   WHERE THEY WERE SUPPOSED TO GO.

2          THE COURT MAY REMEMBER HEARING TESTIMONY, NOT JUST

3   FROM THE POLICE OFFICERS, BUT ALSO FROM, I BELIEVE IT WAS MR.

4   KEITH HAWKINS, THAT MR. MILLINGTON WAS DOWN ON THE STRIP.

5          IN THIS CASE, YOUR HONOR, NOT ONLY DID MR. MILLINGTON

6   BECOME ACTIVELY INVOLVED AND CONTINUE HIS ACTIVE PARTICIPATION

7   FOR QUITE SOMETIME, BUT HE ALSO PROFITED FROM THAT

8   PARTICIPATION.  HE PROFITED IN THE SENSE THAT HE WAS ABLE TO

9   PURCHASE TWO HOMES, NOT JUST ONE BUT TWO.  PERHAPS BECAUSE OF

10  HIS OWN CONNECTION TO RACHELLE EDMOND, THE SISTER OF RAYFUL

11  EDMOND, THERE WERE TWO HOMES PURCHASED, THE PECONIC PLACE HOUSE

12  AND THE HOUSE ON CASTLETON TERRACE, WHICH HAS SUBSEQUENTLY BEEN

13  THE SUBJECT OF FORECLOSURE.

14         THERE WERE TWO CARS PURCHASED, AS THE COURT HEARD,

15  THE CAR OF CHOICE OF A NUMBER OF WELL-TO-DO PEOPLE IN THIS

16  COMMUNITY, A VOLVO, WITH A CAR TELEPHONE, AS WELL AS A

17  PATHFINDER, AGAIN WITH A CAR TELEPHONE.

18         MR. MILLINGTON HAD THE TRAPPINGS.  THE COURT MAY

19  RECALL THE TESTIMONY ABOUT THE PAGERS, AND THAT IS HOW KATHY

20  SELLERS GOT IN TOUCH WITH MR. MILLINGTON, BY THE PAGER.

21         BY THE WAY, YOUR HONOR, THE COURT MAY RECALL THE

22  TESTIMONY THAT MS. SELLERS SAID THAT MR. MILLINGTON HAD A KEY

23  TO HER APARTMENT.  MR. MILLINGTON WAS ABLE TO GET INTO HER

24  APARTMENT WHENEVER HE NEEDED TO, TO TAKE THE COCAINE OUT OF THE

25  APARTMENT.

1      MR. MILLINGTON WAS ALSO PHOTOGRAPHED IN HIS FINERY

2 WITH THE GOLD MEDALLION, THE COURT MAY RECALL, FROM THE PICTURE

3 THAT WAS INTRODUCED AT TRIAL, ONE OF THE PICTURES INTRODUCED AT

4 TRIAL.

5      FINALLY, YOUR HONOR, MR. MILLINGTON'S PARTICIPATION

6 DURING THIS CONSPIRACY SPANNED NOT JUST UP TO THE TIME OF HIS

7 ARREST, BUT STARTED FAR BEFORE THAT, AND AS THE COURT WILL

8 RECALL, MS. SELLERS' TESTIMONY WAS THAT SHE WAS INVOLVED IN THE

9 CONSPIRACY, WORKING DIRECTLY FOR JERRY MILLINGTON FROM

10 APPROXIMATELY NOVEMBER OF 1987 UP UNTIL THE TIME THAT SHE GOT

11 OUT OF THE CONSPIRACY IN APPROXIMATELY JUNE -- ACTUALLY, AROUND

12 JULY 4TH WEEKEND OF 1988.

13      THUS, MR. MILLINGTON ALSO PARTICIPATED IN THIS

14 CRIMINAL CONDUCT DURING THE PERIOD OF TIME THAT HE WAS WITHIN

15 TWO YEARS OF HIS RELEASE FROM PREVIOUS FEDERAL CHARGES.  MR.

16 MILLINGTON HAS A SUBSTANTIAL CRIMINAL HISTORY, BUT SEEMS NOT TO

17 HAVE LEARNED ANYTHING FROM THAT.

18      INSTEAD, HE WENT RIGHT BACK TO HIS CRIMINAL WAYS,

19 RIGHT BACK TO PARTICIPATING IN THIS CONSPIRACY FULLY AND

20 VIGOROUSLY, AND SEEMS TO HAVE HAD ABSOLUTELY NO REMORSE,

21 ABSOLUTELY NO REGRETS, AND ABSOLUTELY NO DESIRE TO LEAVE THE

22 CONSPIRACY UNTIL THE PERIOD OF TIME THAT HE WAS ARRESTED.

23      TO PARAPHRASE MR. MILLINGTON, YOUR HONOR, HE AND HIS

24 CO-DEFENDANTS HAD A GOOD RUN, BUT IT IS TIME NOW FOR HIM, LIKE

25 HIS CO-DEFENDANTS, TO DO HIS TIME.  WE ASK THE COURT TO LISTEN

1   TO THE WORDS OF MR. MILLINGTON AND IMPOSE A LIFE SENTENCE.

2   THANK YOU, YOUR HONOR.

3   THE COURT:  MS. SOIEFER, ONE QUESTION, IF YOU WILL

4   GIVE ME A MOMENT.  THERE IS SOMEPLACE IN MR. CONTE'S PAPERS ON

5   BEHALF OF THIS DEFENDANT -- I CAN'T RECALL WHERE I READ

6   THEM -- INVOLVING ONE OF THE LATTER POINTS YOU JUST MADE,

7   SUGGESTING THAT THE GOVERNMENT HAS THE OBLIGATION TO PROVE WHEN

8   MR. MILLINGTON JOINED THE CONSPIRACY BECAUSE OF WHEN HE GOT OUT

9   OF JAIL.

10   ISN'T THERE SOMETHING IN THERE ABOUT THAT?

11   MS. SOIEFER:  YES, YOUR HONOR.

12   THE COURT:  WHERE IS THAT, WHAT PAGE?

13   MS. SOIEFER:  WELL, THE PAGES AREN'T NUMBERED, BUT IT

14   IS LETTERED PARAGRAPH E, ABOUT THE SECOND TO THE LAST PAGE, I

15   THINK.

16   THE COURT:  THE SECOND TO THE LAST PAGE, I SEE IT.

17   MS. SOIEFER:  THAT WAS WHAT I WAS ATTEMPTING TO

18   ADDRESS, YOUR HONOR.  WE BELIEVE THAT WE DO NOT NEED TO PROVE

19   THE DATE THAT MR. MILLINGTON JOINED THE CONSPIRACY, BUT SIMPLY

20   THAT THE CRIMINAL ACTIVITY TOOK PLACE WITHIN TWO YEARS FROM HIS

21   RELEASE.

22   MR. CONTE:  WE WILL SUBMIT ON THAT.

23   THE COURT:  WHAT DID YOU JUST SAY?  DON'T HAVE TO

24   PROVE WHAT?

25   MS. SOIEFER:  WE DO NOT HAVE TO PROVE WHEN MR.

1  MILLINGTON JOINED THE CONSPIRACY.

2          THE COURT:  ONLY?

3          MS. SOIEFER:  THAT THERE IS SOME CRIMINAL DURING THE

4  PERIOD OF TIME WITHIN TWO YEARS OF HIS RELEASE.  AND THAT IS

5  WHY I ADDRESS THE DATES GIVEN BY KATHY SELLERS, YOUR HONOR.

6          THE COURT:  DO YOU WITHDRAW THAT ARGUMENT?

7          MR. CONTE: YES, YOUR HONOR.

8          THE COURT:  I THOUGHT YOU WOULD.

9          PARAGRAPH E UNDER THE GUIDELINE COMPUTATION IS

10  WITHDRAWN IN THE DEFENDANT'S MEMORANDUM BY THE DEFENDANT'S

11  LAWYER.

12          ANYTHING ELSE.

13          MS. SOIEFER:  NO, YOUR HONOR.

14          THE COURT:  THANK YOU VERY MUCH.

15          MR. CONTE, DO YOU WISH TO RESPOND ANY FURTHER?

16          MR. CONTE:  YOUR HONOR, ADDRESSING PARAGRAPH 13 EVEN

17  WITH THE GOVERNMENT'S PROPOSED CHANGES OF THE PRE-SENTENCE

18  REPORT, IT DOES NOT ALTER THE CLEAR MEANING OF THE LAST

19  SENTENCED WHICH IT IMPLIES THAT ALL THE PERSONS LISTED ON PAGE

20  5 WERE INVOLVED IN THE WHOLESALE DISTRIBUTION OF COCAINE.

21          THE COURT:  ANYTHING ELSE?

22          MR. CONTE:  YES.  I CONSULTED WITH MY CLIENT.  IT IS

23  HIS BELIEF AND MY BELIEF THAT ONLY MS. ZANVILLE TESTIFIED THAT

24  ONLY ONCE DID MR. MILLINGTON DELIVER A KILO OF COCAINE TO HER

25  SOUTHEAST APARTMENT.

 1          YOUR HONOR, WITH RESPECT TO THE OBJECTIONS MS.

 2   SOIEFER RAISES VIS-A-VIS MS. RACHELLE EDMOND'S HOSPITALIZATION

 3   THAT I WAS NOT EXPECTING, I WOULD LIKE THE TIME TO CALL DR.

 4   CHUMPITAZI, MS. RACHELLE EDMOND'S DOCTOR, TO THE STAND SO THAT

 5   HE COULD BE EXAMINED AS TO THE NATURE OF THE DIFFICULTIES OF

 6   HER PREGNANCY AND HOW MUCH TIME SHE WOULD HAVE BEEN

 7   INCAPACITATED DUE TO THAT PREGNANCY, THAT PROCEDURE THAT THEY

 8   PERFORMED AND ANY RECOVERY AFTERWARDS.

 9          I THINK THAT THAT IS THE ONLY WAY THAT WE CAN

10   OVERCOME THIS IMPASSE THAT WE SEEM TO BE AT ON THAT MATTER.

11          THE SUITLAND APARTMENT, YOUR HONOR, THE ADDRESS HAS

12   NEVER BEEN ESTABLISHED.  THERE IS NO WAY THAT I CAN ADDRESS AN

13   ARGUMENT WHEN SOMEBODY SAYS THAT IT IS AN ADDRESS IN SUITLAND.

14   I HAVE NEVER BEEN PRIVY TO THAT ADDRESS.  MY CLIENT DOESN'T

15   KNOW IT, AND THE GOVERNMENT HAS NEVER PROVIDED THAT INFORMATION

16   TO ME.

17          THE MONITORING OF THE STREET OPERATIONS, THE

18   GOVERNMENT MENTIONS THE NAME DENISE JOHNSON.  MS. DENISE

19   JOHNSON NEVER SAID ANYTHING CONCERNING MR. MILLINGTON DURING

20   HER ENTIRE TESTIMONY.

21          THE TESTIMONY ABOUT PEOPLE SEEING MR. MILLINGTON ON

22   THE STRIP.  THERE WAS TESTIMONY BY ONE OFFICER THAT MR.

23   MILLINGTON WAS IN 653 ORLEANS PLACE WITH HIS ARMS FOLDED, AND

24   THAT WAS THE TOTAL EXTENT OF THAT TESTIMONY.

25          TWO OTHER POLICE OFFICERS TESTIFIED THAT THEY SAW MR.

1 MILLINGTON ON EITHER MORTON OR ORLEANS PLACE. NONE OF THE

2 THREE OFFICERS EVER TESTIFIED THAT THEY EVER SAW MR. MILLINGTON

3 DOING ANYTHING ILLEGAL.

4 I THINK THAT SETS THE PREDICATE TO THIS GUN COUNT,

5 THE TWO POINT CONVERSION ON THE GUNS THAT WE HAVE BEEN TALKING

6 ABOUT. ALL WE'VE HAD AND ALL MS. SOIEFER CAN PROFFER TO THE

7 COURT IS THE TESTIMONY OF LIEUTENANT SHAWN MAGUIRE, WHO NEVER

8 DIVULGED THE SOURCES THAT HE GOT THIS INFORMATION THAT MR.

9 MILLINGTON WAS CARRYING A GUN AND THEN IN DIRECT CONTRADICTION

10 OF THAT TESTIMONY TESTIFIES THAT HE STOPPED MR. MILLINGTON ON

11 NUMEROUS OCCASIONS AND NEVER FOUND A GUN.

12 I DON'T BELIEVE THE COURT CAN USE THAT TYPE OF AN

13 ARGUMENT WHERE WE HAVEN'T HAD A CHANCE TO CROSS-EXAMINE THE

14 PEOPLE THAT WHO WERE TALKING WITH LIEUTENANT MAGUIRE. WE DON'T

15 EVEN KNOW THE NAMES OF THE PEOPLE WHO WERE TALKING TO

16 LIEUTENANT MAGUIRE TO BASE THIS TWO POINT INCREASE WHICH IS AN

17 INCREASE THAT COULD RESULT IN A LIFE SENTENCE FOR MY CLIENT,

18 WHEN WE HAVE NO PROOF OF THAT.

19 THE SAME THING GOES FOR THE RACHELLE EDMOND TAPE

20 WHERE SHE SAID THAT SHE WOULDN'T A GUN IN HER HOUSE.

21 YOUR HONOR, GUNS ARE NOT ILLEGAL IN THE STATE OF

22 MARYLAND. YOU CAN WALK INTO ANY STORE WITH A VALID DRIVERS

23 LICENSE, PROVE THAT YOU ARE A RESIDENCE OF THE STATE OF

24 MARYLAND AND PURCHASE A HAND GUN AND EVEN, IF YOU FOLLOW THE

25 COMPLEX SET OF REGULATIONS, A MACHINE GUN.

1          WE DIFFER WITH MS. SOIEFER ON THE INTERPRETATION.

2          THE COURT:  DOES FEDERAL LAW BIND THE STATE OF

3  MARYLAND WITH RESPECT TO THE SALE OF WEAPONS?

4          MR. CONTE:  CERTAINLY, THE FEDERAL LAW IS BINDING ON

5  THE STATE OF MARYLAND, YOUR HONOR.

6          BUT THERE IS NO FEDERAL LAW THAT PROHIBITS THE USE OF

7  A WEAPON.  I THINK MANY TIMES PEOPLE MISINTERPRET D.C. LAW.  WE

8  PEOPLE WHO PRACTICE LAW IN THE DISTRICT OF COLUMBIA SEEM TO GET

9  THE IDEA THAT HANDGUNS ARE FORBIDDEN WHEN, IN FACT, THEY

10  CERTAINLY ARE NOT.  THAT ANYBODY OUTSIDE THE DISTRICT,

11  CERTAINLY IN THE NEIGHBORING JURISDICTIONS, IS PERMITTED TO OWN

12  A HANDGUN.  IN FACT, I KNOW OF PEOPLE WHO OWN VALIDLY

13  REGISTERED MACHINE GUNS ALTHOUGH IT IS A MUCH MORE DIFFICULT

14  PROCESS.

15          RACHELLE EDMOND'S COMMENTS THAT SHE DIDN'T EVEN WANT

16  THE GUN IN THE HOUSE, THERE IS NO INDICATION FROM THAT

17  CONVERSATION THAT THAT GUN WAS USED IN A DRUG TRAFFICKING

18  CRIME.

19          THE COURT'S INDULGENCE.

20          AGAIN, MY CLIENT AND I HAVE CONSULTED.  WE DON'T

21  BELIEVE MS. SELLERS EVER SAID THAT SHE GAVE ANY NARCOTICS TO

22  MR. MILLINGTON OR ANY MONEY.

23          MS. ZANVILLE NEVER TESTIFIED THAT MR. MILLINGTON

24  MONITORED ANY STREET OPERATIONS.  MS. ZANVILLE ONLY TESTIFIED

25  THAT MR. MILLINGTON, ON THAT ONE OCCASION, DELIVERED A KILO OF

1  COCAINE.

2       IN ADDITION, MR. MINOR, WHO WAS THE PERSON CARRYING

3  THE DRUGS AND WHO MADE DELIVERIES TO THE DRUGS, FROM MY

4  RECOLLECTION OF THE TESTIMONY, NEVER SPOKE ABOUT THE STRIP NOR

5  DID HE TALK ABOUT MR. MILLINGTON BEING ANYWHERE AN OVERSEER OR

6  A LIEUTENANT IN THE OPERATIONS OF THE STRIP.

7       THE COURT:  I'M WAITING.

8       MR. CONTE:  THAT'S ALL I HAVE AS CONCERNING MS.

9  SOIEFER'S CHANGES.

10      THE COURT:  DOES MR. MILLINGTON HAVE ANYTHING TO SAY

11 TO THE COURT BEFORE IT IMPOSES SENTENCE.

12      MR. CONTE:  I HAVE A FEW FINAL COMMENTS ON BEHALF OF

13 MR. MILLINGTON.

14      YOUR HONOR, I RECALL BEING HERE ON THE DATE MR.

15 RAYFUL EDMOND WAS SENTENCED, AND THE COURT, SPEAKING AT THAT

16 TIME OF LENITY AND MERCY, AND WE ARE HERE TODAY SEEKING LENITY

17 AND MERCY FROM THE COURT.

18      AS THE COURT IS WELL AWARE, THE SENTENCING IS TO

19 PUNISH AND TO REHABILITATE.  THERE IS ABSOLUTELY NO

20 REHABILITATION IN THE SENTENCE THAT THE GOVERNMENT SUGGESTS, A

21 LIFE SENTENCE.

22      A LIFE SENTENCE IS JUST A PURE PUNISHMENT, AND

23 PUNISHMENT SHOULD BE IMPOSED IN THIS CASE, BUT THE COURT NEEDS

24 TO WEIGH THE PUNISHMENT WITH WHAT IS GOING TO HAPPEN TO THE

25 REST OF SOCIETY AND TO MR. MILLINGTON WHEN IT IMPOSES SENTENCE.

1    THERE IS NO REHABILITATION IN A LIFE SENTENCE.  IT'S

2    JUST A SENTENCE WHICH IMPOSES UPON THIS SOCIETY THE CARE AND

3    FEEDING OF MR. MILLINGTON FOR THE REST OF HIS LIFE.  A SENTENCE

4    OF LIFE IN THIS CASE WILL TELL SOCIETY THAT WE THINK THAT THERE

5    ARE CERTAIN CLASSES OF PEOPLE WHO ARE BEYOND REHABILITATION,

6    AND I DON'T BELIEVE, YOUR HONOR, THAT ANY PERSON ALIVE TODAY IS

7    BEYOND REHABILITATION.

8        I THINK THAT THE RESOURCES EXIST THAT THE PROPER

9    AMOUNT OF PUNISHMENT MIXED WITH STUDY, WITH CARE, WITH

10   EDUCATION AND EVEN RELIGION, YOUR HONOR, CAN REHABILITATE A

11   PERSON.  A SENTENCE OF LIFE WHERE THE TAKING OF A LIFE HASN'T

12   BEEN INVOLVED, WHERE THERE IS NO EYE-FOR-EYE ARGUMENT TO BE

13   MADE IS PURE AND SIMPLE PUNISHMENT.

14       THAT, AS SUCH, IT IS A WORD FROM THIS COURT THAT

15   THERE ARE NUMEROUS PEOPLE, NOT ONLY MR. MILLINGTON, NOT ONLY

16   THE PEOPLE ON TRIAL IN THIS CASE -- I THINK THAT A LIFE

17   SENTENCE IS GOING TO TELL NUMEROUS PEOPLE IN THIS SOCIETY THAT

18   WE DON'T THINK YOU HAVE ANY VALUE TO THIS SOCIETY WHATSOEVER,

19   THAT YOU ARE BEYOND HOPE, THAT YOU ARE BEYOND REHABILITATION.

20       WHEN WE FINISHED THIS TRIAL ON DECEMBER 6TH, THERE

21   WAS ON THE T.V. THAT EVENING A STATEMENT BY J.P. STEPHENS, THE

22   U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA, WHO SAID "WE'RE

23   GOING TO SEND A MESSAGE AND THIS CASE HAS SENT A MESSAGE TO

24   THIS SOCIETY."

25       WELL, THE COURT IS GOING TO SEND A MESSAGE TO SOCIETY

1    TODAY, TOO, WHEN IT SENTENCES MY CLIENT, AND, YOUR HONOR, IT IS

2    MY BELIEF THAT IF THIS COURT SENTENCES MY CLIENT TO LIFE, IT'S

3    TELLING NOT ONLY MY CLIENT BUT A LOT OF PEOPLE OUT IN THE CITY

4    OF WASHINGTON THAT THE UNITED STATES OF AMERICA THROUGH THE

5    UNITED STATES DISTRICT COURT BELIEVES THAT THEY ARE BEYOND

6    REHABILITATION, THAT THEY CANNOT BE HELPED, THAT THEIR SOULS

7    ARE CONSIGNED TO SPEND THE REST OF THEIR LIVES IN JAIL.  AND I

8    NEED THE COURT TO NOTE THAT WHEN MR. MILLINGTON AND MR. EDMOND

9    AND THE 22 OTHERS OR HOWEVER MANY THERE WERE, WERE TAKEN OFF

10   THE STREETS OF WASHINGTON --

11            THE COURT:  30 SOMETHING.

12            MR. CONTE:  -- THERE WAS NO VOID IN THE AMOUNT OF

13   COCAINE IN THE STREETS OF WASHINGTON.  THAT VOID WAS FILLED BY

14   OTHER PEOPLE.  AND THOSE PEOPLE ARE STILL OUT THERE, AND IF THE

15   COURTS SENTENCES MY CLIENT TO LIFE, I THINK THAT THE COURT IS

16   TELLING THOSE PEOPLE "YOU ARE BEYOND REDEMPTION."

17            THAT'S THE MESSAGE I THINK THE COURT NEEDS TO

18   CONSIDER.  MR. STEPHENS HAD A GOOD MESSAGE, AND WHEN MR.

19   STEPHENS MADE THOSE STATEMENTS TO THE PRESS, HE MADE A GOOD

20   POINT.

21            BUT WHAT IS THE PURPOSE OF THIS COURT IN TODAY'S

22   HEARING IN THE SENTENCING FOR MY CLIENT?  IS IT TO REWARD THE

23   UNITED STATES?  IS IT TO PUNISH?  IS IT TO TELL SOCIETY THAT WE

24   ARE NOT GOING TO COUNTENANCE THIS KIND OF ACTIVITY?

25            I SUGGEST, YOUR HONOR, THAT IT IS THE LAST TWO.  IT

1   IS TO PUNISH, AND IT IS TO TELL THIS SOCIETY THAT WE ARE NOT

2   GOING TO COUNTENANCE THIS TYPE OF ACTIVITY.  BUT TO TELL THESE

3   PEOPLE, AND THEY ARE STILL OUT THERE, YOUR HONOR, THAT THEY ARE

4   BEYOND REDEMPTION IS NOT, I BELIEVE, THE PURPOSE OF THIS COURT.

5         THE COURT:  WHAT MESSAGE WOULD BE SENT TO THOSE

6   PEOPLE WHO ARE STILL ON THE STREETS, IF THIS HASN'T HAD ANY

7   IMPACT ON THE SALE OR DISTRIBUTION OF DRUGS IN THE CITY OF

8   WASHINGTON, WHAT MESSAGE WOULD BE SENT TO THEM IF THIS MAN WERE

9   SENT TO JAIL FOR A LONG PRISON TERM, IF THEY GOT CAUGHT?  WHAT

10  MESSAGE WOULD BE SENT TO THEM?

11        MR. CONTE:  YOUR HONOR, A LONG PERIOD OF

12  INCARCERATION MAY BE WARRANTED.  AND THE MESSAGE IS --

13        THE COURT:  WHAT WOULD THE MESSAGE BE, SIR?

14        MR. CONTE:  THE MESSAGE IS THAT YOU WILL BE PUNISHED.

15  BUT YOU ARE NOT BEYOND REDEMPTION.

16        THE COURT:  THANK YOU.  ANYTHING ELSE.

17        MR. CONTE:  YES, YOUR HONOR.  A FEW THINGS.

18        MS. SOIEFER TALKS ABOUT MY CLIENT'S HOUSES, TWO, AND

19  HIS CARS, A VOLVO AND A PATHFINDER.  YOUR HONOR, SHE CALLS THEM

20  THE TRAPPINGS, AND I THINK SHE MEANT BY THAT THE TRAPPINGS OF A

21  DRUG DEALER.

22        THE COURT SAW THE VIDEO TAPE.  WHAT WE HAD HERE, YOUR

23  HONOR, WAS A MEDIUM PRICED HOUSE IN THE SUBURBS AND TWO

24  MODERATELY PRICED CARS AND NOT THE LAVISH LIFE STYLES OF SOME

25  OF THE CO-DEFENDANTS IN THIS CASE OR MORE OF THE PEOPLE THAT WE

1  SEE ON THE T.V. SHOWS EVERY NIGHT OF THE WEEK.

2         MY CLIENT'S HOUSE WAS JUST A MIDDLE CLASS HOUSE.  THE

3  ONLY THING THAT MOST OF US IN THIS SOCIETY ASPIRE TO, A HOUSE

4  IN THE SUBURBS WHERE THEY CAN CARE FOR CHILDREN, AND MY CLIENT

5  HAS TWO CHILDREN THAT HE HAS ALWAYS CARED FOR.  ONE WAS

6  ACTUALLY BORN WHILE HE WAS HERE IN TRIAL.

7         I THINK THE COURT NEEDS TO TAKE ALL OF THOSE FACTORS

8  IN CONSIDERATION IN IMPOSING SENTENCE.

9         I FINALLY ASK THE COURT, AND HE MAY ASK THE COURT

10 HIMSELF.  WE BELIEVE THAT HE WILL BE DESIGNATED AS CATEGORY

11 FIVE AND THAT HE COULD EITHER RESIDE EITHER LEWISBURG OR

12 PETERSBURG IN EITHER OF THE FEDERAL CORRECTIONAL INSTITUTES.

13        THE BUREAU OF PRISONS WILL AND CAN TAKE INTO ACCOUNT

14 A RECOMMENDATION LIKE THAT AND STILL APPLY ITS OWN PARAMETERS

15 AS TO WHERE A PERSON IS INCARCERATE.  BECAUSE MR. MILLINGTON

16 HAS TWO CHILDREN WHO RESIDE WITH AN AGED AUNT, WE WOULD ASK THE

17 COURT TO NOTE THAT THE COURT DOES NOT OPPOSE INCARCERATION AT

18 EITHER LEWISBURG OR PETERSBURG WHICH ARE WITHIN A DRIVING

19 DISTANCE OF MR. MILLINGTON'S FAMILY.

20        THE COURT:  THANK YOU.

21        MR. MILLINGTON, DO YOU HAVE ANYTHING YOU WANT TO SAY

22 TO THE COURT BEFORE THE COURT IMPOSES SENTENCE?

23        DEFENDANT MILLINGTON:  I WOULD JUST LIKE TO

24 APOLOGIZE.

25        THE COURT:  PARDON ME.  MOVE INTO THE MICROPHONE,

1    PLEASE SIR.

2           DEFENDANT MILLINGTON:  I WOULD JUST LIKE TO APOLOGIZE

3    TO THE COMMUNITY FOR MY PARTICIPATION IN THIS CONSPIRACY.

4           MS. SOIEFER SAID THAT I DIDN'T HAVE ANY REMORSE, BUT

5    I HAVE A LOT OF REMORSE FOR MY KIDS, FOR MYSELF AND OTHER

6    PEOPLE THAT I MIGHT HAVE CAUSED TO DO THINGS FOR ME, AND AT

7    THIS TIME, I AM HURTING INSIDE.

8           AND I NEVER CARRIED A GUN.  I MIGHT HAVE KNEW OR HAD

9    KNOWLEDGE ABOUT THINGS, BUT I NEVER CARRIED A GUN ON MY

10   BELONGING PERSONALLY, YOU KNOW, AND I AM 30 YEARS OLD.  I GOT

11   CAUGHT UP, AND MAYBE ONE DAY I CAN GET BACK OUT IN SOCIETY AND

12   BE A PRODUCTIVE FATHER FOR MY TWO KIDS IF YOUR HONOR CAN SEE

13   FIT TO DO THAT FOR ME AND MY KIDS.  I WILL TAKE THAT WHATEVER.

14   BASICALLY THAT IS ALL I HAVE TO SAY.

15          I FEEL THAT I HAVE A LOT OF REMORSE, THOUGH.  I DO

16   HAVE THAT.

17          THE COURT:  SAY THAT AGAIN.  WHAT DO YOU HAVE REMORSE

18   FOR, SIR?

19          DEFENDANT MILLINGTON:  FOR MY ACTIONS IN WHICH I

20   PARTICIPATED IN THIS CONSPIRACY AND THINGS THAT I MIGHT HAVE

21   DID AND CAUSED OTHER PEOPLE TO DO.

22          THE COURT:  SUCH AS?

23          DEFENDANT MILLINGTON:  TRAVELING INTERSTATE TO

24   TRANSPORT STUFF, AND STUFF LIKE THAT, YOU KNOW.  IF I MAY HAVE

25   CAUSED SOMEBODY TO DO THAT, I FEEL SORRY THAT I MYSELF CAUSED

1   ANYONE TO DO THAT.  I HAVE A LOT OF REMORSE.

2             THE COURT:  WHAT ELSE DO YOU HAVE REMORSE FOR?

3             DEFENDANT MILLINGTON:  FOR ANYBODY IN THE NORTHEAST

4   MORTON AND ORLEANS STREET AREA THAT I MIGHT HAVE HURT OR CAUSED

5   TO INJURE IN SELLING NARCOTICS.  YOU KNOW, KNOWN OR  UNBEKNOWN,

6   YOU KNOW.  I JUST HOPE THAT I CAN PUT THIS BEHIND ME AND IN 30

7   YEARS OR SO I CAN GET BACK OUT AND BECOME A FATHER AGAIN, YOU

8   KNOW.

9             THAT'S IT, YOUR HONOR.

10            THE COURT:  WHY ARE YOU, IF I MAY ASK, AND I ASK THIS

11  IN ALL SERIOUSNESS THAT I HAVE NOTICED ALL MORNING, FROM TIME

12  TO TIME, MORE OFTEN THAN NOT, YOU HAVE HAD A SMILE ON YOUR

13  FACE.  WHY IS THAT?

14            DEFENDANT MILLINGTON:  WELL, I AM TRYING TO STAY IN A

15  POSITIVE FRAME OF MIND, THOUGH I AM FACING THE WORSE POSSIBLE

16  TIME OF MY LIFE, RIGHT?  AND I THINK THAT IF I COME IN HERE

17  GLOOMY AND DEPRESS MYSELF EVEN FURTHER, EVEN IF I GET A LIFE

18  SENTENCE OR WHATEVER SENTENCE I MAY RECEIVE, I STILL HAVE TO

19  PROVIDE FOR MY KIDS WHILE I AM IN JAIL, AND I STILL HAVE LIFE

20  IN ME.  I HAVE BREATH IN ME, AND I SHOULD BE HAPPY FOR THAT.

21  REGARDLESS OF WHAT HAPPENS IN THIS COURTROOM TODAY, I WILL

22  ALWAYS BE PROUD TO BE ALIVE, YOU KNOW.

23            SO THAT IS WHY I SMILE.  I DON'T SEE A REASON.  IT IS

24  NOT THAT I AM SLIGHTING THE COURT IN ANY WAY, BUT I JUST FEEL

25  PROUD, YOU KNOW, TO BE HERE.

1          THE COURT:  THE COURT ALSO NOTICED YOU COMMUNICATING

2   OR APPEARING TO COMMUNICATE WITH SOMEBODY IN THE AUDIENCE.

3          DEFENDANT MILLINGTON:  FAMILY MEMBERS.

4          THE COURT:  IS THAT A FAMILY MEMBER BACK THERE?

5          DEFENDANT MILLINGTON:  YES.

6          THE COURT:  WHAT FAMILY MEMBER, SIR?

7          DEFENDANT MILLINGTON:  WHAT?

8          THE COURT:  WHAT RELATION?

9          DEFENDANT MILLINGTON:  WHAT RELATION?  OH, FRIEND,

10  JUST A FRIEND, A CLOSE FRIEND.

11         THE COURT:  FINE.  WELL, IT SHOWS YOU THAT YOU STILL

12  HAVE PEOPLE WHO LOVE YOU.

13         DEFENDANT MILLINGTON:  OH, YES, I HAVE A LOT OF

14  PEOPLE.  MY AUNT WHO IS TAKING CARE OF MY TWO KIDS FOR ME.  SHE

15  CORRESPONDS WITH ME, YOU KNOW, AND LET ME KNOW HOW THEY DOING

16  AND STUFF, YOU KNOW, AND SISTERS AND BROTHERS WHICH I THINK

17  WOULD HAVE BEEN A STRAIN ON THEM, IF THEY HAD A CAME DOWN HERE,

18  SO I KIND OF LIKE TOLD EVERYBODY IN MY FAMILY TO STAY AWAY, YOU

19  KNOW, AND I WOULD LET THEM KNOW THE OUTCOME OR THEY WILL HEAR

20  IT, YOU KNOW, BUT MOSTLY I AM A PRIVATE PERSON ANYWAY.  I LIKE

21  TO BE TO MYSELF ANYWAY AND DEAL WITH MY PROBLEMS THE BEST AS I

22  CAN.

23         THE COURT:  YES.  YOU STILL HAVE THESE OTHER CHARGES.

24  FIRST DEGREE MURDER WHILE ARMED --

25         DEFENDANT MILLINGTON:  I THINK THAT IF I TAKE THEM TO

1  TRIAL --

2         THE COURT:  -- CARRYING A PISTOL WITHOUT A LICENSE,

3  USING AND CARRYING A FIREARM IN CONNECTION WITH A DRUG

4  TRAFFICKING OFFENSE.

5         DEFENDANT MILLINGTON:  YES.  I HOPE THAT YOU DON'T

6  HOLD THAT AGAINST ME DURING THIS SENTENCING BECAUSE THEY JUST

7  CHARGED --

8         THE COURT:  I AM NOT GOING TO CONSIDER THOSE NOW.

9         DEFENDANT MILLINGTON:  OKAY.  BUT I THINK THAT IF I

10  GO TO TRIAL --

11         THE COURT:  I COULD PERHAPS UNDER SOME PEOPLE'S

12  THEORIES, BUT I AM NOT GOING TO CONSIDER THAT TODAY.

13         DEFENDANT MILLINGTON:  YES.

14         THE COURT:  BUT I AM JUST SAYING TO YOU AS A HUMAN

15  BEING YOU STILL HAVE GOT TO FACE THAT.

16         DEFENDANT MILLINGTON:  OH, YES.  I AM PREPARED TO.  I

17  AM PREPARED TO FACE THEM.  I JUST WANT -- I HAVE TO TAKE ONE

18  STEP AT A TIME.  GET OVER THIS HURDLE.

19         THE COURT:  OF COURSE.  OF COURSE.  I SAY "OF

20  COURSE," I UNDERSTAND.  TAKE ONE THING AT A TIME.

21         BUT YOU HAVE GOT ONE OF THE MOST SERIOUS OFFENSES.  I

22  THINK THAT YOU GOT A VERY FAIR TRIAL.  YOUR LAWYER FOUGHT THE

23  PROSECUTORS AND THE COURT EVERY INCH OF THE WAY.  YOU KNOW

24  THAT.

25         DEFENDANT MILLINGTON:  RIGHT.  I AGREE.

1      THE COURT:  I THINK IT IS FAIR TO SAY YOU GOT EVERY

2  BREAK KNOWN TO THE LAW, KNOWN TO HUMAN KIND?

3      DEFENDANT MILLINGTON:  I AGREE WITH THAT, TOO.

4      THE COURT:  THE COURT WAS IMMINENTLY FAIR WITH YOU

5  AND ALL OTHER DEFENDANTS THROUGHOUT THE TRIAL.

6      DEFENDANT MILLINGTON:  WELL, WITH ME, I FEEL AS

7  THOUGH --

8      THE COURT:  PARDON?

9      DEFENDANT MILLINGTON:  I SAY, WITH ME, I FEEL AS

10  THOUGH I CAUGHT, YOU KNOW, BREAKS.

11      THE COURT:  SURE YOU DID.

12      DEFENDANT MILLINGTON:  YES.

13      THE COURT:  AND THE COURT WAS FAIR TO YOU, TOO,

14  WASN'T IT?

15      DEFENDANT MILLINGTON:  RIGHT.  THAT'S WHAT I AM

16  SAYING.  I DON'T HAVE ANY QUARREL WITH THE COURT SYSTEM.  NOT

17  AT ALL.

18      THE COURT:  YOU DON'T HAVE ANY QUARREL WITH THIS

19  COURT EITHER, DO YOU?

20      DEFENDANT MILLINGTON:  OH, NO, NOT AT ALL.

21      THE COURT:  ANYTHING ELSE, SIR?

22      DEFENDANT MILLINGTON:  NO, THAT'S IT, YOUR HONOR.

23      THE COURT:  THE COURT WILL TAKE A THREE MINUTE

24  RECESS.

25      (RECESS.)

1           THE COURT:  MR. MILLINGTON.

2           DEFENDANT MILLINGTON:  YES, SIR.

3           THE COURT:  I AM GOING TO READ YOU THE PRECISE

4    LANGUAGE, AND I AM GOING TO ASK THE ASSISTANT UNITED STATES

5    ATTORNEY TO SHARE WITH YOU HER CHAPTER 3, PART (E) OF THE

6    UNITED STATES SENTENCING COMMISSION GUIDELINES, IF SHE WOULD BE

7    KIND ENOUGH TO SHARE IT WITH YOU SO YOU CAN READ ALONG WITH THE

8    COURT'S READING OF THIS TO YOU.

9           THANK YOU VERY MUCH, MS. SOIEFER.

10          YOU SEE IT'S ENTITLED PART (E), ACCEPTANCE OF

11   RESPONSIBILITY.  DO YOU SEE THAT?

12          DEFENDANT MILLINGTON:  YES, SIR.

13          THE COURT:  UNDER 3E1.1 SUBPART A:

14          "IF THE DEFENDANT CLEARLY DEMONSTRATES A RECOGNITION

15       AND AFFIRMATIVE ACCEPTANCE OF PERSONAL RESPONSIBILITY FOR

16       HIS CRIMINAL CONDUCT, REDUCE THE OFFENSE LEVEL BY TWO

17       LEVELS."

18          "(B) A DEFENDANT MAY BE GIVEN, UNDER THIS SECTION,

19       WITHOUT REGARD TO WHETHER HIS CONVICTION IS BASED ON A

20       GUILTY PLEA OR A FINDING OF GUILT BY THE COURT OR JURY OR

21       THE PRACTICAL CERTAINTY OF CONVICTION AT TRIAL."

22          "(C) A DEFENDANT WHO ENTERS A PLEA OF GUILTY IS NOT

23       ENTITLED TO A SENTENCING REDUCTION UNDER THIS SECTION AS A

24       MATTER OF RIGHT."

25          NOW, AS THE COURT UNDERSTOOD AND HEARD YOU TRYING TO

1  SAY THAT YOU WERE SORRY FOR YOUR CONDUCT AND PARTICIPATION IN

2  THIS CONSPIRACY AND FOR THE HARM THAT YOU, AS A MEMBER OF THIS

3  CONSPIRACY, DID TO OTHERS AND FOR YOUR CONDUCT IN THE CRIME OF

4  INTERSTATE TRAVEL IN AID TO RACKETEERING, IS THAT WHAT I

5  UNDERSTOOD YOU TO SAY?

6          DEFENDANT MILLINGTON:  YES, SIR.

7          THE COURT:  IN OTHER WORDS, YOU ADMIT YOUR GUILT.

8          DEFENDANT MILLINGTON:  YES, SIR.

9          THE COURT:  AS I UNDERSTAND IT, YOU WANT TO THE FULLY

10  RESPONSIBILITY FOR YOUR ACTIONS AND CONDUCT IN CONNECTION WITH

11  THIS CASE?

12          DEFENDANT MILLINGTON:  YES, SIR.

13          THE COURT:  DO YOU WANT TO CONSULT WITH YOUR CLIENT

14  AND TELL ME WHAT THAT MEANS, MR. CONTE, NOW AS A MATTER OF LAW.

15          MR. CONTE:  YOUR HONOR, I THINK --

16          THE COURT:  DO YOU WANT TO CONSULT WITH HIM AND TELL

17  ME WHAT HE MEANS BY THAT?

18          MR. CONTE:  I JUST CONSULTED WITH HIM, YOUR HONOR.  I

19  THINK IT IS CLEAR TO THE COURT.  HE'S FULLY ADMITTING HIS

20  POSITION IN THIS CONSPIRACY AND ADMITTING HIS INVOLVEMENT AND

21  ADMITTING HIS REMORSE IN THIS CONSPIRACY AND HIS POSITION IN

22  THIS CONSPIRACY AND WHAT HE HAS DONE TO PEOPLE IN THE

23  CONSPIRACY AND WHAT HE HAS DONE TO PEOPLE WHO HAVE JUST BEEN

24  PENALIZED BY THE USE OF THE DRUGS THAT HE SOLD.

25          I DON'T THINK THAT THERE IS ANY -- I SPOKE WITH HIM

1  IN THE BACK JUST NOW FOR FIVE MINUTES. I DON'T THINK THAT

2  THERE IS ANYTHING ELSE THAT COULD BE GLEANED FROM THESE

3  STATEMENTS TO THE COURT, BOTH JUST NOW AND BEFORE WE TOOK THE

4  BREAK.

5          THE COURT:  THE GOVERNMENT CONTENDS THAT HE HAS A

6  CRIMINAL HISTORY OF 4, IS THAT NOT CORRECT?

7          MS. SOIEFER:  YES, YOUR HONOR.

8          THE COURT:  MAY THE COURT DIRECT THE UNITED STATES

9  AND THE DEFENSE COUNSEL'S ATTENTION TO PAGE 14 OF THE PRE-

10 SENTENCE INVESTIGATION REPORT.  PARAGRAPHS 42, 43 AND 44.

11         BASED ON HIS PRIOR RECORD AS SET FORTH IN THE PRE-

12 SENTENCE INVESTIGATION REPORT, IS THE PROBATION OFFICER NOT

13 CORRECT, ARE THEY NOT CORRECT, MS. SOIEFER, IN THOSE

14 PARAGRAPHS?  IT'S ON PAGE 14.

15         MS. SOIEFER:  (PERUSING DOCUMENTS)  YES, YOUR HONOR,

16 WE BELIEVE SO.

17         THE COURT:  DO YOU NOT AGREE THAT THEY ARE CORRECT,

18 MR. CONTE?

19         MR. CONTE:  I BELIEVE THEY ARE, YOUR HONOR.

20         THE COURT:  YOU WOULD?

21         MR. CONTE:  YES, YOUR HONOR.

22         THE COURT:  IN ACCORDANCE WITH THE CONSENT OF THE

23 DEFENDANT, UNLESS THERE IS ANYTHING ELSE THAT EITHER PARTY

24 WANTS TO SAY, THE COURT IS READY TO IMPOSE SENTENCE.

25         ANYTHING THE UNITED STATES WISHES TO SAY.

1            MS. SOIEFER:  YES, YOUR HONOR.

2            THE COURT:  I APOLOGIZE.  I SHOULD HAVE ASKED YOU

3    BEFORE.  THANK YOU VERY MUCH.

4            MS. SOIEFER:  YOUR HONOR, OUR ASSESSMENT OF THE

5    COMPUTATION OF THE GUIDELINES DOES NOT CHANGE IN LIGHT OF MR.

6    MILLINGTON'S STATEMENT.

7            AND IF THE COURT IS CONSIDERING ASSESSING A TWO-

8    POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY, THE

9    GOVERNMENT RESPECTFULLY REQUESTS AN OPPORTUNITY TO REBUT THAT

10   EVIDENCE.

11           WE BELIEVE THAT THERE IS EVIDENCE CURRENTLY IN THE

12   POSSESSION OF THE UNITED STATES MARSHALS SERVICE THAT WOULD BE

13   RELEVANT TO THAT, THE POSSIBILITY OF THE ACCEPTANCE OF

14   RESPONSIBILITY.

15           WE HAD NO NOTICE THAT MR. MILLINGTON WAS GOING TO DO

16   THIS, I THINK, ANYMORE THAN THE COURT DID, BECAUSE HE REFUSED

17   TO SPEAK TO THE PROBATION OFFICER ABOUT THE OFFENSE.  SO I

18   WOULD RESPECTFULLY ASK THE COURT THAT IF THE COURT IS GOING TO

19   CONSIDER A DECREASE IN THE COMPUTATION FOR ACCEPTANCE OF

20   RESPONSIBILITY, THAT THE COURT NOT SENTENCE THE DEFENDANT AT

21   THIS TIME.

22           I WOULD NOT, HOWEVER --

23           THE COURT:  HOW MUCH TIME DO YOU NEED?  I AM NOT

24   SAYING THAT I AM GOING TO DO, BUT I WANT TO KNOW HOW MUCH TIME

25   YOU WOULD NEED.  SHOULD WE ADJOURN UNTIL 2:30?

1       MS. SOIEFER:  I DON'T KNOW, YOUR HONOR.  I WOULD NEED

2  TO CONSULT.  IF I COULD HAVE JUST A MOMENT, I COULD GIVE THE

3  COURT AN ANSWER IN JUST A MINUTE.

4       THE COURT:  I WILL TELL WHAT THE COURT WILL DO.  IT'S

5  NOW --

6       MS. SOIEFER:  BUT WE ARE NOT REQUESTING THAT, YOUR

7  HONOR, I AM JUST SAYING --

8       THE COURT:  I UNDERSTAND.  I UNDERSTAND.

9       YOU ARE ABSOLUTELY CORRECT THAT THE COURT WAS

10  SOMEWHAT TAKEN ABACK BY THE DEFENDANT'S COMMENTS AND DID NOT

11  ANTICIPATE IT IN LIGHT OF HIS LAWYER'S COMMENTS AND MEMORANDA

12  WHICH HE FILED, WHICH WAS NOTHING MORE THAN A CONTINUATION OF

13  WHAT TOOK PLACE DURING THE TRIAL PRESUMABLY WITH THE ADVICE,

14  KNOWLEDGE AND CONSENT AND APPROBATION OF THE DEFENDANT.

15       BUT HIS STATEMENT HERE TODAY, IF BELIEVED, MAY MAKE A

16  DIFFERENCE.  AND THE COURT WANTS TO GIVE YOU AN OPPORTUNITY TO

17  MAKE AVAILABLE TO THE COURT ANY OTHER INFORMATION THAT YOU

18  MIGHT HAVE.

19       WHY DON'T WE DO THIS.  PROBABLY IT IS JUST AS WELL

20  THAT THE COURT CONSIDER THIS MATTER FURTHER.  I WILL BE IN

21  RECESS UNTIL 2:30 SO AS TO GIVE YOU THE TIME TO DETERMINE

22  WHETHER YOU WILL THEN BE ABLE OR LATER THIS WEEK TO PRESENT

23  WHATEVER EVIDENCE YOU MAY HAVE CONTRARY TO THE DEFENDANT'S

24  ASSERTIONS HERE TO THIS COURT.

25       MS. SOIEFER:  IF THE COURT JUST GIVES ME A MINUTE, I

1  JUST NEED TO SPEAK WITH THE MARSHAL FOR JUST A MOMENT, AND I

2  CAN GIVE YOU AN ANSWER RIGHT NOW AS TO HOW LONG IT WOULD TAKE.

3          THE COURT:  I WILL GIVE YOU A MOMENT.

4      (PAUSE.)

5          MS. SOIEFER:  I SHOULD BE ABLE TO HAVE THE

6  INFORMATION BY LATER THIS AFTERNOON, YOUR HONOR.  I WOULD NOTE,

7  YOUR HONOR, THAT EVEN THE ACCEPTANCE OF RESPONSIBILITY IN LIGHT

8  OF THE CRIMINAL HISTORY OF FOUR WOULD NOT CHANGE THE RANGE THAT

9  THE COURT HAS BEFORE IT.

10          THE COURT:  MS. SOIEFER, IF THE COURT REDUCED IT BY

11  TWO POINTS, IT WOULD MAKE IT A LEVEL 39.

12          MS. SOIEFER:  YES, YOUR HONOR.

13          THE COURT:  AND WHAT YOU ARE SAYING IS THAT WOULD

14  BRING THE OPTION OF THE COURT FROM 360 MONTHS TO LIFE, IS THAT

15  CORRECT, UNDER CRIMINAL HISTORY CATEGORY NUMBER FOUR?

16          MS. SOIEFER:  I AM SAYING IT WOULDN'T CHANGE IT, YOUR

17  HONOR.  THE COURT'S OPTIONS WOULD BE THE SAME.

18          THE COURT:  THAT'S CORRECT.

19          MR. CARRINGTON:  IF THE COURT PLEASE, THE GUIDELINE

20  MANUAL THAT WE USE IS NOT THIS NOVEMBER 1, 1989 BOOK.  IT IS

21  THE PREVIOUS BOOKLET, AND THE COURT MIGHT BE WELL ADVISED TO

22  LOOK AT THAT BOOK.

23          THE COURT:  EXACTLY, BECAUSE OF THE DATE OF THE

24  OFFENSE.

25          MR. CARRINGTON:  BECAUSE SOME OF THESE GUIDELINE

1    RANGES WERE CHANGED TO HIGHER LEVELS, HIGHER RANGES.

2          THE COURT:  YES.  WE HAD THAT IN CONNECTION WITH

3    ANOTHER SENTENCE.  I DON'T KNOW WHICH ONE OF THE DEFENDANTS IT

4    WAS.

5          THE COURT WILL BE IN RECESS UNTIL 2:30 SO AS TO HAVE

6    AN OPPORTUNITY TO LOOK AT PRE-NOVEMBER 1, 1989 GUIDELINE

7    MANUAL.  MS. SOIEFER MAY BE ABSOLUTELY CORRECT, BUT ON THE

8    OTHER HAND, THERE IS LIBERTY INTEREST INVOLVED THAT ARE

9    IMPORTANT, AND THERE ARE PUBLIC INTERESTS THAT ARE INVOLVED IN

10   DETERRENCE AS WELL AS PUNISHMENT AND THE OTHER FACTORS RELEVANT

11   TO SENTENCING IN ADDITION TO ACCEPTANCE OF RESPONSIBILITY THAT

12   THE COURT WANTS TO CONSIDER SO I WILL BE IN RECESS UNTIL 2:30

13   UNLESS MY CLERK TELLS ME SOMETHING.  MAKE THIS 3:00.  I AM JUST

14   ADVISED FROM MY CLERK I HAVE TWO MATTERS ON VIOLATION OF

15   PROBATION AT 2:00.

16         THANK YOU VERY MUCH.

17      (PROCEEDINGS ADJOURNED AT 2:05 P.M. TO RECONVENE AT 3:00

18   P.M. THE SAME DAY TUESDAY, FEBRUARY 20, 1990.)

19         THE CLERK:  THE COURT IS AGAIN IN SESSION.

20         THE COURT:  ANYBODY ELSE HAVE ANYTHING TO SAY BEFORE

21   THE COURT IMPOSES SENTENCES.

22         MS. SOIEFER:  THANK YOU, YOUR HONOR.

23         FIRST, I UNDERSTAND FROM MR. CARRINGTON INDIRECTLY, I

24   WASN'T ABLE TO GET HOLD OF AN OLD COPY OF THE GUIDELINES, BUT

25   JUST SO --

1    THE COURT:  THEY ARE THE SAME.

2    MS. SOIEFER:  THEY ARE THE SAME.

3    THE COURT:  I CHECKED.

4    MS. SOIEFER:  SO THE ACCEPTANCE OF RESPONSIBILITY

5    WOULD, IN ESSENCE, WOULD MAKE NO DIFFERENCE WITH REGARD TO THE

6    RANGE THAT THE COURT HAS BEFORE IT.

7    I WOULD LIKE, HOWEVER, TO ADDRESS MR. MILLINGTON'S

8    REMARKS IN LIGHT OF THE COURT'S QUESTIONS AND IN LIGHT OF THE

9    CASE LAW THAT HAS TO DO, NOT JUST WITH THE ACCEPTANCE OF

10   RESPONSIBILITY BUT WITH THE APPROPRIATE RANGE FOR THE COURT TO

11   CHOOSE WITHIN ITS DISCRETION.

12   THE COURT:  VERY WELL.

13   MS. SOIEFER:  FIRST, YOUR HONOR, I WOULD NOTE THAT

14   FOR AN ACCEPTANCE OF RESPONSIBILITY THE GUIDELINES STATE THAT

15   THE DEFENDANT MUST CLEARLY DEMONSTRATE THAT HE ACCEPTS THE

16   RESPONSIBILITY, AND, OF COURSE, THE BURDEN IS ON THE DEFENDANT,

17   AS IT IS FOR ANY DOWNWARD ADJUSTMENT, TO PROVE BY A

18   PREPONDERANCE OF THE EVIDENCE THAT HE HAS ACCEPTED TOTALLY AND

19   FULLY HIS RESPONSIBILITY.

20   THE COURT HASN'T HEARD THAT IN THIS CASE.  THE COURT

21   HASN'T HEARD MR. MILLINGTON TELL YOU WHAT HE HAS DONE.  THE

22   COURT HASN'T HEARD HIM SAY WITH WHOM HE HAS DONE IT, AND THE

23   COURT HASN'T HEARD HIM TELL YOU WHAT PART HE PLAYED IN THE

24   CONSPIRACY.

25   THE ONLY THING THAT THE COURT HAS BEFORE IT IS THE

1 ARGUMENT OF COUNSEL ARGUING AGAINST THE INCREASED ROLE OR

2 ADJUSTMENT FOR THE ROLE IN THE CONSPIRACY, SO ONE CAN ONLY

3 ASSUME BASED ON THE, AT LEAST POSSIBLE, INCONSISTENCY THAT MR.

4 CONTE'S ARGUMENT ABOUT ROLE IN THE CONSPIRACY WOULD NOT BE

5 ADOPTED BY MR. MILLINGTON.

6 IF THE COURT FOLLOWS MY ARGUMENT, WHAT I AM SAYING

7 IS, HERE MR. MILLINGTON COMES BEFORE THE COURT AND SAYS, "WELL,

8 I AM SORRY FOR WHAT I HAVE DONE, YOUR HONOR." ON THE OTHER

9 HAND, MR. CONTE ARGUED VERY STRENUOUSLY THAT THE ROLE IN THE

10 CONSPIRACY, THAT MR. MILLINGTON'S ROLE IN THE CONSPIRACY WAS

11 MINIMUM. AND WE SUBMIT THAT THAT IS CONTRARY THAT THE EVIDENCE

12 THAT THE COURT SAW BEFORE IT.

13 LOOKING AT IT IN THAT RESPECT, WE SUBMIT THAT THE

14 COURT --

15 THE COURT: WAIT A MINUTE, EXCUSE ME, AND I WANT YOU

16 TO BE VERY FRANK AND CORRECT. DON'T YOU BE BASHFUL ONE INCH

17 ABOUT CORRECTING ME IF I AM WRONG.

18 WE ARE NOT TALKING ABOUT ROLE IN THE OFFENSE. AS A

19 MATTER OF FACT, BASED ON THE RECORD BEFORE ME, I AM PREPARED TO

20 FIND AS A FACT THAT THIS YOUNG MAN'S ROLE IN THE OFFENSE WAS A

21 MAJOR ONE. THE ONLY ISSUE THAT REMAINS FOR THE COURT TO

22 DECIDE, AS FAR AS I AM CONCERNED, IS WHETHER HE HAS ACCEPTED

23 RESPONSIBILITY WITHIN THE MEANING OF THE APPROPRIATE GUIDELINE

24 WHATEVER IT IS THAT I READ.

25 MS. SOIEFER: 4(A), I THINK YOUR HONOR.

1    THE COURT:  IS IT CHAPTER 4?   WHICH WE READ THIS

2  MORNING, AND I APOLOGIZE.  I HOPE THAT YOU WERE NOT

3  OFFENDED --

4    MS. SOIEFER:  NO, YOUR HONOR.

5    THE COURT:   -- BY ASKING YOU TO SHARE YOUR COPY WITH

6  THE DEFENDANT.

7    IT'S NOT FOUR.

8    MS. SOIEFER:  IT'S THREE, I AM SORRY YOUR HONOR.

9    THE COURT:  3E1.1.

10    MS. SOIEFER:  ALL RIGHT.

11    THE COURT:  IT IS CORRECT THAT "CLEARLY DEMONSTRATES"

12  IS -- THE WORD "CLEARLY" IS RIGHT THERE IN SUBSECTION A.  YOU

13  ARE RIGHT ON THAT, AND THERE IS SOME CASE LAW TO THE EFFECT

14  THAT THERE IS NO OBLIGATION ON THE PART OF THE COURT TO ACCEPT

15  THAT, PARTICULARLY ABSENT, OR EVEN IN THE CASE OF A PLEA OF

16  GUILTY.

17    BUT ALL I AM TALKING ABOUT HERE THIS AFTERNOON IS

18  WHETHER HE IS ENTITLED TO A TWO-LEVEL REDUCTION FOR ACCEPTANCE

19  OF RESPONSIBILITY.  EVERYTHING ELSE AS RECOMMENDED BY THE

20  PROBATION OFFICE BE SETTLED AS I WILL TRY TO ARTICULATE NOW

21  AND, IN ACCORDANCE WITH THE DEFENDANT'S CONSENT, LATER

22  MEMORIZED IN WRITING, SO BE MY GUEST AGAIN.

23    MS. SOIEFER:  THANK YOU YOUR HONOR.

24    FIRST, I THINK THE FIRST THING THAT WE SHOULD ALL BE

25  AWARE, I KNOW THAT THE COURT IS, IS THAT THE DETERMINATION AS

1   TO THE ACCEPTANCE OF RESPONSIBILITY IS, OF COURSE, A FACTUAL

2   QUESTION.  IT DEPENDS IN LARGE PART ON THE COURT'S ASSESSMENT

3   OF CREDIBILITY.  AND UNLESS IT'S CLEARLY ERRONEOUS, IT WILL NOT

4   BE DISTURBED ON APPEAL.  SO I THINK WE ALL RECOGNIZE THAT THAT

5   IS WHAT WE ARE DEALING WITH.

6           I HAVE HAD A BRIEF OPPORTUNITY TO READ THE BLURBS,

7   AND I WILL BE FRANK WITH THE COURT, I HAVE NOT READ THE CASES,

8   BUT THE BLURBS OF SEVERAL CASES THAT DEAL WITH ACCEPTANCE OF

9   RESPONSIBILITY.

10          THE OVERWHELMING NUMBER OF CASES SEEMS TO SAY, IT IS

11  NOT ENOUGH TO SAY THAT I'M SORRY.  WHAT THE GENERAL TENOR HAS

12  BEEN OF THE CASES THAT I HAVE LOOKED AT REGARDING ACCEPTANCE OF

13  RESPONSIBILITY IS THAT THE PERSON MUST NOT JUST SAY I'M SORRY

14  FOR MY INVOLVEMENT, BUT MUST ADMIT HIS OR HER INVOLVEMENT

15  ENTIRELY.

16          THE COURT HAS NOT GOT THAT BEFORE.  THE COURT HAS A

17  SIMPLE "I'M SORRY," WHICH IS GREAT.  IT'S A WONDERFUL FIRST

18  STEP.  BUT IT IS NOT ENOUGH FOR AN ACCEPTANCE OF

19  RESPONSIBILITY.

20          ALONG THOSE LINES, YOUR HONOR, I WILL REFER TO A

21  NUMBER OF CASES.  IN UNITED STATES V. ORTIZ, 878 F.2D 125, 3RD

22  CIRCUIT 1989.  THE DISTRICT COURT FOUND THAT THE DEFENDANT'S

23  VERSION OF HIS CRIMINAL INVOLVEMENT ATTEMPTED TO MINIMIZE HIS

24  ROLE.  THE COURT FURTHER FOUND THAT HE SIMPLY HADN'T ACCEPTED

25  THE ROLE THAT THE TANGIBLE, UNQUESTIONED FACTS DEMONSTRATED

 1 THAT HE HAD HELD.  HE WAS NOT GIVEN AN ACCEPTANCE OF

 2 RESPONSIBILITY DESPITE THE FACT THAT HE SAID "I'M SORRY."

 3          IN UNITED STATES V. SMITH, 878 F.2D 383, 6TH CIRCUIT,

 4 1989.  THE DEFENDANT'S UNWILLINGNESS TO PROVIDE ANY DETAILS

 5 RELATIVE TO HIS ROLE AND DENYING INVOLVEMENT WITH CO-

 6 DEFENDANTS AS WELL AS THE PROBATION OFFICER'S CONCLUSION

 7 JUSTIFIED THE REJECTION OF THE ACCEPTANCE OF RESPONSIBILITY,

 8 AND IN THAT CASE, THE COURT HELD THAT THE COURT IS ENTITLED TO

 9 TAKE INTO CONSIDERATION THE OBSERVATIONS AND CONCLUSIONS OF THE

10 PROBATION OFFICER IN THE DETERMINATION OF ACCEPTANCE OF

11 RESPONSIBILITY.

12          IN THIS CASE, THE DEFENDANT IS QUOTED SPECIFICALLY

13 WITH SAYING, "I KNOW WHAT I HAVE DONE" -- THAT IS IN THE SMITH

14 CASE -- "I KNOW WHAT I HAVE DONE.  I KNOW I HAVE DONE WRONG,

15 YOUR HONOR, BUT THIS I WON'T DO AGAIN.  I WILL BE IN PRISON.

16 THIS IS THE FIRST TIME IN LIFE I HAVE BEEN ARRESTED.  I DONE IT

17 JUST -- JUST BECAUSE OF LACK OF MONEY."

18          THAT WAS THE EXCUSE THAT WAS GIVEN IN THE SMITH CASE,

19 AND THE SUPPOSED ACCEPTANCE OF RESPONSIBILITY.  THE REJECTION

20 OF THAT BY THE DISTRICT COURT WAS UPHELD BY THE CIRCUIT COURT.

21          IN ADDITION YOUR HONOR, SEVERAL CASES HAVE TALKED

22 ABOUT THE NEED FOR SINCERE CONTRITION AS TO THE TOTALITY OF THE

23 OFFENSE NOT SIMPLY THE RAMIFICATIONS OF THE DEFENDANT'S

24 ACTIONS, "I'M SORRY BECAUSE I HAVE TO GO TO JAIL."  AND NOT

25 JUST "I'M SORRY BECAUSE I HAVE HURT MY FRIENDS AND FAMILY AND

1  EVEN SOCIETY." BUT "I'M SORRY BECAUSE OF WHAT I DID FOR THE

2  CONTINUING PATTERN."

3          IN THIS CASE, FROM 1985 UNTIL 1989, "I'M SORRY THAT I

4  HAD DRUGS DELIVERED TO THE STRIP AT MORTON AND ORLEANS.  I'M

5  SORRY THAT I WORKED WITH MY COMMON LAW BROTHER-IN-LAW'S FAMILY

6  TO DISTRIBUTE DRUGS ALL OVER THE DISTRICT OF COLUMBIA.  I'M

7  SORRY THAT I WAS INVOLVED IN THE ACCUMULATION OF ASSETS.  I'M

8  SORRY THAT I HAVE NEVER ADMITTED THIS TO ANYBODY, INCLUDING THE

9  PROBATION OFFICER, BEFORE THIS TIME.  I'M SORRY THAT MY COMMON

10  LAW WIFE GOT INVOLVED.  I'M SORRY THAT THE REST OF MY COMMON

11  LAW WIFE'S FAMILY WAS INVOLVED.  I'M SORRY THAT I WORKED FOR

12  RAYFUL EDMOND."

13          THE COURT HASN'T HEARD ANY OF THAT.  THE COURT HASN'T

14  HEARD ANY DETAILS.  WHAT THE COURT HAS HEARD ARE THE WORDS OF A

15  MAN WHO KNOWS WHAT FOUR PREVIOUS CO-DEFENDANTS HAVE RECEIVED AS

16  SENTENCES IN THIS CASE.  THE WORDS OF A MAN WHO IS FIGHTING,

17  FIGHTING FOR A LENIENT SENTENCE, AND THE WORDS OF A MAN WHO HAS

18  NOTHING TO LOSE BY SAYING WHATEVER HE WANTS TO SAY TO THIS

19  COURT.  NOTHING WHATSOEVER TO LOSE.

20          IF MR. MILLINGTON STOOD UP HERE AND ADMITTED

21  EVERYTHING ABOUT HIS OWN INVOLVEMENT TO THE COURT, HE WOULD

22  STILL HAVE NOTHING TO LOSE, AND HE COULD MARCH BACK IN HERE

23  NEXT MONDAY AND TAKE THE STAND TO HELP HIS COMMON LAW WIFE,

24  RACHELLE EDMOND, WHO STARTS TRIAL ON MONDAY, AND HE WOULD HAVE

25  LOST NOTHING.

1    AND WE SUBMIT, YOUR HONOR, THAT THIS COURT SHOULD

2   LOOK AT MR. MILLINGTON'S LAST MINUTE, ABBREVIATED STATEMENT IN

3   THE CONTEXT IN WHICH IT WAS GIVEN.  MR. MILLINGTON DID NOT TALK

4   TO MR. HUNT.  HE DID NOT EVER WRITE TO THIS COURT IN ANY WAY,

5   SHAPE OR FORM.  HIS COUNSEL NEVER MENTIONED IN HIS PAPERS THAT

6   MR. MILLINGTON WISHED TO TAKE RESPONSIBILITY.

7    TALK ABOUT A LAST DITCH EFFORT, YOUR HONOR.  THIS WAS

8   THE ABSOLUTELY LAST MINUTE THAT MR. MILLINGTON COULD SAY

9   ANYTHING.  ANYTHING WHATSOEVER TO HELP HIMSELF.  HE JUST KEPT

10  FIGHTING IT ALL THE WAY UP TO THE LAST POSSIBLE MINUTE AND THEN

11  SAYS THAT THE ABSOLUTE MINIMUM POSSIBLE THING IN ORDER TO COME

12  BEFORE THE COURT AND ASK FOR LENIENCY.

13   THIS COURT, AS MENTIONED PREVIOUSLY IN TRIAL, HAS

14  BEEN A FEDERAL JUDGE FOR 20 YEARS?

15   THE COURT:  ALMOST?

16   MS. SOIEFER:  AND I KNOW THAT THE COURT HAS HEARD

17  MANY, MANY, MANY PLEAS FOR LENIENCY.  AND I KNOW THAT THE COURT

18  HAS, ON OCCASIONS, LISTENED PARTICULARLY BEFORE THE SENTENCING

19  GUIDELINES, LISTEN TO THOSE PLEAS FOR LENIENCY AND PERHAPS

20  GIVEN A DEFENDANT THE CHANCE, PUT A PARTICULAR DEFENDANT ON

21  PROBATION, GIVEN A PARTICULAR DEFENDANT THE CHANCE AT PAROLE

22  WHEN PAROLE EXISTED.  AND HOW MANY TIMES DID THIS COURT SEE

23  THAT PERSON COME BACK?

24   HOW MANY TIMES DID THE COURT HEAR "I'LL NEVER DO IT

25  AGAIN, JUDGE, I PROMISE, " AND SEE A PERSON WALK BACK INTO THIS

1   COURTROOM HAVING BEEN CONVICTED OR HAVING BEEN CHARGED OR

2   HAVING VIOLATED PROBATION OR PAROLE IN ONE WAY OR ANOTHER?

3           I JUST VENTURE A GUESS, YOUR HONOR, THAT IT'S

4   PROBABLY IN THE HUNDREDS OF TIMES, AND I SUBMIT TO THE COURT

5   THAT THE SINCERITY IN THOSE PLEAS ARE THE SAME AS THE SINCERITY

6   THAT THE COURT HEARD BEFORE IT TODAY.  A LAST DITCH EFFORT.

7           THEY DO NOT SATISFY THE CRITERIA OF THE SENTENCING

8   GUIDELINES AS INTERPRETED AS VARIOUS CIRCUITS THUS FAR, AND

9   THEY SHOULD NOT SATISFY THIS COURT.  WE STAND BY OUR

10  RECOMMENDATION THAT WAS MADE EARLIER.  WE NOT BELIEVE THAT MR.

11  MILLINGTON HAS CARRIED HIS BURDEN THAT HE HAS FULLY, TOTALLY

12  AND ENTIRELY ACCEPTED RESPONSIBILITY FOR THE ENTIRE COURSE AND

13  CONDUCT OF THIS CONSPIRACY, AND WE ASK THE COURT TO SO FIND.

14          MR. MILLINGTON HAS NEVER EVER ADMITTED ANYTHING ABOUT

15  GUNS, AND YET THE COURT HEARD THAT THAT WAS THE CONDUCT OF THE

16  CONSPIRACY.  MR. MILLINGTON HAS, THROUGH HIS COUNSEL, ARGUED AS

17  TO THE AMOUNT OF DRUGS INVOLVED IN THE CONSPIRACY.

18          MR. MILLINGTON HAS ARGUED WITH REGARD TO HIS OWN ROLE

19  IN THE CONSPIRACY, AND WE SUBMIT --

20          THE COURT:  ONE OF THE TROUBLES, MS. SOIEFER, THAT A

21  COURT HAS, PARTICULARLY IN THIS CASE, IS NOT KNOWING REALLY,

22  AND I KNOW THE PROSECUTION SUFFERS FROM THE SAME HANDICAP, HOW

23  MUCH OF THE NITPICKING AND THE OTHER CONDUCT IS DUE TO THE

24  LAWYER OR THE DEFENDANT.  IT IS VERY DIFFICULT TO DISCERN THE

25  DIFFERENCE BETWEEN THE TWO, AND I THINK, LIKE YOURSELF, THE

1   COURT HAS TRIED VERY HARD TO OVERLOOK AND HAS, IN FACT,

2   OVERLOOKED THE CONDUCT OF COUNSEL IN MAKING A JUDGMENT ABOUT

3   EACH OF THESE DEFENDANTS.

4          I DON'T KNOW HOW MUCH MR. CONTE'S MEMORANDUM IS

5   ATTRIBUTABLE TO HIS CLIENT, IF ANY.

6          MS. SOIEFER:  BUT DOES THAT CARRY THE PREPONDERANCE

7   OF THE EVIDENCE, YOUR HONOR?

8          THE COURT:  I DIDN'T SUGGEST IT DID.

9          MS. SOIEFER:  WHAT I AM SUGGESTING, YOUR HONOR, IS

10  THAT OVERALL MR. CONTE IS RESPONSIBLE FOR CARRYING OUT HIS

11  CLIENT'S WISHES, AND HAD HIS CLIENT WISHED TO ACCEPT

12  RESPONSIBILITY, I AM CERTAIN, BEING THE CAPABLE LAWYER THAT HE

13  IS, THAT MR. CONTE EXPLAINED TO HIM THAT THAT OPTION EXISTED.

14  AND IT WASN'T TAKEN.  IT IS STILL THE CLIENT'S DECISION.

15         THE COURT:  WELL, IT MIGHT MAKE YOU FEEL BETTER TO

16  KNOW THAT THE COURT REALIZES THAT HE'S NOT LEGALLY ENTITLED TO

17  A TWO-LEVEL REDUCTION IN THE OFFENSE LEVEL BY VIRTUE OF HIS

18  ADMISSIONS AND STATEMENTS TO THE COURT THIS MORNING.  HE IS NOT

19  ENTITLED TO THAT AS A MATTER OF LEGAL RIGHT.  THAT'S A MATTER

20  IN THE SOUND DISCRETION OF THE COURT.

21         MS. SOIEFER:  ABSOLUTELY.

22         THE COURT:  AND THE CASES THAT HAVE BEEN CONSTRUED

23  CHAPTER 3 OF THE GUIDELINES, PART (E), ENTITLED "ACCEPTANCE AND

24  RESPONSIBILITY," SUPPORT THAT CONCLUSION THAT I HAVE JUST

25  ARTICULATED.

1              MS. SOIEFER:  ABSOLUTELY, YOUR HONOR.  BUT WHAT I AM

2     SUGGESTING IS THAT WHERE A DEFENDANT CONTINUES TO MAINTAIN OR

3     SUGGESTS THAT HE IS NOT RESPONSIBLE FOR THE MOST SERIOUS

4     CONDUCT IN WHICH HE WAS INVOLVED, THAT WHERE A DEFENDANT DOES

5     NOT NAME HIS CO-CONSPIRATORS, WHERE HE DOES NOT TELL THE COURT

6     HIS ROLE IN THE CONSPIRACY, WHAT HE SPECIFICALLY DID INSTEAD OF

7     SORT OF GENERAL TERMS THAT WE HAVE HEARD HERE THIS MORNING,

8     THAT THAT DOES NOT QUALIFY AS A PREPONDERANCE OF THE EVIDENCE

9     TO SHOW THE COURT THAT HE HAS TRULY ACCEPTED RESPONSIBILITY.

10             IT'S A START, BUT IT IS NOT A TRUE ACCEPTANCE OF

11    RESPONSIBILITY IN THE SENSE THAT THIS COURT SHOULD SEE BEFORE

12    GRANTING THAT DOWNWARD ADJUSTMENT.

13             THE COURT:  ARE YOU SUGGESTING, AND I AM NOT OFFENDED

14    IF YOU ARE, THAT IT WOULD BE AN ABUSE OF DISCRETION FOR THE

15    COURT TO ACCEPT WHAT HE SAID THIS MORNING.

16             MS. SOIEFER:  I DON'T THINK I KNOW THE ANSWER TO THAT

17    AS A MATTER OF LAW, YOUR HONOR, BECAUSE WE DON'T HAVE ANY

18    STANDARDS FOR ABUSE OF DISCRETION IN THIS CIRCUIT OR ELSEWHERE

19    WITH REGARD TO THE ACCEPTANCE OF RESPONSIBILITY, AND THE ONLY

20    GUIDANCE THAT WE HAVE IS THAT IT IS CLEARLY WITHIN THE COURT'S

21    DISCRETION, SO I DON'T MEAN TO DODGE THE QUESTION, BUT I

22    CERTAIN OF WILL, THAT I DON'T THINK SO, YOUR HONOR.  I DON'T

23    THINK THAT IT WOULD BE AN ABUSE OF DISCRETION.

24             THE COURT:  I DON'T THINK SO EITHER, BUT THAT IS WHY

25    I ASKED THE QUESTION.

1          MS. SOIEFER:  BUT I HAVE NOTHING ON WHICH TO BASE

2     THAT BECAUSE THERE IS NO LAW THAT TELLS ME WHAT IS OR WHAT IS

3     NOT AN ABUSE OF DISCRETION.

4          WHAT I DO THINK IS THAT THE COURT WOULD BE CERTAINLY

5     BE UPHELD IN REJECTING THE ACCEPTANCE OF RESPONSIBILITY BECAUSE

6     WE HAVE SEVERAL QUESTIONS.

7          THE COURT:  I DON'T HAVE ANY QUESTION ABOUT THAT AT

8     ALL, MS. SOIEFER.  I THINK THE COURT WOULD BE UPHELD IF I DID

9     REJECT IT BASED ON THE CASE LAW TO DATE.

10          MS. SOIEFER:  THEN I WON'T GO --

11          THE COURT:  ON THE OTHER HAND, I THINK THE OPPOSITE

12     WOULD BE TRUE AS WELL.  BUT I AM NOT SURE.  I WANT YOU TO KNOW

13     AND I HOPE THE DEFENDANT IS LISTENING.  HE HASN'T GOT ME IN HIS

14     HIP POCKET BY ANY STRETCH OF THE IMAGINATION.  NONE.  I WANT TO

15     HEAR FROM HIM FURTHER.

16          MS. SOIEFER:  AND ALONG THOSE LINES, YOUR HONOR, IF

17     THE COURT IS GOING TO HEAR FURTHER, WE WOULD SUGGEST THAT THE

18     DEFENDANT, NUMBER ONE, BE PLACED UNDER OATH, AND NUMBER TWO,

19     THAT HE BE QUESTIONED SPECIFICALLY EITHER BY THE COURT OR ON

20     THE WITNESS STAND WITH REGARD TO EXACTLY WHAT PORTIONS OF HIS

21     CONDUCT AS THEY WERE BROUGHT OUT AT TRIAL HE DOES ACCEPT AND

22     ACCEPT RESPONSIBILITY FOR AND WHAT PORTIONS HE DOES NOT.

23          WITHOUT THAT KIND OF RECORD, I BELIEVE THAT THERE IS

24     A DEFICIENCY WHICH CANNOT BE REMEDIED AND ON WHICH THE COURT

25     CANNOT FIND AN ACCEPTANCE OF RESPONSIBILITY.  IT IS A SEPARATE

1    QUESTION WHETHER THE COURT HAS BEFORE IT SUFFICIENT FACTUAL

2    BASIS TO MAKE THAT FINDING, AND WE BELIEVE THAT AS OF THIS

3    MOMENT, THE COURT DOES NOT.

4         THE COURT:  THANK YOU VERY, VERY MUCH.  I WANT TO SAY

5    THAT YOU HAVE DONE AN ADMIRABLE, BRILLIANT JOB NOT ONLY TODAY,

6    BUT THROUGHOUT THE SENTENCING AND HAS YOUR COLLEAGUES, MR.

7    ANDARY AND MR. TAPP.  I AM VERY PROUD OF YOU AND PLEASED THAT

8    YOU HAVE BEEN IN MY COURT, AND I MAY ADD THAT I AM SORRY THAT

9    YOU ARE LEAVING.  IT IS GOING TO BE A GREAT LOSS TO THE UNITED

10   STATES ATTORNEY, A GREAT LOSS TO THIS COURT BECAUSE WE NEED

11   GOOD PROSECUTORS LIKE YOURSELF, ROBERT ANDARY, BARRY TAPP, AND

12   MANY OTHERS WITH WHOM YOU HAVE BEEN ASSOCIATED.

13        MS. SOIEFER:  THANK YOU, YOUR HONOR.

14        THE COURT:  MR. CONTE.  DOES YOUR CLIENT AND YOU WANT

15   TO SAY ANYTHING MORE?  I'M VERY MUCH INTERESTED IN WHAT MS.

16   SOIEFER SUGGESTED, AND PERHAPS I WOULD LIKE TO HEAR MORE FROM

17   MR. MILLINGTON, UNLESS YOU HAVE TOLD HIM NOT TO SAY ANYTHING.

18        MR. CONTE:  YOUR HONOR, MAY I JUST ADDRESS A FEW VERY

19   BRIEF THINGS, YOUR HONOR.

20        FIRST OF ALL, THE MEMORANDUM I FILED WAS MY

21   MEMORANDUM OF WHAT I THINK THE EVIDENCE WAS INDUCED AT TRIAL

22   AND WAS FILED ON MR. MILLINGTON'S BEHALF BY ME.  THAT'S THE

23   FIRST THING.

24        AND THE ARGUMENTS OF COUNSEL, I DON'T THINK SHOULD BE

25   CONSTRUED AGAINST THE CLIENT.

1              THE COURT:  WHAT DID THE COURT JUST SAY IN THAT

2   REGARD?

3              MR. CONTE:  I UNDERSTAND THAT, YOUR HONOR.  I AM

4   LEADING UP TO --

5              THE COURT:  WHAT DID I SAY?

6              MR. CONTE:  THAT IT WON'T BE HELD AGAINST HIM.

7              THE COURT:  ALL RIGHT.

8              MR. CONTE:  ALL RIGHT.  BUT THAT --

9              THE COURT:  WHY DO YOU WASTE MY TIME MAKING A

10  STATEMENT LIKE THAT?

11             MR. CONTE:  BECAUSE, YOUR HONOR, IT IS A PREDICATE TO

12  ABOUT WHAT I AM ABOUT TO SAY.

13             THE COURT:  ALL RIGHT.

14             MR. CONTE:  WHICH IS THAT MR. MILLINGTON NEVER

15  DISCUSSED WITH ME WHAT HE WAS GOING TO SAY TO THIS COURT TODAY.

16  WHAT HE DID --

17             THE COURT:  MR. CONTE, YOU TOLD ME YOURSELF FROM THAT

18  VERY LECTERN THAT YOU HAD, DURING THE RECESS, A FIVE MINUTE

19  CONVERSATION WITH YOUR CLIENT WHERE HE WENT OVER WHAT HE WAS

20  GOING TO SAY WITH YOU BEFORE HE SAID IT TO ME.  ISN'T THAT

21  CORRECT?

22             MR. CONTE:  NO.  THAT WAS AFTER THE COURT TOOK THE

23  RECESS.  BEFORE THE RECESS WHEN MR. MILLINGTON MADE HIS

24  STATEMENT --

25             THE COURT:  I UNDERSTAND.  THEN HE CAME BACK AND SAID

1  SOME FURTHER THINGS, DID HE NOT?

2        MR. CONTE:  YES, HE DID.

3        THE COURT:  ALL RIGHT.

4        MR. CONTE:  AND THOSE WERE DISCUSSED WITH ME BUT HIS

5  INITIAL ANNOUNCEMENT WAS NOT DISCUSSED WITH ME.  WHEN I LEFT

6  MR. MILLINGTON IN PETERSBURG ON FEBRUARY 2ND, IT WAS MY

7  UNDERSTANDING THAT HE WASN'T GOING TO SAY ANYTHING TO THE COURT

8  THAT DAY.

9        THE COURT:  WELL, HE HAS BEEN IN THE CRIMINAL JUSTICE

10 SYSTEM.  HE PROBABLY KNOWS MORE THAN YOU DO ABOUT THESE

11 GUIDELINES.

12       MR. CONTE:  I DOUBT THAT, YOUR HONOR.

13       THE THIRD THING I WANTED TO SAY IS THAT MS. SOIEFER

14 BRINGS UP SINCERITY FOR ALL ACTIONS.  IT SEEMED TO ME WHAT MR.

15 MILLINGTON SAID THIS MORNING WAS FAIRLY INCLUSIVELY THAT HE

16 APOLOGIZED TO THE PEOPLE WHO HE BROUGHT INTO THE CONSPIRACY,

17 APOLOGIZED ABOUT PEOPLE WHO WERE HURT AS A RESULT OF THE DRUG

18 SALES.  I REMEMBER THAT CLEARLY FROM HIS SPEECH THIS MORNING.

19       THE COURT:  I ALSO REMEMBER HE APOLOGIZED FOR HIS

20 PARTICIPATION IN THE CRIME OF INTERSTATE TRAVEL IN AID OF

21 RACKETEERING.

22       MR. CONTE:  EXACTLY, YOUR HONOR.  BOTH OF THE CHARGES

23 THAT HE WAS CONVICTED OF AND APOLOGIES TO THE PEOPLE OF THIS

24 CITY, THE PEOPLE THAT HE HAS HURT FROM DEALING IN DRUGS AND THE

25 PEOPLE THAT HE INTRODUCED TO THIS CONSPIRACY.

1       THE NEXT THING THAT I WOULD LIKE TO ADDRESS TO THE

2 COURT IS APPARENTLY I HAVE JUST BEEN INFORMED BY MR. MILLINGTON

3 THAT HE DID, IN FACT, SEND A LETTER TO THE COURT YESTERDAY AND

4 --

5       THE COURT:  THE COURT HASN'T RECEIVED IT.

6       MR. CONTE:  -- OBVIOUSLY, YOUR HONOR, SINCE YESTERDAY

7 WAS A FEDERAL HOLIDAY, I DON'T ANTICIPATE THAT THAT LETTER

8 WOULD EVEN BE HERE UNTIL TOMORROW.

9       THE COURT:  IT'S NOT HERE.

10       MR. CONTE:  IT WAS MAILED FROM PETERSBURG APPARENTLY

11 YESTERDAY, MONDAY, THE FEDERAL HOLIDAY.

12       THAT IS ALL I HAVE TO SAY.  I THINK MR. MILLINGTON'S

13 STATEMENTS --

14       THE COURT:  MR. MILLINGTON, DO YOU HAVE ANYTHING TO

15 SAY TO THE COURT?  I WILL BE GLAD TO HEAR FROM YOU.  YOU HEARD

16 WHAT MS. SOIEFER JUST SAID, AND YOU HEARD WHAT THE COURT JUST

17 SAID IN RESPONSE TO HER COMMENTS WHICH WERE NOT FRIVOLOUS.

18       OBVIOUSLY, AS YOU KNOW, THEY ARE MADE IN ALL

19 SERIOUSNESS.  YOU HAVE A VERY SUBSTANTIAL LIBERTY INTEREST

20 INVOLVED IN THIS.  SHE ASKED FOR CERTAIN THINGS, AND SHE POINTS

21 OUT THAT THERE IS NOTHING TO PREVENT YOU FROM COMING IN HERE

22 SOMETIME AFTER NEXT WEEK AND APPEARING BEFORE THE JURY ON

23 BEHALF OF YOUR WIFE, DENYING EVERYTHING YOU SAID IF YOU WANT TO

24 TAKE THAT CHANCE.

25       BUT EVEN THOUGH YOU ARE NOT UNDER OATH, IF WHAT YOU

1   SAID TODAY IS INCONSISTENT WITH ANYTHING THAT YOU MIGHT SAY AT

2   A SUBSEQUENT TRIAL, IT WOULD SEEM TO ME THAT THE UNITED STATES

3   ATTORNEY PROBABLY WOULD PROCEED AGAINST YOU FOR MAKING A FALSE

4   STATEMENT TO A FEDERAL OFFICIAL, I WOULD THINK.  I DON'T KNOW.

5         MS. SOIEFER, THAT IS UP TO YOU AND YOUR SUCCESSORS.

6         IF YOU WANT TO WITHDRAW THOSE STATEMENT THAT YOU MADE

7   THIS MORNING, YOU ARE CERTAINLY AT LIBERTY TO DO THAT.  IF YOU

8   WANT TO AMPLIFY THEM, IT MIGHT MAKE A SUBSTANTIAL DIFFERENCE IN

9   WHAT I DO.

10        SPEAK INTO THE MICROPHONE IF YOU WANT TO SAY

11  ANYTHING.

12        DEFENDANT MILLINGTON:  I WILL JUST STAND BY WHAT I

13  SAID EARLIER, AND IF YOU WANT TO ASK ME ANY QUESTIONS, I AM

14  WILLING TO ANSWER ANY QUESTIONS THAT YOU MIGHT HAVE OF ME.

15        THE COURT:  WELL, I HAVE GOT A LOT OF QUESTIONS, A

16  WHOLE LOT OF QUESTIONS, SIR.  THE MOMENT OF TRUTH HAS FINALLY

17  ARRIVED.

18        YOU HAVE BEEN IN PRISON BEFORE.  YOU HAVE BEEN IN THE

19  CRIMINAL JUSTICE SYSTEM BEFORE.

20        DEFENDANT MILLINGTON:  YES, SIR.

21        THE COURT:  I DON'T CONSIDER YOU AN UNSOPHISTICATED

22  PERSON AT ALL.  YOU KNOW WHAT IT IS LIKE TO BE IN PRISON, IN

23  JAIL.

24        DEFENDANT MILLINGTON:  I HAVE BEEN THERE.

25        THE COURT:  YOU HAVE ASSOCIATED WITH A LOT OF PEOPLE

1  WHO HAVE HAD THAT HAPPEN TO THEM, AND THIS JUDGE HAPPENS TO

2  KNOW.  YOU TALK ABOUT THE JUDGE, YOU TALK ABOUT THE

3  PROSECUTORS, YOUR LAWYER, EVERYTHING ELSE, DON'T YOU?

4           DEFENDANT MILLINGTON:  YES, I EXPAND ON IT.

5           THE COURT:  IT GOES ON EVERY DAY, WHEN YOU ARE

6  EATING, EVEN WHEN YOU ARE AT WORK, ISN'T THAT RIGHT?  THAT'S

7  WHAT YOU TALK ABOUT, ISN'T IT?

8           DEFENDANT MILLINGTON:  NO.  I WOULDN'T SAY THAT.

9           THE COURT:  YOU TALK ABOUT IT A LOT, THOUGH, DON'T

10 YOU?

11          DEFENDANT MILLINGTON:  YES.  WELL, I AM SAYING IT IS

12 AFFECTING MY LIFE.  I HAVE TO TALK ABOUT IT.

13          THE COURT:  SURE, ABSOLUTELY.

14          DEFENDANT MILLINGTON:  IT IS SOMETHING THAT I WILL

15 PROBABLY TALK FOR THE NEXT 15 OR 20 YEARS, YOUR HONOR.  YOU

16 KNOW, I CAN'T GET AROUND IT.

17          THE COURT:  WELL, AS I UNDERSTAND IT, YOU ADMIT THAT

18 YOU PARTICIPATED IN THIS CONSPIRACY?

19          DEFENDANT MILLINGTON:  YES, SIR.

20          THE COURT:  YOU ADMIT THAT THE OTHERS PARTICIPATED

21 ALONG WITH YOU, IS THAT RIGHT, WHO WERE TRIED WITH YOU?

22          DEFENDANT MILLINGTON:  YES, SIR.

23          MS. SOIEFER:  YOUR HONOR, I WOULD ASK THAT THE

24 DEFENDANT BE PLACED UNDER OATH --

25          MR. CONTE:  WE WOULD OBJECT TO THAT.

1          MS. SOIEFER:   -- IN LIGHT OF THESE QUESTIONS, AND I

2   WOULD ASK THAT THE NAMES BE SPECIFIC AS TO THE CO-CONSPIRATORS

3   IN THIS CASE AND ALL OF THE OTHER INDICTED CO-DEFENDANTS IN

4   THIS CASE.

5          MR. CONTE:   IT'S A FISHING EXPEDITION, YOUR HONOR, BY

6   THE GOVERNMENT.

7          MS. SOIEFER:   NOT AT ALL, YOUR HONOR.   THE COURT MAY

8   HAVE MISTAKEN WHAT I WAS SAYING WHEN I SAID THAT MR. MILLINGTON

9   COULD COME IN NOT TO SAY ANYTHING DIFFERENT FROM WHAT HE SAYS

10  IN THIS COURTROOM, BUT TO SAY EXACTLY WHAT HE SAYS WHEN HE

11  DENIES THAT HIS WIFE WAS INVOLVED.

12         THE COURT:   YOU DON'T DENY THAT, DO YOU?

13         DEFENDANT MILLINGTON:   YES, I WOULD DENY THAT.

14         THE COURT:   YOU DO.

15         DEFENDANT MILLINGTON:   YES, I WOULD DENY THAT.

16         THE COURT:   YOU DON'T DENY THE OTHERS WHO WERE TRIED

17  AND CONVICTED WITH YOU WERE INVOLVED, DO YOU?

18         DEFENDANT MILLINGTON:   I WOULDN'T DENY THAT.

19         THE COURT:   YOU WOULD NOT?

20         DEFENDANT MILLINGTON:   NO.

21         THE COURT:   THEY WERE PROPERLY CONVICTED?

22         DEFENDANT MILLINGTON:   WELL, THE JURY BROUGHT BACK A

23  VERDICT, AND I WAS SATISFIED WITH IT.   I DON'T HAVE ANY QUALMS

24  ABOUT IT.

25         THE COURT:   YOU DON'T HAVE ANY QUARREL WITH THE --

1        DEFENDANT MILLINGTON:  THE VERDICT.

2        THE COURT:  WAIT JUST A MINUTE.

3      -- THE VERDICT OF THE JURY AS TO RAYFUL EDMOND, JAMES

4 ANTONIO JONES, TONY LEWIS, MELVIN BUTLER, EMANUEL SUTTON, KEITH

5 COOPER, BERNICE HILLMAN-MCCRAW, DAVID MCCRAW, JOHNNIE MONFORD

6 OR ARMARETTA PERRY?

7        DEFENDANT MILLINGTON:  NO, SIR.

8        MS. SOIEFER:  I ASK THAT THE DEFENDANT BE PLACED

9 UNDER OATH, YOUR HONOR, IF THE COURT PLEASE.

10       THE COURT:  AND YOU ARE FAMILIAR WITH THEIR

11 ACTIVITIES FROM THE TIME THAT THIS CONSPIRACY BEGAN IN 1985 OR

12 HAD BEEN GOING ON SINCE 1985 WHEN YOU JOINED IT AFTER YOU GOT

13 OUT OF JAIL, UNTIL YOU WERE ARRESTED, ISN'T THAT RIGHT?

14       DEFENDANT MILLINGTON:  RIGHT.

15       THE COURT:  IS THAT CORRECT?

16       DEFENDANT MILLINGTON:  1985 AND 1986.

17       THE COURT:  YOU WERE AWARE THAT IT STARTED IN 1985,

18 WEREN'T YOU?

19       DEFENDANT MILLINGTON:  NO, SIR.  I WOULDN'T SAY THAT

20 I WAS AWARE OF IT.  I DIDN'T KNOW.

21       THE COURT:  WHEN DID IT START?

22       DEFENDANT MILLINGTON:  I AM SAYING THAT I DIDN'T MEET

23 RAYFUL EDMOND UNTIL 1987.

24       MS. SOIEFER:  YOUR HONOR.

25       THE COURT:  JUST A MOMENT, MS. SOIEFER, EXCUSE ME.

1          DEFENDANT MILLINGTON:  -- UNTIL OF --

2          THE COURT:  UNTIL WHAT?

3          DEFENDANT MILLINGTON:  UNTIL 1987.

4          THE COURT:  THAT'S WHEN YOU JOINED IT OR WHEN YOU

5  BECAME AWARE THAT IT STARTED?

6          DEFENDANT MILLINGTON:  I MET RAYFUL EDMOND IN THAT

7  YEAR, 1987.

8          THE COURT:  WAS THAT WHEN YOU FIRST MET HIM?

9          DEFENDANT MILLINGTON:  YES.

10         THE COURT:  TELL US WHERE AND UNDER WHAT

11 CIRCUMSTANCES YOU MET HIM.

12         DEFENDANT MILLINGTON:  AT A NIGHT CLUB.

13         MS. SOIEFER:  YOUR HONOR, THERE IS NO REQUIREMENT OF

14 VERACITY UNTIL THE COURT PLACES THE DEFENDANT UNDER OATH.

15         DEFENDANT MILLINGTON:  AT A NIGHT CLUB, YOUR HONOR.

16         THE COURT:  PARDON?

17         DEFENDANT MILLINGTON:  AT A NIGHT CLUB.

18         THE COURT:  WHAT'S THE NAME OF IT?

19         DEFENDANT MILLINGTON:  CHAPTER III, SOMETHING LIKE

20 THAT.

21         THE COURT:  CHAPTER III?

22         DEFENDANT MILLINGTON:  I THINK IT WAS CHAPTER III.

23         THE COURT:  WHERE ALONZO MOURNING AND JOHN TURNER

24 USED TO GO WITH YOU.

25         DEFENDANT MILLINGTON:  I DON'T THINK THAT THEY WERE

1  IN TOWN THEN.  I AM NOT SURE ABOUT THAT.

2          THE COURT:  DO YOU KNOW RAYFUL EDMOND WAS THERE?

3          DEFENDANT MILLINGTON:  YES, I MET HIM.

4          THE COURT:  WHO ELSE WAS THERE AMONG THESE DEFENDANTS

5  WHO WERE CONVICTED WITH YOU?

6          DEFENDANT MILLINGTON:  THAT'S ALL I KNEW WAS RAYFUL

7  EDMOND AT THE TIME.

8          THE COURT:  YOU KNEW WHERE THE DRUGS WAS COMING FROM,

9  TOO, DON'T YOU?

10          DEFENDANT MILLINGTON:  I FOUND OUT.

11          THE COURT:  PARDON?

12          DEFENDANT MILLINGTON:  I FOUND OUT WHEN I CAME IN

13  JAIL.

14          THE COURT:  YOU MEAN AFTER YOU WERE ARRESTED?

15          DEFENDANT MILLINGTON:  YES, SIR.

16          THE COURT:  YOU DIDN'T KNOW WHERE THE DRUGS WERE

17  COMING FROM UNTIL YOU GOT ARRESTED?

18          DEFENDANT MILLINGTON:  WHAT DO YOU MEAN?  FROM

19  CALIFORNIA?  STUFF LIKE THAT.

20          THE COURT:  YES.

21          DEFENDANT MILLINGTON:  NO, I DIDN'T, YOUR HONOR.

22          THE COURT:  WELL, WHAT --

23          DEFENDANT MILLINGTON:  I DIDN'T KNOW WHO WAS HE

24  BUYING HIS STUFF FROM.  I DIDN'T KNOW THAT.

25          THE COURT:  WHO WAS HE?

1          DEFENDANT MILLINGTON:  RAYFUL.

2          THE COURT:  RAYFUL?

3          DEFENDANT MILLINGTON:  RAYFUL EDMOND, RIGHT.  YES.

4          THE COURT:  DID YOU KNOW MELVIN BUTLER BEFORE?

5          DEFENDANT MILLINGTON:  NO, I DIDN'T MEET HIM.

6          THE COURT:  YOU KNEW WHO HE WAS THOUGH, DIDN'T YOU?

7          DEFENDANT MILLINGTON:  NO, I MET HIM IN THE BULL PEN

8    DOWNSTAIRS, AS A MATTER OF FACT.

9          THE COURT:  I SEE, BUT YOU KNEW THAT RAYFUL EDMOND

10   WAS GETTING THE DRUGS FROM CALIFORNIA, DIDN'T YOU?

11         DEFENDANT MILLINGTON:  NO, I SAID THAT I DIDN'T FIND

12   OUT THAT UNTIL WHEN I WAS LOCKED UP.

13         THE COURT:  YOU KNEW THAT THEY WERE USING GUNS, DON'T

14   YOU?

15         DEFENDANT MILLINGTON:  I KNEW GUNS WAS AROUND.  I

16   NEVER SEEN HIM USE A GUN.

17         THE COURT:  I DIDN'T ASK YOU THAT.  YOU KNEW THAT

18   GUNS WERE BEING USED TO FURTHER THE OBJECTS OF THE CONSPIRACY,

19   DON'T YOU?

20         DEFENDANT MILLINGTON:  I NEVER SAW ANYONE REALLY USE

21   A GUN.  I SAW GUN, BUT I NEVER SAW ANYONE SHOOT ANYONE OR

22   ANYTHING LIKE THAT.

23         THE COURT:  IN YOUR PRESENCE?

24         DEFENDANT MILLINGTON:  IN MY PRESENCE.

25         THE COURT:  BUT YOU KNEW ABOUT THE GUNS BEING USED.

1    DEFENDANT MILLINGTON:  I SEEN GUNS.

2    THE COURT:  YOU SAW.  YOU KNEW ABOUT THE GUNS BEING

3    USED, DID YOU OR DIDN'T YOU?

4    DEFENDANT MILLINGTON:  DID I KNOW ABOUT THEM BEING

5    USED?  NO, SIR.  NOT DIRECTLY AGAINST ONE, AGAINST ANOTHER

6    INDIVIDUAL.  I DIDN'T KNOW.

7    THE COURT:  WHAT IS YOUR POSITION THAT THE GUNS WERE

8    TO BE USED FOR?

9    DEFENDANT MILLINGTON:  SAY, WHEN WE ARE OUT ON THE

10   STREETS, SO MANY STUFF BE HAPPENING.  YOU COULD BE BEEFING WITH

11   A GUY AT A CLUB OR ANYTHING, YOU BE USING A GUN FOR SEVERAL

12   DIFFERENT THINGS, NOT ONLY JUST TO PROTECT --

13   THE COURT:  TELL ME WHAT YOU USED THEM FOR?

14   DEFENDANT MILLINGTON:  WHAT I USED THEM FOR?

15   THE COURT:  WELL, WHAT ANYBODY USED THEM FOR IN THE

16   CONSPIRACY.

17   DEFENDANT MILLINGTON:  BUT I AM SAYING WE -- THEY

18   COULD BE USED TO PROTECT AREAS.  IF YOU WERE BEEFING WITH

19   INDIVIDUALS OR SOMETHING, TO KEEP A GUY FROM HURTING YOU.  FOR

20   YOUR OWN PROTECTION, ANYTHING.  THERE IS NUMEROUS REASONS THAT

21   I SEE.

22   THE COURT:  KEEP GOING.  WHAT OTHER REASONS?

23   DEFENDANT MILLINGTON:  THAT'S ABOUT THE HIGH LIGHT,

24   YOUR HONOR.  I SAID THAT'S THE HIGH LIGHT RIGHT THERE.  THEM

25   TWO MAINLY.

1          THE COURT:  GIVE ME THE PARTICULARS.

2          DEFENDANT MILLINGTON:  I DON'T UNDERSTAND YOUR

3   QUESTION.

4          THE COURT:  WHERE DID YOU TRAVEL?  FROM WHERE TO

5   WHERE?

6          DEFENDANT MILLINGTON:  FROM D.C. TO MARYLAND -- FROM

7   MARYLAND TO D.C.

8          THE COURT:  AND WHY DID YOU DO THAT?

9          DEFENDANT MILLINGTON:  WELL, MY FAMILY WHO IS IN D.C.

10  AND I WAS PARTICIPATING IN THE CONSPIRACY AT ORLEANS AND MORTON

11  STREET.

12         THE COURT:  WHEN YOU SAY YOU WERE PARTICIPATING IN

13  THE CONSPIRACY IN ORLEANS AND MORTON PLACE, HOW DID YOU

14  PARTICIPATE IN THE CONSPIRACY?

15         DEFENDANT MILLINGTON:  PICKING UP MONEY.

16         THE COURT:  AND DOING WHAT WITH IT?

17         DEFENDANT MILLINGTON:  COUNTING IT.

18         THE COURT:  WHERE?

19         DEFENDANT MILLINGTON:  WHAT?

20         THE COURT:  WHERE?

21         DEFENDANT MILLINGTON:  IN MY HOUSE.

22         THE COURT:  WHERE?

23         DEFENDANT MILLINGTON:  1009 PECONIC.

24         THE COURT:  DID YOU COUNT IT ANY PLACE ELSE?

25         DEFENDANT MILLINGTON:  NO, SIR.

1          THE COURT:  DID YOU EVER BRINGS ANY DRUGS DOWN TO THE

2   STRIP?

3          DEFENDANT MILLINGTON:  NO, SIR.

4          THE COURT:  ONLY MONEY?

5          DEFENDANT MILLINGTON:  YES, SIR.

6          THE COURT:  WHO ELSE COUNTED THE MONEY WITH YOU?

7          DEFENDANT MILLINGTON:  THAT WAS MY POSITION.

8          THE COURT:  HIGH LEVEL POSITION?

9          DEFENDANT MILLINGTON:  I WOULDN'T CLASSIFY IT AS A

10  HIGH LEVEL POSITION.

11         THE COURT:  WHAT DID YOU DO WITH THE MONEY AFTER YOU

12  COUNTED IT WITH A MONEY COUNTING MACHINE?  IS THAT WHAT IT WAS?

13         DEFENDANT MILLINGTON:  NO, I USE MY HAND.

14         THE COURT:  HOW MUCH DID YOU EVER COUNT AT ANY ONE

15  TIME?

16         DEFENDANT MILLINGTON:  $30 - $40 THOUSAND, SOMETHING

17  LIKE THAT.

18         THE COURT:  $30 OR $40 THOUSAND.  HOW MUCH WOULD YOU

19  SAY THAT YOU COUNTED ALL TOGETHER DURING THE COURSE OF YOUR

20  PARTICIPATION IN THIS CONSPIRACY?

21         DEFENDANT MILLINGTON:  I COULDN'T BEGIN -- I WOULDN'T

22  KNOW, YOUR HONOR.

23         THE COURT:  YOU DON'T KNOW?

24         DEFENDANT MILLINGTON:  I WOULD -- IT'S NOT SOMETHING

25  I KEPT TABS ON.

1        THE COURT: HALF A MILLION DOLLARS? IT WENT ON FOR A

2 LONG TIME, DIDN'T IT?

3        DEFENDANT MILLINGTON: I WOULD SAY FROM BOTH. WHEN I

4 STARTED COUNTING IN NOVEMBER UNTIL ABOUT JUNE.

5        THE COURT: HOW MUCH A DAY DID YOU COUNT? $40 OR $50

6 THOUSAND?

7        DEFENDANT MILLINGTON: NOT A DAY. ABOUT A WEEK.

8        THE COURT: YOU ONLY DID IT FOR A WEEK.

9        DEFENDANT MILLINGTON: WHAT DO YOU MEAN?

10        THE COURT: YOU ONLY COUNTED MONEY FOR A WEEK?

11        DEFENDANT MILLINGTON: NO, SAID ABOUT A WEEK, I

12 COUNTED THAT MUCH A WEEK.

13        THE COURT: $50,000 A WEEK?

14        DEFENDANT MILLINGTON: YES, SOMEWHERE AROUND THERE.

15        THE COURT: HOW MANY WEEKS DID YOU COUNT THAT MUCH

16 MONEY?

17        DEFENDANT MILLINGTON: I'D SAY FROM NOVEMBER UNTIL

18 ABOUT JUNE.

19        THE COURT: HOW MUCH WOULD THAT BE?

20        DEFENDANT MILLINGTON: I COULDN'T SAY.

21        THE COURT: SOMEBODY GIVE ME A ROUGH CALCULATION.

22        MR. CONTE: YOUR HONOR, THAT WOULD BE A HALF MILLION

23 DOLLARS IF IT IS ABOUT $50,000 A WEEK.

24        THE COURT: THAT'S WHAT I THOUGHT.

25        DOES THAT SOUND RIGHT TO YOU?

1        DEFENDANT MILLINGTON:  I STILL -- I DON'T -- I

2   WOULDN'T KNOW.  I AM JUST --

3        THE COURT:  SPEAK INTO THE MIKE. I CAN'T HEAR YOU.

4        DEFENDANT MILLINGTON:  I SAID I WOULDN'T KNOW.

5        THE COURT:  BUT IF THAT IS WHAT THE ARITHMETIC SHOWS,

6   BASED ON THE PERIOD THAT YOU TOLD US YOU WERE DOING IT --

7        DEFENDANT MILLINGTON:  YES.

8        THE COURT:   -- THAT WOULD BE A HALF MILLION DOLLARS,

9   WOULDN'T IT?

10        DEFENDANT MILLINGTON:  THAT WOULD BE CORRECT.

11        THE COURT:  AND WHAT DID YOU DO WITH THE MONEY AFTER

12   YOU COUNTED IT?

13        DEFENDANT MILLINGTON:  I GAVE IT TO RAYFUL.

14        THE COURT:  WHERE DID YOU GIVE IT TO RAYFUL?

15        DEFENDANT MILLINGTON:  AT MY HOUSE.

16        THE COURT:  YOUR HOUSE?  YOUR WIFE KNEW THAT YOU WERE

17   COUNTING THAT MONEY, DIDN'T SHE?

18        DEFENDANT MILLINGTON:  NO, SIR, SHE DIDN'T KNOW.

19        THE COURT:  OH, YOU WENT AND HID SOMEPLACE WHEN YOU

20   WERE COUNTING IT.

21        DEFENDANT MILLINGTON:  SHE -- SOMETIMES SHE WOULD BE

22   AT WORK, AND I WOULD HIDE IT FROM HER.  I WOULD BE IN THE

23   BASEMENT DOING MY OWN THING.

24        THE COURT:  AGAIN, WOULD YOU MIND STEPPING OVER AND

25   SPEAKING IN THE MICROPHONE.

1          DEFENDANT MILLINGTON:  I SAID THAT I WOULD BE IN THE

2    BASEMENT DOING MY OWN THING.

3          THE COURT:  ARE YOU SURE YOU ARE TELLING ME THE TRUTH

4    TODAY?

5          DEFENDANT MILLINGTON:  YES, SIR.

6          THE COURT:  ARE YOU WILLING TO SWEAR TO IT?

7          DEFENDANT MILLINGTON:  YES, SIR.

8          THE COURT:  ALL RIGHT.

9          MR. CONTE:  YOU HONOR, I JUST DON'T THINK THAT IT IS

10   NECESSARY.

11         THE COURT:  PARDON?

12         MR. CONTE:  I WOULD OBJECT TO THAT, YOUR HONOR, BUT

13   IF IT IS MY CLIENT'S DESIRE --

14         DEFENDANT MILLINGTON:  COULD I CONSULT WITH MY

15   COUNSEL?

16         THE COURT:  YOU CONSULT WITH YOUR CLIENT.  ASK HIM IF

17   HE WANTS TO TAKE AN OATH.  HE TOLD ME IT WAS THE TRUTH.  HE

18   TOLD ME IT WAS THE TRUTH.

19         MR. CONTE:  I HAVE NO DOUBT THAT IT IS, YOUR HONOR.

20         THE COURT:  DOES HE WANT TO SWEAR TO IT?

21         MR. CONTE:  FIRST OF ALL, I DON'T SEE THE NECESSITY

22   OF THE OATH IN THESE PROCEEDINGS.

23         COURT'S INDULGENCE.

24      (PAUSE.)

25         THE COURT:  IS THIS DONE VOLUNTARILY AND FREELY BY

1  YOU?

2          DEFENDANT MILLINGTON:  YES.

3      JERRY MILLINGTON, DEFENDANT, SWORN

4          THE COURT:  DOES THAT INCLUDE THE TESTIMONY THAT YOU

5  HAVE GIVEN THE COURT THIS MORNING AND THIS AFTERNOON?

6          DEFENDANT MILLINGTON:  YES, SIR.

7          THE COURT:  THAT OATH?

8          DEFENDANT MILLINGTON:  YES, SIR.

9          THE COURT:  EVERYTHING IS TRUE?

10         DEFENDANT MILLINGTON:  YES, YOUR HONOR.

11         THE COURT:  ANYBODY ELSE HAVE ANYTHING TO SAY TO THE

12  COURT BEFORE IT IMPOSES SENTENCES.

13         THE COURT HEARS NONE.

14         MS. SOIEFER:  WE OBJECT TO THE PROCEDURE USED, YOUR

15  HONOR, WITH REGARD TO THE ACCEPTANCE OF RESPONSIBILITY.  WE

16  BELIEVE THAT THE DEFENDANT HAS TO BE AVAILABLE FOR CROSS-

17  EXAMINATION.

18         MR. CONTE:  QUITE FRANKLY, I HAVE NEVER HEARD OF

19  THAT.

20         THE COURT:  THE COURT APOLOGIZES TO YOU, MS. SOIEFER,

21  IF YOU ARE ARE OFFENDED.

22         MS. SOIEFER:  NOT PERSONALLY, YOUR HONOR, NO.

23         THE COURT:  MR. MILLINGTON, IN CONNECTION WITH YOUR

24  SENTENCE TODAY, I WANT TO TELL YOU BEFORE I PRONOUNCE I

25  PRONOUNCE SENTENCE.  UNDER RULE 35 OF THE FEDERAL RULES OF

1   CRIMINAL PROCEDURE, SUBSECTION (B):

2           "THE COURT, ON MOTION OF THE GOVERNMENT, MAY, WITHIN

3       ONE YEAR AFTER THE IMPOSITION OF SENTENCE, LOWER A

4       SENTENCE TO REFLECT A DEFENDANT'S SUBSEQUENT SUBSTANTIAL

5       ASSISTANCE IN THE INVESTIGATION OR PROSECUTION OF ANOTHER

6       PERSON WHO HAS COMMITTED AN OFFENSE IN ACCORDANCE WITH THE

7       GUIDELINES AND POLICY STATEMENTS OF THE UNITED STATES

8       SENTENCING COMMISSION PURSUANT TO SECTION 994 OF TITLE 28

9       UNITED STATE CODE.  THE COURT'S AUTHORITY TO LOWER A

10      SENTENCE UNDER THIS SUBDIVISION INCLUDES THE AUTHORITY TO

11      LOWER SUCH A SENTENCE TO A LEVEL BELOW THAT ESTABLISHED BY

12      STATUTE AS A MINIMUM SENTENCE."

13          THIS IS SOMETHING FOR YOU TO THINK ABOUT IN THE

14  FUTURE, RIGHT?  DO YOU UNDERSTAND?

15          THE DEFENDANT:  YES, SIR.

16          THE COURT:  THIS DEFENDANT STANDS BEFORE THE COURT

17  TODAY CONVICTED OF TWO VERY SERIOUS CRIMES, NAMELY, THE CRIME

18  OF CONSPIRACY IN VIOLATION OF SECTION 846 OF TITLE 21, KNOWN AS

19  THE CONTROLLED SUBSTANCES ACT AND THE CRIME OF INTERSTATE

20  TRAVEL IN AID OF RACKETEERING IN VIOLATION OF TITLE 18 UNITED

21  STATES CODE SECTION 1952(A)(3).

22          THE COURT HAS CAREFULLY CONSIDERED EACH OF THESE VERY

23  TECHNICAL ARGUMENTS, SOME OF WHICH ARE NOT SO TECHNICAL, BUT

24  MOST OF THEM ARE SUPER TECHNICAL, MADE BY THE DEFENDANT'S

25  LAWYER, AND I SAY THAT WITHOUT CRITICISM, BUT THE FACT IS MANY

1 OF THEM HAVE BEEN SUPER TECHNICAL, AND THEY HAVE ALL BEEN

2 CAREFULLY CONSIDERED AND IN ACCORDANCE WITH THE CONSENT OF

3 COUNSEL FOR THE DEFENDANT AND THE DEFENDANT THIS MORNING THE

4 COURT WILL SUBSEQUENTLY TO THIS HOUR PREPARE FINDINGS OF FACT

5 AND CONCLUSIONS OF LAW RELEVANT TO SENTENCING IN ACCORDANCE

6 WITH THE TRIAL TESTIMONY AND THE RECORD IN THIS HEARING.

7 THE COURT FINDS THAT THE DEFENDANT HAS, IN FACT,

8 ACCEPTED RESPONSIBILITY FOR THIS PARTICULAR OFFENSE OF THE

9 CRIME OF CONSPIRACY AND THE CRIME OF INTERSTATE TRAVEL IN AID

10 OF RACKETEERING.

11 BY VIRTUE THEREOF, THE COURT WILL REDUCE THE OFFENSE

12 LEVEL FROM A 41 TO A 39. THE DEFENDANT FALLING IN A CRIMINAL

13 HISTORY CATEGORY OF A 4 THUS STANDS BEFORE THE COURT EXPOSED TO

14 A SENTENCE OF 360 MONTHS TO LIFE IMPRISONMENT.

15 BECAUSE OF THE REASONS ALREADY ANNOUNCED THIS

16 MORNING, NAMELY, THAT THIS DEFENDANT IS RESPONSIBLE FOR THE

17 CONDUCT OF OTHERS IN THE CONSPIRACY FOR WHICH HE STANDS

18 CONVICTED UNDER COUNT 2 AND IS RESPONSIBLE FOR THE CONDUCT

19 ATTRIBUTABLE TO EVERY MEMBER OF THAT CONSPIRACY AND BECAUSE

20 THAT CONSPIRACY WAS A JOINTLY UNDERTAKEN CRIMINAL ACTIVITY

21 WHICH HE HAD AN OPPORTUNITY TO FIND REASONABLY FORESEEABLE ON

22 HIS PART INSOFAR AS HIMSELF AND HIS OWN CONDUCT AS WELL AS THE

23 CONDUCT OF OTHERS, HE HAD ADMITTED TO THE COURT THAT HE KNEW

24 ABOUT THE GUNS THAT WERE INVOLVED, AND I ASSUME, THEREFORE, IN

25 VIEW OF HIS OTHER GENERAL STATEMENTS, THAT HE KNEW ABOUT THE

1  QUANTITY OF DRUGS THAT WERE INVOLVED, BEING IMPORTED INTO THIS

2  AREA FROM OTHER PARTS OF THE COUNTRY.

3          IF HE COUNTED A HALF A MILLION DOLLARS, HE KNEW THAT

4  THE QUANTITY OF DRUGS WAS AT LEAST A VERY SUBSTANTIAL AMOUNT,

5  IF NOT THAT AMOUNT FOUND BY THE JURY IN CONNECTION WITH COUNT 1

6  FOR WHICH THE DEFENDANT WAS NOT CONVICTED BUT FOR WHICH HE

7  REALLY WAS RESPONSIBLE.

8          ACCORDINGLY, THE COURT FINDS THAT THIS DEFENDANT'S

9  ROLE IN THE OFFENSE WAS A SUBSTANTIAL ONE.  THE ORGANIZATION

10 EXISTED IN LARGE MEASURE AND THE SUCCESS OF THE ORGANIZATION

11 WAS IN LARGE MEASURE SUBSTANTIALLY ATTRIBUTABLE TO THIS

12 DEFENDANT AND HIS CONDUCT.  IT WAS NOT SOMETHING THAT JUST

13 HAPPENED BY VIRTUE OF A LOW LEVEL PERSON.

14         THE ENTRUSTMENT AND THE FAITH PLACED IN THIS

15 DEFENDANT BY THE LEAD DEFENDANT, RAYFUL EDMOND, III, FOR

16 APPROXIMATELY HALF A MILLION DOLLARS INDICATES THAT HIS ROLE

17 IN THE OFFENSE WAS A SUBSTANTIAL ROLE AS PREVIOUSLY INDICATED.

18         ACCORDINGLY, IT IS THE JUDGMENT OF THE COURT THAT THE

19 DEFENDANT SHALL BE SENTENCED TO THE CUSTODY OF THE BUREAU OF

20 PRISONS TO BE IMPRISONED ON COUNT 2 OF THE INDICTMENT FOR WHICH

21 HE STANDS CONVICTED FOR 480 MONTHS, AND 60 MONTHS ON COUNT 13,

22 EACH SENTENCE TO BE SERVED CONCURRENTLY BY THE COUNT.

23         UPON RELEASE FROM IMPRISONMENT, THIS DEFENDANT WHO IS

24 NOW APPROXIMATELY 30 YEARS OF YEAR SHALL BE PLACED ON

25 SUPERVISED RELEASE FOR A TERM OF FIVE YEARS.  THIS TERM OF

1  SUPERVISED RELEASE SHALL CONSIST OF FIVE YEARS ON COUNT 2 AND

2  THREE YEARS ON COUNT 13, ALL SUCH TERMS TO RUN CONCURRENTLY,

3  AGAIN BY THE COUNT.

4           WITHIN 72 HOURS OF THIS DEFENDANT'S RELEASE, HE SHALL

5  REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT WHERE

6  HE IS RELEASED.  WHILE ON SUPERVISED RELEASE, HE SHALL NOT

7  COMMIT A VIOLATION OF ANOTHER FEDERAL, STATE OR LOCAL LAW.  HE

8  SHALL COMPLY WITH ALL STANDARD CONDITIONS OF SUPERVISION AS

9  ADOPTED BY THE UNITED STATES SENTENCING COMMISSION NOW OR

10  HEREAFTER.

11           HE SHALL NOT POSSESS A FIREARM OR DANGEROUS WEAPON

12  DURING THE PERIOD OF HIS SUPERVISION.  THE DEFENDANT SHALL PAY

13  A SPECIAL ASSESSMENT ON EACH OF THE COUNTS FOR WHICH HE STANDS

14  CONVICTED FOR A TOTAL OF $100, AND THAT SHALL BE PAID DURING

15  THE FIRST SIX MONTHS OF HIS SUPERVISED RELEASE UNLESS PAID

16  PRIOR TO THE COMMENCEMENT OF SUPERVISION.

17           IN EXAMINING THE DEFENDANT'S RESOURCES, IT APPEARS

18  THAT THE COURT IS UNABLE TO IMPOSE A FINE OR REQUIRE THE

19  DEFENDANT TO PAY THE COST OF INCARCERATION OR SUPERVISION

20  BECAUSE NO ASSETS APPEAR TO BE AVAILABLE FOR SUCH PURPOSE.

21           AGAIN, THE COURT WISHES TO SAY TO THE UNITED STATES

22  GOVERNMENT AND THE UNITED STATES ATTORNEY AND THE DEPARTMENT OF

23  JUSTICE THAT THEY SHOULD PURSUE ANY AND ALL LEADS THEY HAVE

24  WITHIN THEIR DISPOSAL TO TRACK DOWN ANY ASSETS AND TO SEIZE

25  THEM IN ACCORDANCE WITH LAW IF THEY ARE FOUND TO BE WITHIN THE

1 | CUSTODY, DOMINION OR CONTROL OF THIS DEFENDANT OR HIS

2 | CONFEDERATES.

3 | MR. MILLINGTON, THE COURT, I HOPE YOU REALIZE, HAS

4 | TREATED YOU WITH AS MUCH KINDNESS AS THE LAW WILL PERMIT AND

5 | THAT YOU WILL SERIOUSLY CONSIDER WHAT YOU'VE DONE HERE TODAY AS

6 | A FIRST STEP.  WE SAY TO ALCOHOLICS AND DRUGS ADDICTS THAT YOU

7 | GOT TO ADMIT RESPONSIBILITY AS THE FIRST STEP INSTEAD OF DENIAL

8 | ON ORDER TO RECOVER.

9 | I THINK YOU HAVE NOT FORGOTTEN WHAT THE COURT SAID

10 | AFTER THE JURY RETURNED ITS VERDICT AND WHEN THEY WERE EXCUSED

11 | THAT I WOULD CONSIDER ALL OF YOU AS HUMAN BEINGS THEN AND NOW.

12 | I STILL DO, AND YOU KNOW I'VE SPENT A LOT OF TIME TODAY IN

13 | CONSIDERING ALL OF THE ARGUMENTS OF YOUR LAWYER AND EVERY

14 | STATEMENT YOU HAVE MADE.  I JUST HOPE YOU'VE BEEN HONEST.  I

15 | BELIEVE YOU HAVE BEEN WITH POSSIBLY ONE EXCEPTION WITH REGARD

16 | TO YOUR WIFE, AND MAYBE THAT'S PARTIALLY EXCUSABLE -- PARTIALLY

17 | EXCUSABLE -- OR UNDERSTANDABLE, PUT IT THAT WAY.

18 | BUT GOOD LUCK TO YOU.  GOD SPEED.  MAYBE THERE IS A

19 | WAY OUT OF THIS A LITTLE MORE FOR YOU.  GOOD LUCK.

20 | YOU HAVE A RIGHT TO APPEAL WITHIN TEN DAYS IF YOU

21 | WANT TO DO IT.

22 | THANK YOU.  AGAIN A VERY GOOD JOB DONE WELL AND

23 | COMPETENTLY.

24 | (PROCEEDINGS CONCLUDED AT 3:50 P.M.)

1                     CERTIFICATE OF REPORTER

2           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

3 FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4

5

6 WILLIAM D. MCALLISTER        2-21-90
OFFICIAL COURT REPORTER