ajh

O R I G I N A L

_Let this be_
_filed_
_9/12/19_

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     .   DOCKET NO. CR 89-162-01 CRR
                                   .
                                   .   WASHINGTON, D.C.
      VS.                        .   MONDAY, SEPTEMBER 17, 1990
                                   .   10:07 A.M.
RAYFUL EDMOND, III,          .
                                   .   **F I L E D**
       DEFENDANT.            .
. . . . . . . . . . . . . . .         NOV   5 1990

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

TRANSCRIPT OF RESENTENCING
BEFORE THE HONORABLE CHARLES R. RICHEY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:            DANIEL ELLENBOGEN, ESQ.

FOR THE DEFENDANT:             JOHN DOMINGUEZ, ESQ.

COURT REPORTER:               WILLIAM D. MC ALLISTER
                                 OFFICIAL COURT REPORTER
                                 ROOM 4806-B, U.S. COURTHOUSE
                                 333 CONSTITUTION AVENUE, N.W.
                                 WASHINGTON, D.C. 20001-2801
                                 (202) 371-6446

PROCEEDINGS RECORDED BY STENOMASK, TRANSCRIPT PRODUCED
FROM DICTATION

PAGES 1 THROUGH 63

**FILED**

SEP 1 2 2019

Clerk, U.S. District and
Bankruptcy Courts

COURTROOM

_Bureau of Prisons and Probation office notified,_

1      P R O C E E D I N G S

2      [DEFENDANT PRESENT.]

3          **THE CLERK:**  THIS IS THE CASE IN THE MATTER OF

4   CRIMINAL 89-162, UNITED STATES OF AMERICA VERSUS RAYFUL EDMOND,

5   III.  FOR THE GOVERNMENT, JOHN DOMINGUEZ; FOR THE DEFENDANT,

6   DANIEL ELLENBOGEN.

7          **THE COURT:**  YOU MAY PROCEED.

8          **MR. ELLENBOGEN:**  GOOD MORNING, YOUR HONOR.

9          **THE COURT:**  GOOD MORNING, MR. ELLENBOGEN.

10         **MR. ELLENBOGEN:**  DANIEL ELLENBOGEN ON BEHALF OF MR.

11  EDMOND.

12         YOUR HONOR, THIS MATTER IS SCHEDULED FOR SENTENCING

13  TODAY; AND BEFORE WE PROCEED, I WOULD LIKE TO NOTE GENERAL

14  OBJECTIONS TO GOING FORWARD TODAY AT THIS TIME.  MY MAIN REASON

15  FOR NOT GOING FORWARD IS ESSENTIALLY THE SAME AS I INITIALLY

16  PUT IN MY FIRST PLEADING IN TERMS OF OBJECTIONS TO THE PRE-

17  SENTENCE REPORT.

18         THE BASIS FOR THAT OBJECTION, YOUR HONOR, IS

19  ESSENTIALLY THE RECORD IN THIS CASE.  I DID NOT REPRESENT MR.

20  EDMOND AT TRIAL.  THE RECORD IN THIS CASE IS APPROXIMATELY

21  15,000 PAGES OF TRANSCRIPT.  THE COURT'S RECORD IN THIS CASE

22  TAKES UP ALMOST EIGHT FEET OF SHELF SPACE.

23         TO HAVE TO REVIEW ALL OF THAT MATERIAL IN ORDER TO

24  ASSESS WHETHER OR NOT THE INFORMATION CONTAINED IN THE PRE-

25  SENTENCE REPORT IS ACCURATE OR NOT REQUIRES A COMPLETE REVIEW

1  OF ALL OF THOSE MATERIALS.  I HAVE NOT BEEN ABLE TO COMPLETE AN

2  ENTIRE REVIEW OF THAT.  GIVEN THE TIME CONSTRAINTS, WE HAVE

3  ONLY BEEN ABLE TO REVIEW SELECTIVE PORTIONS OF THAT.  TO THE

4  EXTENT THAT WE HAVE REVIEWED THOSE PORTIONS OF THE TRANSCRIPT

5  AND RECORD, WE ARE PREPARED TO PRESENT VARIOUS OBJECTIONS TO

6  IT.

7         ADDITIONALLY, YOUR HONOR, I WOULD LIKE TO NOTE THAT

8  MR. EDMOND --

9         **THE COURT:**  WHAT IS IT IN THE PRE-SENTENCE

10  INVESTIGATION REPORT AS REVISED --

11         **MR. ELLENBOGEN:**  WHICH REVISION, YOUR HONOR?

12         **THE COURT:**  WHAT IS IT IN THAT REPORT TO WHICH YOU

13  AND MR. EDMOND OBJECT?

14         **MR. ELLENBOGEN:**  WE OBJECT TO MANY DIFFERENT PORTIONS

15  OF IT, YOUR HONOR, AND WE ARE PREPARED TO GET TO THOSE, BUT I

16  WOULD LIKE TO STATE ON THE RECORD THAT WE ARE NOT WAIVING OUR

17  RIGHTS UNDER LOCAL RULE 311(c).

18         WE RECEIVED A SECOND REVISED PRE-SENTENCE REPORT,

19  VERSION 2.2, LATE LAST WEEK -- NOT LAST WEEK -- A WEEK AGO

20  FRIDAY I FINALLY RECEIVED THE SECOND REVISED PRE-SENTENCE

21  REPORT.  IT WAS ONLY LAST FRIDAY THAT MR. EDMOND AND I HAD AN

22  OPPORTUNITY TO REVIEW THAT OURSELVES, AND THERE WERE

23  SIGNIFICANT CHANGES IN THAT REPORT FROM THE FIRST VERSION.

24         **THE COURT:**  WHAT WAS NEW IN THAT REPORT TO YOU AND TO

25  HIM?

1    **MR. ELLENBOGEN:**  WHAT WAS NEW IN THAT REPORT WAS

2  PARAGRAPH 23(a).  THERE WERE ALSO REVISIONS AND CHANGES IN

3  OTHER PARAGRAPHS OF THAT PRE-SENTENCE REPORT.

4    **THE COURT:**  WHAT WAS NEW IN IT THAT WAS NEW TO YOU

5  AND HIM THAT IS MATERIAL TO SENTENCING?

6    **MR. ELLENBOGEN:**  I AM NOT IN A POSITION TO DETERMINE

7  WHETHER OR NOT WHAT IS NEW IS MATERIAL TO SENTENCING.  TO THE

8  EXTENT THAT EVERYTHING IN THE PRE-SENTENCE REPORT IS NEW TO ME,

9  EVERYTHING IN THE SECOND REPORT IS NEW.

10    **THE COURT:**  YOU HAVE SEEN EVERY ONE OF THE PRE-

11  SENTENCE INVESTIGATION REPORTS THAT HAVE BEEN PREPARED IN

12  CONNECTION WITH MR. EDMOND'S PARTICIPATION IN THIS CONTINUING

13  CRIMINAL ENTERPRISE, THE CONSPIRACY, AND THE OTHER OFFENSES FOR

14  WHICH HE STANDS CONVICTED.  YOU HAVE SEEN THAT.

15    **MR. ELLENBOGEN:**  I HAVE REVIEWED ALL OF THE PRE-

16  SENTENCE REPORTS INCLUDING THE ONES FROM FEBRUARY.

17    **THE COURT:**  AND YOU HAVE HAD CONFERENCES WITH THE

18  PROBATION OFFICE, AND YOU HAVE HAD CONFERENCES WITH YOUR

19  CLIENT, AND HE HAS BEEN FREELY AVAILABLE TO YOU AND MR.

20  CACHERIS AND OTHERS THROUGHOUT MANY WEEKS, MONTHS.  YOU WERE

21  APPOINTED IN JULY, AS YOU KNOW.

22    **MR. ELLENBOGEN:**  I WOULD NOT AGREE THAT HE HAS BEEN

23  FREELY AVAILABLE.  HE HAS BEEN KEPT IN A LOCKDOWN SITUATION IN

24  PETERSBURG, VIRGINIA.

25    **THE COURT:**  HE HAS BEEN AVAILABLE TO YOU.  NOW, THAT

1    IS NOT FAIR TO SAY, MR. ELLENBOGEN.

2         **MR. ELLENBOGEN:**  HE HAS BEEN AVAILABLE, BUT I DON'T

3    THINK IT IS FAIR TO SAY HE HAS BEEN "FREELY AVAILABLE," YOUR

4    HONOR.

5         IN ADDITION, YOUR HONOR, WE ALSO WOULD OBJECT TO THE

6    COURT'S CONDUCTING THESE PROCEEDINGS IN THE MANNER THAT IT HAS.

7         **THE COURT:**  IN WHAT RESPECT?

8         **MR. ELLENBOGEN:**  UNDER LOCAL RULE 311(e) WHICH

9    ADVISES THAT IN MULTI-DEFENDANT CASES, THE COURT SHOULD

10   CONSIDER HOLDING JOINT EVIDENTIARY HEARINGS TO ASSESS THE

11   MATERIALS IN THE PRE-SENTENCE REPORTS IN ORDER TO MAKE

12   CONSISTENT FINDINGS OF FACT.

13        TO THE EXTENT THAT WE WERE NOT ABLE TO PARTICIPATE,

14   FINDINGS OF FACT ENTERED IN OTHER PEOPLE'S SENTENCINGS ARE

15   ALMOST A FOREGONE CONCLUSION TO MR. EDMOND'S; AND WE DON'T HAVE

16   ANY MEANINGFUL OPPORTUNITY TO CHALLENGE THOSE REPORTS.

17        **THE COURT:**  HOW MANY CONFERENCES DID YOU HAVE WITH

18   THE AUTHOR OF THE PRE-SENTENCE INVESTIGATION REPORT?

19        **MR. ELLENBOGEN:**  I HAVE SPOKEN WITH MR. MECZKOWSKI

20   THREE OR FOUR TIMES.  MR. HUNT AND I SPOKE ONCE OR TWICE.

21        **THE COURT:**  OVER WHAT PERIOD OF TIME, MR. ELLENBOGEN?

22   SINCE YOUR APPOINTMENT BY THE COURT OF APPEALS?

23        **MR. ELLENBOGEN:**  NO.  SINCE THE END OF JULY, YOUR

24   HONOR.  YOU ASKED ME TO TAKE OVER THIS CASE IN THE MIDDLE OF

25   JULY, THE DAY BEFORE I WAS SCHEDULED TO GO ON VACATION.

1    **THE COURT:**  AND YOU AGREED, DID YOU NOT?

2          **MR. ELLENBOGEN:**  I AGREED TO UNDERTAKE THAT, YES.

3          **THE COURT:**  THANK YOU.

4          **MR. ELLENBOGEN:**  AND I HAVE CERTAINLY ENDEAVORED TO

5    THE BEST OF MY ABILITIES TO BE READY TO PROCEED TODAY.  IN

6    TERMS OF OBJECTIONS TO THE PRE-SENTENCE REPORT ITSELF, YOUR

7    HONOR, ALL OF MY COMMENTS TO THE PRE-SENTENCE REPORT, YOUR

8    HONOR, ARE DIRECTED TO THE SECOND REVISED PRE-SENTENCE REPORT,

9    THE ONE THAT INCORPORATES THE PARAGRAPH 23(a).  ALTHOUGH IT

10   SAYS IT WAS REVISED ON AUGUST 27TH, MR. EDMOND AND I --

11         **THE COURT:**  MR. EDMOND AND I WHAT?

12         **MR. ELLENBOGEN:**  EXCUSE ME, YOUR HONOR.  I HAVE THE

13   WRONG ONE IN FRONT OF ME.

14         MY COMMENTS WILL BE DIRECTED TO WHAT I HAVE

15   DESIGNATED REVISED PRE-SENTENCE REPORT 2.2.

16         **THE COURT:**  WHERE DOES IT SAY 2.2?

17         **MR. ELLENBOGEN:**  THAT IS MY OWN DESIGNATION FOR IT,

18   YOUR HONOR, TO TRY TO KEEP TRACK OF THEM.  IT IS THE ONE THAT

19   INDICATES IT WAS REVISED AUGUST 27TH.

20         **THE COURT:**  YES, SIR, I HAVE IT.

21         **MR. ELLENBOGEN:**  OUR COMMENTS ARE DIRECTED IN

22   REFERENCE TO THOSE.

23         AS A GENERAL HOUSEKEEPING MATTER, MY ADDRESS IS

24   INCORRECT.

25         WE WOULD OBJECT THAT THE PENDING CHARGES AGAINST MR.

1  EDMOND ARE INACCURATELY REFLECTED ON PAGE 1(a). I WOULD ASK

2  THAT THEY BE CHANGED TO REFLECT THEIR CURRENT STATUS OR THAT IT

3  BE DELETED IN ITS ENTIRETY INSOFAR AS THEIR STATUS IS SOMEWHAT

4  UNRESOLVED OR TO BE AMENDED.

5       THE COURT:  WHERE?  JUST GO LINE BY LINE, IF YOU

6  WILL.  WHAT IS WRONG --

7       MR. ELLENBOGEN:  ON PAGE 1(a).

8       THE COURT:  -- THAT IS MATERIAL TO SENTENCING?  WHAT

9  IS WRONG THAT IS MATERIAL TO SENTENCING?

10      MR. ELLENBOGEN:  IF I CAN GO THROUGH THE OBJECTIONS,

11  YOUR HONOR.

12      THE COURT:  YOU MAY.  THAT IS WHAT I WANT YOU TO DO.

13      MR. ELLENBOGEN:  I BELIEVE EVERYTHING IN THE PRE-

14  SENTENCE REPORT IS MATERIAL TO SENTENCING INSOFAR AS THIS

15  REPORT IS GOING TO FOLLOW MR. EDMOND THROUGHOUT HIS

16  INSTITUTIONAL CAREER, AND EVERYTHING IN THE REPORT SHOULD BE

17  ACCURATE.

18      THE COURT:  WE ARE HERE FOR SENTENCING, MR.

19  ELLENBOGEN; AND IF IT SAID IT IS RAINING OUTSIDE WHEN IT IS NOT

20  AT THIS MOMENT, IT WOULD NOT BE MATERIAL TO SENTENCING.  IF

21  YOUR ADDRESS IS LISTED INCORRECTLY --

22      MR. ELLENBOGEN:  THAT CAN BE MODIFIED LATER.

23      THE COURT:  THAT HAS NO BEARING ON WHAT SENTENCE THE

24  COURT IS REQUIRED TO IMPOSE, AND YOU KNOW IT AND I KNOW IT, AND

25  SO DOES MR. EDMOND KNOW IT.

1          **MR. ELLENBOGEN:**  YOUR HONOR, TURNING TO PAGE 3 WHERE

2     THE OFFENSE CONDUCT BEGINS AND PARAGRAPH 5.

3          **THE COURT:**  YES.

4          **MR. ELLENBOGEN:**  WHERE THE REPORT SAYS, "THE JURY

5     FOUND THIS ORGANIZATION WAS RESPONSIBLE FOR DISTRIBUTING AT

6     LEAST 150 KILOGRAMS OF A MIXTURE CONTAINING COCAINE AND 1.5

7     KILOGRAMS OF A MIXTURE CONTAINING COCAINE BASE FROM APRIL 1985

8     UNTIL APRIL 15, 1989," WE WOULD OBJECT TO THAT SENTENCE AS A

9     MISCHARACTERIZATION.

10         THE JURY WAS NEVER GIVEN THE SPECIFIC VERDICT FORM

11    FOR MAKING THAT FINDING.  THAT WAS A GENERAL VERDICT; AND TO

12    THE EXTENT THAT THAT SENTENCE IS MISLEADING, WE WOULD ASK THAT

13    IT BE CHANGED.

14         GOING ON TO PARAGRAPH 6, WE WOULD JOIN IN THE

15    OBJECTIONS THAT HAVE BEEN FILED AND RAISED BY THE CO-DEFENDANTS

16    AS THEY RELATE TO THE FACTUAL ALLEGATIONS CONCERNING MR.

17    BENNETT AND MR. VILLABONA-ALVARADO AS NOT BEING MATERIAL TO

18    SENTENCING AND THAT AGAIN, BASED ON THE INCOMPLETE REVIEW,

19    THERE MAY HAVE BEEN TESTIMONY REGARDING THESE MATTERS ADMITTED

20    AT TRIAL --

21         **THE COURT:**  WHERE?  IN THE CENTRAL DISTRICT OF

22    CALIFORNIA?

23         **MR. ELLENBOGEN:**  IN THIS TRIAL.

24         **THE COURT:**  I THOUGHT YOU WERE TALKING ABOUT THE

25    SENTENCE BEGINNING ON LINE 3 AT THE TOP OF PAGE 4 REFERRING TO

1  BENNETT AND VILLABONA-ALVARADO AND THEIR CONVICTION IN THE

2  UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

3  CALIFORNIA OF OPERATING A C.C.E. AND VARIOUS OTHER DRUG RELATED

4  OFFENSES, AND THAT THE CO-DEFENDANT MELVIN BUTLER FROM WHOM THE

5  EVIDENCE SHOWS MR. EDMOND AND HIS ORGANIZATION RELIED UPON AS A

6  BROKER TO GET THE COCAINE FOR THIS C.C.E. AND CONSPIRACY.

7       THE COURT CAN TAKE JUDICIAL NOTICE OF A CONVICTION IN

8  ANOTHER COURT. YOU DON'T DISPUTE THAT.

9       **MR. ELLENBOGEN:** I DON'T DISPUTE THE COURT'S ABILITY

10 TO TAKE JUDICIAL NOTICE OF MATTERS.

11      THE LAST SENTENCE IN THAT PARAGRAPH, THAT MR. EDMOND

12 PAID MR. BUTLER APPROXIMATELY 10,000 FOR EACH KILOGRAM OF

13 COCAINE, WE WOULD OBJECT TO THAT SENTENCE. MR. BUTLER, IN HIS

14 SENTENCING, ADVISED THE COURT THAT HE WAS CHARGING $25,000 AND

15 $15,000 FOR THE KILOGRAMS OF COCAINE, AND THE COURT APPARENTLY

16 HAS ACCEPTED THOSE REPRESENTATIONS. WE WOULD ASK THAT THAT BE

17 CHANGED.

18      **THE COURT:** THAT MATHIS WAS PAID MORE THAN 5- TO

19 $10,000 PER TRIP. IS THAT WHAT YOUR REQUEST IS?

20      **MR. ELLENBOGEN:** NO. OUR REQUEST IS THAT THE --

21      **THE COURT:** YOU DIRECTED MY ATTENTION TO PARAGRAPH 7.

22      **MR. ELLENBOGEN:** NO. WE ARE STILL ON PARAGRAPH 6,

23 YOUR HONOR, THE AMOUNT OF MONEY PAID TO MR. BUTLER FOR EACH

24 KILOGRAM.

25      **THE COURT:** FROM $10,000 TO WHAT?

1          **MR. ELLENBOGEN:**  MR. BUTLER ADVISED THE COURT AT HIS

2    SENTENCING THAT HE WAS CHARGING $25,000 AND $15,000.

3          **THE COURT:**  FOR EACH KILOGRAM.

4          **MR. ELLENBOGEN:**  YES.

5          **THE COURT:**  VERY WELL.  THE COURT HAS HEARD YOU.

6          **MR. ELLENBOGEN:**  TURNING TO PARAGRAPH 7, GOING TO THE

7    LAST SENTENCE, MR. MATHIS TESTIFIED THAT HE MADE APPROXIMATELY

8    EIGHT TO TEN -- HE TESTIFIED AS TO APPROXIMATELY 10 TRIPS.

9          HOWEVER, TO THE EXTENT THAT THAT REFLECTS THAT HE

10   DELIVERED COCAINE ON EACH OF THOSE TRIPS, THAT CONFLICTS WITH

11   HIS TESTIMONY AS IT WAS PRESENTED AT TRIAL IN THAT HE TESTIFIED

12   ONLY TO BRINGING DRUGS MAYBE SEVEN TIMES.

13         **THE COURT:**  IN WHAT QUANTITIES?

14         **MR. ELLENBOGEN:**  FIVE TO TEN KILOGRAMS.  HE WAS

15   UNCERTAIN AS TO THE QUANTITY, WITH 16 BEING THE LAST TRIP.

16   THAT WAS CONFIRMED AND CORROBORATED BY THE REPRESENTATIONS OF

17   MR. BUTLER AT HIS SENTENCING.

18         GOING TO PARAGRAPH 8, WHERE THE REPORT IS MISLEADING,

19   THERE WAS NO TESTIMONY THAT MR. WHITE AND MR. JESSIE WERE SEEN

20   LEAVING THE APARTMENTS OF MR. EDMOND AND MR. LEWIS.  THEY WERE

21   ONLY OBSERVED LEAVING THE APARTMENT BUILDING.  THAT IS

22   MISLEADING.

23         **THE COURT:**  ALL RIGHT, SIR.  YOUR OBJECTION IS NOTED.

24         **MR. ELLENBOGEN:**  TURNING TO PARAGRAPH 11, WHERE IT

25   DISCUSSES MR. BROOKS, MR. BROOKS WAS NEVER TOLD TO TAKE MONEY

1   TO MR. BUTLER TO PURCHASE DRUGS.  MR. BROOKS WAS ONLY TAKING

2   MONEY.  MR. BROOKS WAS NEVER ADVISED THAT THERE WAS $2 MILLION.

3   MR. BROOKS TESTIFIED THAT HE WAS ADVISED THERE WERE ONLY

4   200,000 THAT HAD BEEN LEFT.

5        WE WOULD ALSO NOTE THAT THE EVIDENCE WAS INCONCLUSIVE

6   THAT THE 200 KILOGRAMS THAT WAS TO BE PURCHASED WAS FOR MR.

7   BUTLER.  ACCORDING TO THE POLICE REPORTS FROM THE PROUD BIRD

8   INCIDENT, MR. BUTLER AND MR. BROOKS WERE ACTING AS LOOKOUTS;

9   BUT AS TO WHOSE DRUGS THEY WERE TO BE AND WHERE THEY WERE TO BE

10  HEADED AND WHERE THEY WERE GOING, THAT WAS INCONCLUSIVE THAT

11  THEY WERE HEADED TO WASHINGTON, D.C.

12       **THE COURT:**  WHAT EVIDENCE DO YOU HAVE TO DISPUTE THE

13  SECOND SENTENCE IN THE PARAGRAPH 11?

14       **MR. ELLENBOGEN:**  YOUR HONOR, IT IS NOT THAT THERE IS

15  EVIDENCE WE HAVE TO PRESENT.  WE WOULD RELY ON THE TESTIMONY OF

16  MR. BROOKS THAT HE WAS NEVER TOLD THAT THE MONEY WAS TO GO TO

17  MR. BUTLER TO PURCHASE 200 KILOGRAMS OF COCAINE.

18       **THE COURT:**  ALL RIGHT.

19       **MR. ELLENBOGEN:**  THE SAME BASIS FOR OBJECTING TO THE

20  SECOND SENTENCE.  MR. BROOKS TESTIFIED THAT IT WASN'T UNTIL HE

21  ARRIVED AT LOS ANGELES THAT HE WAS ADVISED THAT IT WAS 200,000.

22       MOST OF THESE OBJECTIONS, YOUR HONOR, CAN BE FOUND IN

23  VOLUME 37 OF THE TRIAL TRANSCRIPT, NOT SO MUCH IN THE

24  INFORMATION THAT WAS PROVIDED BY MR. BROOKS, BUT PRIMARILY IN

25  THE INFORMATION THAT WAS NOT PROVIDED TO MR. BROOKS, WHICH

 1  APPEARS TO BE SUPPLIED BY --

 2          THE COURT:  "WHICH WAS NOT PROVIDED TO MR. BROOKS?"

 3          MR. ELLENBOGEN:  WHICH WAS NOT PROVIDED BY MR.

 4  BROOKS.  I STAND CORRECTED, YOUR HONOR.

 5          THE COURT:  ALL RIGHT.  YOU MEANT "BY."

 6          MR. ELLENBOGEN:  THEY ARE PRIMARILY BASED ON THE

 7  ABSENCE OF TESTIMONY AND THE SUPPOSITIONS OF THE PRE-SENTENCE

 8  REPORT, AND THEY ARE COMING TO FACTUAL CONCLUSIONS THAT ARE NOT

 9  SUPPORTED IN THE RECORD.  SO WE WOULD OBJECT TO IT ON THOSE

10  GROUNDS.

11          GOING TO PARAGRAPH 12, WE DON'T DISPUTE THE FIRST

12  SENTENCE.  THE SECOND SENTENCE, WE WOULD DISPUTE.  MR. BROOKS

13  HAD NO IDEA WHY THEY WERE GOING TO THAT APARTMENT, AND IT IS

14  UNRELIABLE.  IT IS JUST A SUPPOSITION THAT THEY WOULD GO TO GET

15  APPROXIMATELY 200 KILOGRAMS OF COCAINE, AND APPROXIMATELY 50 TO

16  100 KILOGRAMS WAS BELIEVED TO BE CRACK.

17          WE WOULD DISPUTE THAT.  IT IS NOT SUPPORTED BY THE

18  RECORD OR THE TESTIMONY OF MR. BROOKS.  AGAIN, I REFER THE

19  COURT TO VOLUME 37 AND VOLUMES 38 AND 39 OF THE TRANSCRIPT

20  DEALING WITH MR. BROOKS' TESTIMONY.

21          AS TO THE BAGGING CONTEST THAT IS DESCRIBED AT THE

22  END OF THAT PARAGRAPH, THAT IS DISPUTED.  MR. BUTLER DENIED

23  THAT THAT EVER OCCURRED AT HIS SENTENCING IN FEBRUARY.

24          THE COURT:  GO AHEAD.

25          MR. ELLENBOGEN:  PARAGRAPH 13.  WE WOULD JOIN THE

1  OBJECTIONS AND THE ARGUMENTS THAT HAVE BEEN PRESENTED BY THE

2  CO-DEFENDANTS REGARDING THE OTHER PERSONS IN THE ORGANIZATION,

3  IF THERE WAS AN ORGANIZATION, AND THEIR ROLES AND

4  RESPONSIBILITIES --

5        **THE COURT:**  WAIT A MINUTE.  YOU WOULD JOIN IN THE

6  OBJECTIONS OF THE OTHER CO-DEFENDANTS AND WHAT?  WHAT ELSE DID

7  YOU SAY?

8        **MR. ELLENBOGEN:**  AND ARGUMENTS REGARDING THE

9  ORGANIZATIONAL ALLOCATION OF INDIVIDUALS AND THEIR RESPECTIVE

10  ROLES.  AGAIN, WE HAVE NOT HAD SUFFICIENT OPPORTUNITY TO REVIEW

11  THE ENTIRE RECORD TO PRESENT SPECIFIC OBJECTIONS TO THOSE.

12        IF I CAN TAKE A STEP BACK, YOUR HONOR.  I WANT THE

13  COURT TO KNOW THAT THE OBJECTIONS THAT I AM PRESENTING ARE

14  BASED ON THE REVIEW THAT I HAVE HAD OF THE RECORD.  THAT REVIEW

15  HAS BEEN INCOMPLETE AND HAS NOT BEEN A REVIEW OF THE ENTIRE

16  RECORD.

17        TO THE EXTENT THAT THERE IS SOMETHING IN THE RECORD

18  THAT MAY CONFLICT WITH THE OBJECTIONS I AM PRESENTING, I WOULD

19  LIKE THE COURT TO KNOW IT IS OUT OF NO INTENTION TO MISLEAD THE

20  COURT, BUT IT IS SIMPLY BASED ON INADEQUATE OPPORTUNITY TO

21  CONDUCT A COMPLETE AND ENTIRE REVIEW.

22        PARAGRAPH 14.  YOUR HONOR, IN THE FIRST SENTENCE

23  ABOUT MR. BROOKS BEING RECRUITED IN MAY OF 1987 TO STORE LARGE

24  QUANTITIES OF COCAINE AFTER ARRIVING FROM CALIFORNIA --

25        **THE COURT:**  THAT HAPPENS TO BE THE SECOND SENTENCE,

1   BUT GO AHEAD.

2          **MR. ELLENBOGEN:**  I STAND CORRECTED.  IN MY REPORT,

3   YOUR HONOR, IT READS AS ONE SENTENCE.

4          **THE COURT:**  GO AHEAD.

5          **MR. ELLENBOGEN:**  IS IT TWO SENTENCES IN YOUR REPORT?

6          **THE COURT:**  "ONE OF THE MOST IMPORTANT POSITIONS AT

7   THIS LEVEL WAS HELD BY ROYAL S. BROOKS, JR."  THE FIRST

8   SENTENCE.  PERIOD.  "MR. BROOKS, WHO WAS A CHILDHOOD FRIEND OF

9   MR. EDMOND, WAS ORIGINALLY RECRUITED BY MR. EDMOND IN MAY OF

10  1987 TO STORE LARGE QUANTITIES OF COCAINE AFTER IT ARRIVED FROM

11  CALIFORNIA."

12         **MR. ELLENBOGEN:**  THEN THERE IS A TYPOGRAPHICAL ERROR

13  IN MY REPORT.

14         MR. BROOKS WAS NEVER RECRUITED BY MR. EDMOND TO STORE

15  LARGE QUANTITIES OF COCAINE.  MR. BROOKS SOLICITED MR. EDMOND

16  SO THAT MR. BROOKS COULD INITIATE HIS OWN DISTRIBUTION NETWORK

17  IN NORTH CAROLINA.

18         THE TESTIMONY OF MR. BROOKS WAS NOT THAT HE GOT HIS

19  OWN APARTMENT WHEN HE BEGAN STORING MORE THAN 10 KILOGRAMS OF

20  COCAINE.  HE TESTIFIED THAT HE DID THIS ON HIS OWN AFTER ONE

21  INCIDENT.

22         ON AT LEAST ONE OCCASION HE PICKED UP AS MUCH AS 77

23  KILOGRAMS OF COCAINE.  WE WOULD DISPUTE THAT IN THAT IT IS NOT

24  SUPPORTED BY THE RECORD.  HE MAY HAVE TESTIFIED TO IT.  A LOT

25  OF THE OBJECTIONS IN THIS PARAGRAPH, YOUR HONOR, DEAL WITH THE

1  TESTIMONY OF ROYAL BROOKS AND HIS RELATION OF THE AMOUNT OF

2  DRUGS THAT HE WAS INVOLVED IN.

3  WE WOULD SUBMIT, YOUR HONOR, WHEN YOU ARE MAKING

4  FINDINGS OF FACT AS RELEVANT AND AS MATERIAL TO THE SENTENCING,

5  WE RECOGNIZE THAT THE COURT MAY MAKE FINDINGS BASED ON A

6  PREPONDERANCE OF THE EVIDENCE, BUT THE COURT WILL SURELY

7  RECOGNIZE THAT THE PREPONDERANCE OF EVIDENCE HAS GOT TO BE

8  EVIDENCE THAT IS RELIABLE.

9  THERE IS SO MUCH CONFLICT IN MR. BROOKS' TESTIMONY,

10 NOT ONLY INTERNALLY BUT AS IT CONFLICTS WITH OTHER WITNESSES'

11 TESTIMONY, AS TO RENDER A LOT OF HIS TESTIMONY REGARDING

12 QUANTITIES OF DRUGS THAT HE WAS INVOLVED WITH AS BEING

13 UNRELIABLE, UNRELIABLE AT LEAST TO THE EXTENT THAT THIS COURT

14 IS GOING TO IMPOSE THE SEVERE SENTENCE WE ANTICIPATE THE COURT

15 WILL BE IMPOSING.

16 FOR EXAMPLE, MR. BROOKS TESTIFIED THAT HE OBTAINED 56

17 KILOGRAMS OF CRACK COCAINE FROM JAMES MATHIS. JAMES MATHIS

18 NEVER DELIVERED 56 KILOGRAMS OF CRACK COCAINE.

19 MR. BROOKS TESTIFIED THAT HE WAS TAKING 5, 20, 30

20 KILOGRAMS OF COCAINE UP TO BATES STREET AT A TIME WHEN MR.

21 MINOR WAS TESTIFYING THAT BATES STREET WAS DRY, AND THERE WERE

22 NO DRUGS BEING DISTRIBUTED AT BATES STREET.

23 MR. BROOKS WAS TESTIFYING THAT HE HAD PICKED UP DRUGS

24 ON AT LEAST FOUR OR FIVE OCCASIONS FROM MR. MATHIS AND STORING

25 THOSE DRUGS IN HIS APARTMENT. MR. MATHIS, HOWEVER, TESTIFIED

1 THAT HE BEGAN MAKING TRIPS IN MARCH OF 1988, AND THOSE

2 CONTINUED UNTIL HIS ARREST, BUT THAT HE WASN'T TRAVELING EVERY

3 TWO WEEKS, AND THAT IT WAS PHYSICALLY IMPOSSIBLE FOR MR. MATHIS

4 TO HAVE DELIVERED FOUR OR FIVE SHIPMENTS OF DRUGS TO MR. BROOKS

5 DURING THE TIME PERIOD BETWEEN WHEN MR. MATHIS BEGAN AND WHEN

6 MR. BROOKS WAS ARRESTED.

7 SIMILARLY, MR. BROOKS TESTIFIED THAT HE PICKED UP

8 TWO, POSSIBLY THREE, SUITCASES OF COCAINE FROM MR. MINOR AT

9 HAMPTON MALL AND THAT HE HAD PICKED UP DRUGS FROM MR. MINOR AT

10 HAMPTON MALL ON OTHER OCCASIONS.

11 MR. MINOR TESTIFIED THAT THERE WAS ONLY ONE SUITCASE

12 DURING THAT ONE INCIDENT WHEN HE WAS ABOUT TWO HOURS LATE, BUT

13 THAT THERE WERE NO OTHER TRANSACTIONS BETWEEN HE AND MR.

14 BROOKS.

15 MR. BROOKS' TESTIMONY REGARDING THE CONVERSATIONS HE

16 HAD WITH DESIREE MURPHY, FOR EXAMPLE, MR. BROOKS TOLD THIS

17 COURT THAT HE ESPECIALLY WANTED MR. EDMOND TO KNOW THAT HE HAD

18 BEEN ARRESTED.  MS. MURPHY, ON THE OTHER HAND, TESTIFIED THAT

19 HE DID NOT WANT MR. EDMOND ADVISED AS TO HIS ARREST.

20 REGARDING THE EVENTS TAKING PLACE IN THE PROUD BIRD

21 RESTAURANT, MR. BROOKS GAVE A RECITATION OF FACTS THAT WERE NOT

22 SUPPORTED OR CORROBORATED BY THE OFFICERS AND THE OTHER

23 INFORMATION REGARDING THE PROUD BIRD INCIDENT.

24 AT THE SAME TIME, PRIOR TO THAT, MR. BROOKS TOLD THIS

25 COURT UNDER OATH THAT HE PICKED UP 20 TO 30 KILOGRAMS OF DRUGS

1  OUT OF I BELIEVE THE FOURTH FLOOR APARTMENT, MR. LEWIS', AT THE

2  BUCHANAN HOUSE APARTMENT.  HOWEVER, HE TOLD THE F.B.I. THAT IT

3  WAS ONLY 10 KILOGRAMS.  THAT IS ANOTHER CONFLICT.

4        MR. BROOKS ADMITTED LYING TO THE GRAND JURY.  I KNOW

5  THIS COURT'S STRICTURES ON THE USE OF THE "L" WORD, BUT IN THIS

6  CASE I AM QUOTING THE F.B.I.'S REPORT OF ITS CONVERSATIONS WITH

7  MR. BROOKS FROM AUGUST 31, 1989.  I BELIEVE IT IS FOUND ON PAGE

8  2 WHERE HE ADMITS LYING TO THE GRAND JURY.

9        HE HAS ALSO BEEN CONVICTED OF OBSTRUCTING THE

10  INVESTIGATIONS OF THIS GRAND JURY, A FURTHER REASON TO DOUBT

11  HIS RELIABILITY AS TO THE QUANTITY OF DRUGS THAT IS INVOLVED IN

12  THIS CASE.

13        TO THE EXTENT THAT THE COURT IS RELYING ON THAT, THE

14  TESTIMONY OF MR. BROOKS IS UNRELIABLE AT LEAST TO THE EXTENT

15  THAT IT IS GOING TO BE USED AS A BASIS FOR IMPOSING THE SEVERE

16  SENTENCE THAT THE COURT IS IMPOSING.

17        IN THE LAST SENTENCE, MR. BROOKS TESTIFIED THAT HE

18  BELIEVED 2.3 TO $3 MILLION WERE KEPT IN HIS APARTMENT.  WELL, I

19  WENT THROUGH MR. BROOKS' TESTIMONY, YOUR HONOR.  HE NEVER

20  TESTIFIED AS TO THOSE AMOUNTS OF MONEY.  WHERE THOSE AMOUNTS

21  COME FROM, I DON'T KNOW.

22        SECONDLY, MR. BROOKS ALSO GAVE CONFLICTING REPORTS OF

23  WHAT THE SUBSTANCE, IF ANYTHING, WAS IN HIS APARTMENT.  HE

24  TELLS THE POLICE IT WAS CRACK, BUT HE HAS TOLD THIS COURT AND

25  HE TESTIFIED THAT IT WAS COCAINE.

1      PARAGRAPH 15, WHERE THE REPORT REFLECTS THAT MR.

2   BROOKS WAS TOLD TO LEAVE DRUGS IN THE TRUNK OF HIS CAR AND

3   DRIVE TO A SPECIFIC LOCATION AND TOLD TO LEAVE THE CAR UNLOCKED

4   AND LEAVE THE SCENE, WE WOULD SUBMIT THAT MR. BROOKS NEVER

5   TESTIFIED THAT HE WAS EVER INSTRUCTED TO DO THAT.

6      MR. BROOKS FURTHER TESTIFIED THAT HE, AS CONTAINED IN

7   PARAGRAPH 15, REPORTS THAT HE PICKED UP DRUGS ON AT LEAST FIVE

8   OCCASIONS FROM MR. MILLINGTON AND RACHELLE EDMOND.  MR. BROOKS

9   TESTIFIED THAT IT WAS ONLY ONCE THAT HE PICKED UP MONEY, AND HE

10   MAY HAVE BEEN AT THE HOUSE MORE THAN ONCE, BUT HE ONLY

11   TESTIFIED ABOUT PICKING UP MONEY ON ONE OCCASION.

12      TURNING TO PARAGRAPH 16, WE WOULD DISPUTE THE

13   CONCLUSION THAT THE LOCATION AT 407 M STREET WAS THE PRINCIPAL

14   PLACE FOR THE STORAGE OF DRUGS AND THAT IT CONFLICTS WITH WHAT

15   MR. BROOKS HAS BEEN TESTIFYING AS TO HIS APARTMENT BEING THE

16   PRINCIPAL PLACE FOR THE STORAGE OF DRUGS.

17      THE USE OF THE PHRASE "PRINCIPAL PLACE" IS AMBIGUOUS,

18   AND THAT IS AN IMPROPER CONCLUSION, AND WE WOULD DISPUTE THAT.

19      TO THE EXTENT THAT THERE ARE EXTENSIVE ALLEGATIONS

20   REGARDING SALES AND DISTRIBUTION OUT OF 407 M STREET, OUR

21   REVIEW OF THE RECORD IS NOT SUFFICIENTLY COMPLETE IN ORDER TO

22   ADDRESS SPECIFICS ON THAT.

23      GOING TO PARAGRAPHS 18 THROUGH 23, WE WOULD ADOPT

24   THOSE OBJECTIONS AND ARGUMENTS ON BEHALF OF THE CO-DEFENDANTS

25   TO THE EXTENT THAT THEY MAY BE MATERIAL TO THIS.  AGAIN, OUR

1  REVIEW OF THE RECORD HAS NOT BEEN ADEQUATE TO ADDRESS SPECIFIC

2  POINTS GIVEN THE TIME CONSTRAINTS AND THE EXTENT AND THE SIZE

3  OF THE RECORD.

4       TO THE EXTENT THAT WE BELIEVE THESE PARAGRAPHS ARE

5  BASED ON INFORMATION THAT WAS SUPPLIED TO THE PROBATION OFFICE

6  BASED ON THE TRIALS THAT TOOK PLACE FOR THE SECOND GROUP OF

7  DEFENDANTS AS WELL AS THE SECOND TRIAL FOR COLUMBUS DANIELS, WE

8  WOULD OBJECT TO ANY INFORMATION FROM THOSE PROCEEDINGS BEING

9  USED TO RESOLVE FACTUAL DISPUTES BECAUSE WE WERE NOT PRESENT

10  AND HAVE NO OPPORTUNITY TO CHALLENGE THAT EVIDENCE AS IT WAS

11  PRESENTED IN COURT.

12       **THE COURT:**  IT HAS BEEN BEFORE YOU FOR MONTHS, SINCE

13  FEBRUARY OF 1990, THOUGH, HAS IT NOT?

14       **MR. ELLENBOGEN:**  WE HAVE NOT HAD AN OPPORTUNITY TO

15  REVIEW THOSE TRANSCRIPTS, AND WE WERE NOT PRESENT TO CHALLENGE

16  THE TESTIMONY, YOUR HONOR.

17       **THE COURT:**  WHAT WERE YOU DOING THROUGH THE TRIAL

18  ONE, TRIAL TWO, AND THE MURDER TRIAL OF COLUMBUS DANIELS, WHEN

19  YOU WERE SITTING IN THE COURTROOM?

20       **MR. ELLENBOGEN:**  I WAS OBSERVING SOME OF THE

21  PROCEEDINGS, YOUR HONOR, A VERY SMALL PORTION OF THOSE

22  PROCEEDINGS, YOUR HONOR.

23       **THE COURT:**  YOU WERE HERE REGULARLY.

24       **MR. ELLENBOGEN:**  FOR A LITTLE BIT ON A DAY.

25       **THE COURT:**  REGULARLY DURING MOST OF THE PROCEEDINGS,

1  WERE YOU NOT?

2  **MR. ELLENBOGEN:** NOT FOR ANY OF THE PROCEEDINGS IN

3  TRIAL TWO, YOUR HONOR.

4  **THE COURT:** MY STATEMENT IS YOU WERE HERE REGULARLY

5  BECAUSE THE COURT OBSERVED YOU THROUGHOUT ALL THREE TRIALS.

6  **MR. ELLENBOGEN:** YOUR HONOR, I WAS NEVER HERE DURING

7  ANY OF THE PROCEEDINGS IN TRIAL TWO IN WHICH TESTIMONY WAS

8  BEING OFFERED. I WOULD STOP IN WHEN I WAS IN THE COURTHOUSE TO

9  OBSERVE SOME OF THE PROCEEDINGS DURING THE FIRST TRIAL.

10  I WASN'T PAYING ATTENTION. I WASN'T REPRESENTING MR.

11  EDMOND. I WAS WATCHING TO OBSERVE HOW IT WAS BEING CONDUCTED

12  AND THE MANNER IN WHICH IT WAS PROCEEDING BECAUSE I HAD NOT HAD

13  AN OPPORTUNITY TO OBSERVE THE COURT HANDLING SUCH A GARGANTUAN

14  TASK IN THE MASTERFUL WAY THAT IT DID.

15  **THE COURT:** YOU ALSO PARTICIPATED IN SOME OF THE

16  PROCEEDINGS IN TRIAL ONE, DID YOU NOT, AS A LAWYER?

17  **MR. ELLENBOGEN:** ONLY TO THE EXTENT THAT IT INVOLVED

18  TRYING TO PROTECT THE INTERESTS OF INNOCENT THIRD PARTIES WHOSE

19  NAMES WERE GOING TO BE DISCLOSED ON TAPE RECORDED PROCEEDINGS,

20  AND NONE OF THE INFORMATION ON THOSE TAPE RECORDED

21  CONVERSATIONS IS MATERIAL TO THESE PROCEEDINGS.

22  **THE COURT:** YOU ALSO PARTICIPATED IN OBSERVING THE

23  PRETRIAL PROCEEDINGS BEFORE THE MAGISTRATE AND THIS COURT, DID

24  YOU NOT?

25  **MR. ELLENBOGEN:** I WAS NOT PRESENT FOR ANY OF THE

1 PRETRIAL PROCEEDINGS BEFORE THE MAGISTRATE OR BEFORE THIS

2 COURT.

3     **THE COURT:** PROCEED.

4     **MR. ELLENBOGEN:** SECONDLY, YOUR HONOR, SIMPLY BECAUSE

5 I CHOOSE TO EXERCISE MY RIGHT AS A CITIZEN TO OBSERVE PUBLIC

6 PROCEEDINGS, I DON'T BELIEVE THAT THE COURT CAN HOLD ME TO THE

7 STANDARDS OF AN ATTORNEY FOR THINGS THAT I MIGHT HAVE OBSERVED

8 WHICH I HAD NO REASON TO PAY ATTENTION TO OR BOTHER TO

9 REMEMBER.

10     TO THE EXTENT THAT THERE WERE RATHER UNUSUAL

11 PROCEEDINGS GOING ON, WITH THE COURT WANTING TO CONDUCT A

12 SECRET TRIAL, WITH AN ANONYMOUS JURY, WITH BLINDERS UP, I FOUND

13 THAT TO BE OF INTEREST BOTH AS AN ATTORNEY AND AS A CITIZEN.

14     **THE COURT:** ARE YOU SURE YOU WANT TO SAY THAT, "THE

15 COURT WANTING TO CONDUCT A SECRET TRIAL?"

16     **MR. ELLENBOGEN:** THE EFFORTS OF THE GOVERNMENT TO

17 CONDUCT A TRIAL IN WHICH --

18     **THE COURT:** YOU SAID, "THE COURT WANTING TO CONDUCT A

19 SECRET TRIAL." DO YOU WANT TO LET THAT STAND?

20     **MR. ELLENBOGEN:** STRIKE THE WORD "WANTING" --

21 ENTERTAINING THE GOVERNMENT'S EFFORTS TO CLOSE OFF THE TRIAL;

22 AND AT ONE POINT, YOUR HONOR, THE TRIAL WAS CLOSED.

23     **THE COURT:** NO, THAT IS INCORRECT. THERE WAS NOT ONE

24 SECOND THAT IT WAS EVER CLOSED TO ANY MEMBER OF THE PUBLIC.

25 THAT IS INCORRECT, MR. ELLENBOGEN. YOU KNOW IT. YOUR CLIENT

1  KNOWS IT.

2  **MR. ELLENBOGEN:** YOUR HONOR, I AM NOT HERE TO GET

3  INTO A FIGHT AS TO EVERYTHING THAT HAPPENED OVER THE COURSE OF

4  THE THREE AND A HALF MONTH TRIAL.

5  **THE COURT:** I KNOW YOU ARE NOT, AND I APPRECIATE

6  THAT, BUT I AM NOT GOING TO LET YOU MAKE A STATEMENT THAT IS

7  INCORRECT. THAT IS ALL.

8  **MR. ELLENBOGEN:** WE WILL LET THE RECORD SPEAK FOR

9  ITSELF.

10  **THE COURT:** PROCEED.

11  **MR. ELLENBOGEN:** TURNING TO PARAGRAPH 23(a), THAT IS

12  THE PARAGRAPH THAT DEALS WITH THE QUANTITY OF DRUGS THAT WERE

13  DISTRIBUTED.

14  **THE COURT:** YES, SIR.

15  **MR. ELLENBOGEN:** AGAIN, WE WOULD RAISE THE SAME

16  OBJECTIONS WE RAISED TO THE QUANTITY OF DRUGS WHICH ARE BASED

17  SOLELY ON THE TESTIMONY OF ROYAL BROOKS, AS NOT PROVIDING A

18  RELIABLE BASIS FOR THE COURT TO ADOPT THOSE CONCLUSIONS.

19  SECONDLY, WE WOULD OBJECT TO THE DOUBLE COUNTING OF

20  SOME OF THE DRUGS INSOFAR AS IT APPEARS THAT THE 50 THAT WERE

21  BROUGHT BY CHILDRESS TO THE DAYS INN IS ALSO WHERE THE 14

22  KILOGRAMS CAME FROM. TO THE EXTENT THAT IS DOUBLE COUNTED, WE

23  WOULD OBJECT TO THE NUMBER INCLUDING THE 14.

24  **THE COURT:** LEAVING OUT THE ALLEGED DOUBLE COUNTING,

25  HOW MUCH WAS IT?

1      **MR. ELLENBOGEN:** THAT TAKES IT DOWN TO 157, YOUR

2  HONOR.

3          **THE COURT:** 157 KILOGRAMS?

4      **MR. ELLENBOGEN:** EXCLUDING THE DOUBLE COUNTING.

5  HOWEVER, YOUR HONOR, WE FEEL THAT THE INFORMATION REGARDING THE

6  16 KILOGRAMS, THAT CAN'T BE DISPUTED. THAT WAS SEIZED. THE

7  ONE KILOGRAM FROM RONALD MORGAN WAS SEIZED. AS A SIDE NOTE,

8  YOUR HONOR, WE WOULD OBJECT TO THE CHARACTERIZATION OF RONALD

9  MORGAN AS A CO-CONSPIRATOR.

10          **THE COURT:** WELL, HE WAS, WASN'T HE?

11      **MR. ELLENBOGEN:** THE COURT GRANTED HIS MOTION FOR A

12  JUDGMENT OF ACQUITTAL. HE WAS NOT FOUND TO BE A CO-

13  CONSPIRATOR.

14          **THE COURT:** THAT DOESN'T HAVE ANYTHING TO DO WITH

15  SENTENCING, MR. ELLENBOGEN, IF THE COURT CHOOSES TO RELY ON THE

16  EVIDENCE. GO AHEAD.

17      **MR. ELLENBOGEN:** AS TO THE 90 KILOGRAMS OF COCAINE BY

18  COLUMBUS DANIELS, THERE IS NOTHING IN THE RECORD CORROBORATING

19  THAT THAT, IN FACT, WAS DRUGS. THAT IS BASED SOLELY ON THE

20  TESTIMONY OF ROYAL BROOKS.

21          WE WOULD RELY ON THE SAME OBJECTIONS WE PREVIOUSLY

22  NOTED TO MR. BROOKS' RELIABILITY, THE LACK OF CORROBORATION,

23  AND THE EASE WITH WHICH IT IS THAT SOMEONE CAN COME IN AND SAY

24  THAT THERE WAS THIS QUANTITY OF DRUGS THAT WERE INVOLVED. WE

25  WOULD ADOPT THOSE OBJECTIONS.

1    WE WOULD ALSO MOVE TO ADOPT THE OBJECTIONS PRESENTED

2  ON BEHALF OF THE CO-DEFENDANTS, AS WELL AS REITERATE OUR

3  OBJECTION TO THE 311(e) FAILURE TO HOLD A JOINT HEARING SO THAT

4  THERE COULD BE CONSISTENT RESOLUTIONS OF FACTUAL DISPUTES.

5    IN PARAGRAPH 24 --

6    **THE COURT:**  YOU DON'T BELIEVE IN INDIVIDUALIZED

7  SENTENCING, I TAKE IT.

8    **MR. ELLENBOGEN:**  I BELIEVE IN INDIVIDUALIZED

9  SENTENCING, YOUR HONOR, BUT I THINK IN A SITUATION LIKE THIS,

10  WHERE YOU HAVE GOT A MULTIPLE-DEFENDANT CASE AND THE RULES

11  ALLOW FOR JOINT HEARINGS ON THE PRE-SENTENCE REPORT SO THAT THE

12  COURT CAN MAKE CONSISTENT FACTUAL FINDINGS, THAT DOES NOT, WE

13  WOULD SUBMIT, INTERFERE WITH THE RIGHT TO INDIVIDUALIZED

14  SENTENCING.

15    IF I COULD NOTE FOR THE COURT, THE SUPREME COURT HAS

16  ONLY HELD THAT YOU ARE ENTITLED TO INDIVIDUALIZED SENTENCING IN

17  CAPITAL CASES.

18    **THE COURT:**  THUS FAR, CORRECT?

19    **MR. ELLENBOGEN:**  HOPEFULLY, THAT WILL CHANGE IN THE

20  FUTURE.

21    AS TO PARAGRAPH 24, WE WOULD JOIN IN THE OTHER

22  OBJECTIONS OF CO-DEFENDANTS AS PRESENTED, AND WE WOULD OBJECT

23  TO THE INCONSISTENT CHARACTERIZATION OF MR. BROOKS AND MS.

24  ZANVILLE INSOFAR, AS BASED ON THEIR TESTIMONY, THIS

25  ORGANIZATION COULD NOT FUNCTION WITHOUT THEM AND, IF ANYTHING,

1  THEY ARE JUST AS CULPABLE AND RESPONSIBLE FOR THIS AS THE

2  DEFENDANTS WHO WERE ON TRIAL AND WERE CONVICTED, AND THAT WE

3  SUBMIT THAT THE PROBATION OFFICE HAS CHARACTERIZED THEIR ROLES

4  IN A WAY TO JUSTIFY AND SUPPORT AND TO BOLSTER THE GOVERNMENT'S

5  DEPARTURE MOTIONS AND TO MINIMIZE THEIR ROLE IN THE OFFENSE.

6          HOWEVER, THEIR ROLE WAS SIGNIFICANT, YOUR HONOR, AND

7  THIS ORGANIZATION PROBABLY COULD NOT HAVE FUNCTIONED WITHOUT

8  THEM.

9          TO PARAGRAPH 25, YOUR HONOR, WE WOULD OBJECT TO THE

10  ENTIRE PARAGRAPH SINCE THESE ARE DE NOVO PROCEEDINGS.  MR.

11  EDMOND WAS NEVER INTERVIEWED REGARDING HIS VERSION; AND IN FACT

12  ON MY RECOMMENDATION, I ADVISED HIM NOT TO CONSULT WITH THE

13  PROBATION OFFICE REGARDING HIS VERSION, CONSIDERING THAT HE HAS

14  GOT FIFTH AMENDMENT RIGHTS THAT WOULD BE IMPLICATED FOR

15  UPCOMING TRIALS.

16          **THE COURT:**  I TAKE IT PARAGRAPH 25 ON PAGE 11,

17  STATING THAT MR. EDMOND DENIES ANY INVOLVEMENT IN THE

18  DISTRIBUTION OF ILLICIT DRUGS OR ASSETS, AND SAYS THAT HE WAS

19  RAILROADED, THAT HE FEELS THE GOVERNMENT DOES NOT HAVE ANY

20  EVIDENCE CONNECTING HIM WITH THE DISTRIBUTION OF DRUGS, NOR DO

21  THEY HAVE ANY EVIDENCE INDICATING THAT HE HAD ANY MONEY WHICH

22  WAS PROCEEDS FROM THE SALE OF ILLICIT DRUGS, AND ASSERTED THAT

23  HIS INCOME FROM GAMBLING IN WHICH HE EARNED AS MUCH AS $30,000

24  PER DAY, I GATHER THAT CAME FROM HIS COUNSEL, JUST LIKE

25  YOURSELF, WHO ADVISED HIM NOT TO SPEAK.

1          NOW, WHEN THE DAY COMES THAT THE MANDATE OF CONGRESS

2    CAN'T BE OBEYED, NAMELY, THE PROBATION OFFICE CANNOT ACCEPT THE

3    WORD OR ALLOCUTION OF COUNSEL IN THE PREPARATION OF PRE-

4    SENTENCE INVESTIGATION REPORT CONCERNING A FLAT-OUT DENIAL BY

5    THE DEFENDANT OF WHAT HE OR SHE DID OR DID NOT DO, THEN WE ARE

6    IN FOR BAD TIMES.

7          I THINK ALL OF US IN THE SYSTEM HAVE A RIGHT TO RELY

8    ON THE INTEGRITY AND TRUTHFULNESS OF COUNSEL WHO PARTICIPATE ON

9    BEHALF OF A PARTY, WHETHER IT BE DEFENDANT OR THE GOVERNMENT.

10         THIS DOESN'T HARM YOUR CLIENT, DOES IT?

11         **MR. ELLENBOGEN:** TO THE EXTENT THAT --

12         **THE COURT:** DOES IT HARM YOUR CLIENT, OR DOES HE WANT

13   TO ADMIT THAT THIS STATEMENT IS INCORRECT, THAT HE DIDN'T HAVE

14   AN INCOME OF $30,000 PER DAY FROM GAMBLING?

15         **MR. ELLENBOGEN:** TO THE EXTENT THAT WITNESSES WERE

16   PRESENTED THAT HE HAS WON UP TO, IF NOT MORE THAN THAT, FROM

17   GAMBLING ON PRIOR OCCASIONS, THAT IS PART OF THE RECORD AND THE

18   COURT HEARD THAT TESTIMONY.

19         HOWEVER, TO THE EXTENT THAT MR. EDMOND DID NOT

20   TESTIFY, AND TO THE EXTENT THAT HE HAS UPCOMING CHARGES WHICH

21   MAY OR MAY NOT GO TO TRIAL --

22         **THE COURT:** THIS IS ALL A DENIAL. I DON'T UNDERSTAND

23   YOUR POINT. I JUST REALLY DON'T, MR. ELLENBOGEN.

24         **MR. ELLENBOGEN:** WE WOULD LIKE IT TO REFLECT THAT MR.

25   EDMOND DECLINED TO DISCUSS THE FACTS BASED ON HIS FIFTH

1 AMENDMENT RIGHTS AND ON THE ADVICE OF COUNSEL.

2 PARAGRAPH 26, DEALING WITH THE OBSTRUCTION OF

3 JUSTICE, YOUR HONOR, THE GOVERNMENT HAS NOT PRESENTED ANYTHING

4 NEW OR DIFFERENT THAN WHAT WAS PREVIOUSLY PRESENTED WHEN THIS

5 COURT REJECTED THESE ARGUMENTS AS INSUFFICIENT TO SUPPORT AN

6 ADJUSTMENT FOR OBSTRUCTION OF JUSTICE.

7 ABSENT ANY NEW EVIDENCE OR ANY ADDITIONAL

8 ALLEGATIONS, WE ARE NOT IN A POSITION TO -- WE WILL TAKE A

9 POSITION TO DISPUTE NEW AND ADDITIONAL ALLEGATIONS; BUT ABSENT

10 THOSE ALLEGATIONS, WE WOULD ASK THE COURT TO ADOPT THE SAME

11 RULING IT DID AT THE FIRST SENTENCING, DENYING AN ADJUSTMENT

12 FOR THE OBSTRUCTION OF JUSTICE.

13 TURNING TO THE GUIDELINES, YOUR HONOR, TO THE EXTENT

14 WE HAVE MADE REPRESENTATIONS AS PERTAINING TO THE GUIDELINES

15 REGARDING THE QUANTITY OF DRUGS AS CONTAINED IN THE PRE-

16 SENTENCE REPORT, WE DON'T OBJECT TO THE GROUPING AS CONTAINED

17 IN PARAGRAPH 28.

18 HOWEVER, YOUR HONOR, WE WOULD DISPUTE THAT COUNT ONE

19 CARRIES A MANDATORY LIFE SENTENCE INSOFAR AS -- ALTHOUGH THAT

20 IS WHAT THE STATUTE SAYS -- THE JURY NEVER MADE A SPECIFIC

21 DETERMINATION AS TO THE QUANTITIES OF DRUGS SPECIFIED IN THE

22 STATUTE TO TRIGGER THE IMPOSITION OF A LIFE SENTENCE.

23 THE COURT DID HAVE SPECIFIC JURY FINDINGS AS TO

24 PREDICATE OFFENSES, AS TO THE ROLES, AND AS TO THE NUMBER OF

25 PEOPLE SUPERVISED, BUT THE ABSENCE ON THAT OTHER CRUCIAL

1   ELEMENT WE WOULD SUBMIT RAISES SOME DOUBT AS TO WHETHER OR NOT

2   THAT IS WHAT THE JURY FOUND, AND ABSENT SUCH A FINDING BY THE

3   JURY, WE SUBMIT THAT THE MANDATORY LIFE SENTENCE CANNOT BE

4   IMPOSED, AND WE WOULD ASK THE COURT TO IMPOSE THE LESSER

5   SENTENCE FOR THE OFFENSE UNDER SUBSECTION (a) OF THE STATUTE.

6          NOW, ON PARAGRAPH 29, YOUR HONOR, WE DON'T DISPUTE OR

7   TAKE ISSUE WITH THE PROBATION OFFICE FINDING THE BASE OFFENSE

8   LEVEL IN THIS CASE TO BE 36.  WHAT WE DO OBJECT TO IS THE WAY

9   IN WHICH THE PROBATION OFFICE GETS TO LEVEL 36.

10         NOW, WE FILED PLEADINGS ON THAT, AND ESSENTIALLY,

11  YOUR HONOR, THE ARGUMENT IS THIS.  IN THIS CASE, THE GOVERNMENT

12  IS TREATING THE DISTRIBUTION OF DRUGS AS THE OBJECT OF THE

13  CONSPIRACY AND USING THAT AS THE BASIS FOR ARRIVING AT THE BASE

14  LEVEL OFFENSE OF 36.

15         IT IS OUR POSITION THAT IN THIS CASE, THAT THAT IS AN

16  INCORRECT APPLICATION.  OUR POSITION IS THAT THE TRUE OBJECT OF

17  THE CONSPIRACY AS PRESENTED DURING TRIAL, FROM THE PRELIMINARY

18  HEARING THROUGH THE GOVERNMENT'S CLOSING ARGUMENT, IS THAT THIS

19  WAS AN ORGANIZATION THAT WAS ATTEMPTING TO DEVELOP THE LARGEST

20  DRUG DISTRIBUTING NETWORK IN THE CITY.

21         NOW, WHETHER THAT CHARACTERIZATION IS ACCURATE OR

22  NOT, THE POINT IS THAT THE GOVERNMENT HAS PROSECUTED AND

23  PRESENTED THIS CASE ENTIRELY ON A THEORY, NOT THAT THIS WAS A

24  ONE-TIME OPERATION WHERE THEY WERE SEEKING TO IMPORT A LARGE

25  QUANTITY OF DRUGS, BUT THAT THIS WAS ACTUALLY AN ENTERPRISE.

1        I BELIEVE THE CHARACTERIZATION FROM THE OPENING

2 STATEMENT WAS THIS WAS A BUSINESS, BUT IT WAS AN ILLEGITIMATE

3 BUSINESS.

4        THE COURT IS WELL AWARE THAT THE INDICTMENT DOES NOT

5 GOVERN THE WAY IN WHICH THE GUIDELINES ARE APPLIED, BUT IT IS

6 THE FACTS; AND THE FACTS, AS PRESENTED AND AS ARGUED FOR THE

7 GOVERNMENT'S THEORY, IS THAT THE CONTINUING CRIMINAL ENTERPRISE

8 WAS THE OBJECTIVE OF THIS ORGANIZATION.

9        THE CONTINUING CRIMINAL ENTERPRISE GUIDELINE FOR THIS

10 OFFENSE WHICH WAS IN EFFECT AT THE TIME OF THIS OFFENSE

11 PROVIDES A SINGLE BASE LEVEL OFFENSE FOR A CONTINUING CRIMINAL

12 ENTERPRISE OF 36.

13        THAT BASE OFFENSE LEVEL IS ONE THAT IS NOT GEARED TO

14 THE QUANTITY OF DRUGS AS ARTICULATED IN THE DRUG QUANTITY TABLE

15 OF 2D1.1. IN FACT, THE CONTINUING CRIMINAL ENTERPRISE

16 GUIDELINE HAS NEVER BEEN GEARED TO THAT TABLE EXCEPT AS IT IS

17 WRITTEN TODAY, AN AMENDMENT TO THE GUIDELINE THAT WENT INTO

18 EFFECT HALFWAY THROUGH THIS TRIAL, WHICH NOW GEARS IT TO THE

19 DRUG QUANTITY TABLE.

20        SO TO THE EXTENT THAT THE PROBATION OFFICE IS USING A

21 GUIDELINE FOR AN OFFENSE FOR WHICH MR. EDMOND WAS NEVER CHARGED

22 OR CONVICTED, NAMELY, THE DISTRIBUTION OR POSSESSION WITH

23 INTENT TO DISTRIBUTE DRUGS -- HE WAS NEVER CHARGED WITH THOSE

24 OFFENSES -- THE CONSPIRACY GUIDELINE WHICH SAYS YOU GO TO THE

25 GUIDELINE FOR THE OFFENSE WHICH WAS THE OBJECTIVE OF THE

1   CONSPIRACY, WHETHER IT WAS COMPLETED, THEN THE TRUE OBJECT OF

2   THE CONSPIRACY WAS THE CONTINUING CRIMINAL ENTERPRISE AND

3   NOT -- THE DISTRIBUTION OF DRUGS MAY HAVE BEEN THE MANNER IN

4   WHICH THIS ENTERPRISE WAS CONDUCTED, BUT THE OBJECT OF THE

5   CONSPIRACY WAS THE ENTERPRISE.

6        THEREFORE, THE 36 SHOULD BE THE BASE LEVEL OFFENSE

7   FOR BOTH THE C.C.E. AND FOR THE CONSPIRACY ON THE C.C.E.,

8   BECAUSE THERE HAS NEVER BEEN A SPECIFIC FINDING BY THE JURY

9   THAT THERE WAS 150 KILOGRAMS OF COCAINE AND BECAUSE MR. EDMOND

10  WAS CHARGED IN THE CONJUNCTIVE IN THIS CASE, 1 1/2 KILOGRAMS OF

11  CRACK COCAINE.

12       AT THE SAME TIME, THAT SHOULD BE THE OFFENSE FOR THE

13  CONSPIRACY SINCE THE C.C.E. IS THE TRUE OBJECT OF THE

14  CONSPIRACY.

15       SECONDLY, THE CONTINUING CRIMINAL ENTERPRISE

16  GUIDELINES DO NOT PROVIDE FOR ENHANCEMENTS FOR ROLE IN THE

17  OFFENSE -- THOSE HAVE ALWAYS BEEN EXCLUDED FROM THAT -- NOR

18  DOES THE C.C.E. PROVIDE FOR AN ENHANCEMENT FOR THE ROLE OF

19  WEAPONS.

20       NOW, YOUR HONOR, THIS MIGHT HAVE BEEN AN OVERSIGHT IN

21  THE SENTENCING COMMISSION, AND IT MIGHT HAVE BEEN AN OVERSIGHT

22  IN THE WAY THE GUIDELINES WERE WRITTEN, BUT THOSE WERE THE

23  GUIDELINES THAT WERE IN EFFECT AT THE TIME THIS CASE WAS

24  INDICTED AND AT THE TIME THIS CASE WAS TRIED.

25       THOSE DEFICIENCIES MAY HAVE BEEN CLEARED UP AND MAY

1  HAVE BEEN STRAIGHTENED UP, AND THE INCONSISTENCIES MAY HAVE

2  BEEN RESOLVED BY THE SENTENCING COMMISSION IN THE WAY IN WHICH

3  THE GUIDELINES ARE CURRENTLY WRITTEN; BUT WHEN LOOKING AT THE

4  GUIDELINES AS THEY WERE WRITTEN AT THAT TIME --

5          **THE COURT:**  1988.

6          **MR. ELLENBOGEN:**  -- AND AS THEY WERE IN EFFECT AT

7  THAT TIME, WE WOULD SUBMIT THAT OUR POSITION IS THE LOGICAL

8  APPLICATION IN RELIANCE ON THE GUIDELINES.

9          ADDITIONALLY, YOUR HONOR, THE COURT IS INVESTED WITH

10 DISCRETION, AND THE COURT DOES HAVE WITHIN ITS POWER TO MAKE

11 VARIOUS RULINGS IN THE RELIANCE ON THE GUIDELINES AND ON THEIR

12 APPLICATION TO A PARTICULAR CASE, AND WE ARE ASKING THE COURT

13 TO DRAW UPON THIS COURT'S OWN ARTICULATED HISTORY AND TRADITION

14 OF EXERCISING COMPASSION AND MERCY.

15         YOUR HONOR, THAT IS ONE OF THE FEW THEMES IN THIS

16 CASE WHICH HAS NOT REALLY BEEN GIVEN THAT MUCH ATTENTION, BUT

17 THROUGHOUT THIS TRIAL YOU HAVE MADE NUMEROUS REFERENCES AND

18 REITERATED TO ALMOST EVERY DEFENDANT THE COURT'S TRADITION AS A

19 COMPASSIONATE, FEARING, GOD-FEARING HUMANITARIAN, ONE WHO MUST

20 ADOPT AND IMPLEMENT SOME OF THE HARSHER PROVISIONS OF THE LAW,

21 BUT ALSO A TRADITION AND A HISTORY THAT THE COURT HAS FOR

22 TREATING EVERYONE WHO COMES BEFORE THIS COURT AS A HUMAN BEING,

23 AS AN INDIVIDUAL.

24         SO WE ARE ASKING THE COURT TO DRAW UPON ITS HISTORY

25 AND ITS TRADITION IN EXERCISING THAT DISCRETION WHICH CONGRESS

1  HAS VESTED IN THIS COURT AND TO APPLY THE GUIDELINES IN THE

2  MANNER WE HAVE SUGGESTED AND IN THE MANNER WE ARE ASKING THE

3  COURT TO DO SO TODAY.

4          WE WOULD ALSO OBJECT TO THE TWO-POINT INCREASE FOR

5  THE ADJUSTMENT FOR AN OBSTRUCTION OF JUSTICE.  WE WOULD SUBMIT

6  THAT THE BASE OFFENSE LEVEL IN THIS CASE SHOULD BE 36, WHICH IS

7  NOT OTHERWISE ADJUSTED, NOT BECAUSE OF ANY BASIS FOR DEPARTURE,

8  BUT BECAUSE THE GUIDELINES HAPPEN TO WORK THIS WAY IN THIS

9  CASE.

10         I WILL BE THE FIRST TO ADMIT THAT GIVEN THE NOVELTY

11 OF THE GUIDELINES AND THE INFREQUENCY WITH WHICH THE OFFENSES

12 IN THIS CASE HAVE BEEN INTERPRETED PURSUANT TO THE GUIDELINES,

13 THAT THE COURT IS BEING ASKED TO TAKE AN APPROACH WHICH MAY

14 HAVE BEEN PRESENTED BUT HAS NOT BEEN PREVIOUSLY RULED ON, BUT

15 WE KNOW THAT THIS COURT HAS A HISTORY AND THE COURAGE FOR DOING

16 THE RIGHT THING, AND WE WOULD ASK THE COURT TO DO THAT.

17         UNLESS THE COURT HAS SPECIFIC QUESTIONS REGARDING

18 ANYTHING I HAVE SAID, THAT CONCLUDES OUR COMMENTS ON THE PRE-

19 SENTENCE REPORT.

20         **THE COURT:**  JUST A MOMENT.

21     [PAUSE.]

22         **THE COURT:**  IT SEEMS TO THE COURT -- AND I HAVE JUST

23 BEEN READING AND CHECKING -- THAT ALMOST EVERYTHING YOU HAVE

24 SAID THIS MORNING, IF NOT ENTIRELY, WAS PUT BY YOU ON BEHALF OF

25 MR. EDMOND TO THE COURT IN YOUR PLEADING WHICH YOU APPARENTLY

1 PUT IN THE MAIL ON AUGUST 28TH OF THIS YEAR AND WHICH WAS FILED

2 IN THIS COURT ON THAT DATE.

3 　　　　　IS THAT ESSENTIALLY CORRECT OR ENTIRELY CORRECT?

4 　　　　　**MR. ELLENBOGEN:**　TO THE EXTENT THAT THEY REFLECT OUR

5 POSITION ON RELIANCE --

6 　　　　　**THE COURT:**　IS IT CORRECT, EVERYTHING IN THIS

7 DOCUMENT YOU PUT IN WRITING, IS THAT CORRECT?　I HAVE NOT HEARD

8 ANYTHING THIS MORNING --

9 　　　　　**MR. ELLENBOGEN:**　THE ONLY ADDITIONAL ARGUMENT IN

10 SUPPORT OF IT, YOUR HONOR, IS THAT WHEN YOU LOOK AT THE

11 GROUPING GUIDELINES, THE GROUPING GUIDELINES SAY THAT YOU USE

12 THE MOST SERIOUS OFFENSE WHEN YOU HAVE OFFENSES THAT ARE

13 GROUPED TOGETHER IN A MULTIPLE-COUNT CONVICTION.

14 　　　　　**THE COURT:**　WHAT IS YOUR OBJECTION ABOUT THE

15 GROUPING?

16 　　　　　**MR. ELLENBOGEN:**　THE GROUPING RELIES ON THE IMPROPER

17 GUIDELINE AS THE MOST SERIOUS OFFENSE.　THE GROUPING

18 APPLICATION RELIES ON THE GUIDELINE FOR THE DISTRIBUTION AND

19 THE POSSESSION WITH THE INTENT TO DISTRIBUTE GUIDELINE AND

20 APPLICATION NOTES CONTAINED IN 2D1.1.

21 　　　　　OUR ARGUMENT IS THAT THE GROUPING SHOULD RELY ON THE

22 C.C.E. BECAUSE IT IS THE C.C.E. WHICH IS THE MOST SERIOUS OF

23 ALL OF THESE COUNTS AND THAT THAT IS THE PROPER GUIDELINE THAT

24 SHOULD BE RELIED ON WHEN EMPLOYING THE GROUPING GUIDELINES.

25 　　　　　**THE COURT:**　ALL RIGHT, SIR.　WHAT ELSE OTHER THAN

1  WHAT YOU SAID TO ME IN WRITING IN LATE AUGUST?

2         **MR. ELLENBOGEN:**  NOTHING UNLESS THE COURT HAS ANY

3  QUESTIONS.

4         **THE COURT:**  THANK YOU VERY MUCH.

5         DOES MR. EDMOND WISH TO SAY ANYTHING TO THE COURT?

6         **THE DEFENDANT:**  NO, SIR.

7         **THE COURT:**  ALL RIGHT.  MR. DOMINGUEZ.

8         **MR. DOMINGUEZ:**  YOUR HONOR, THE GOVERNMENT'S

9  PRESENTATION WILL BE BRIEF AND I MEAN LIKE THREE TO FOUR

10  MINUTES.  AFTERWARDS, WILL THE COURT TAKE A RECESS BEFORE

11  IMPOSING SENTENCE?

12         **THE COURT:**  YES.

13         **MR. DOMINGUEZ:**  THANK YOU, YOUR HONOR.

14         **THE COURT:**  WHY, DO YOU WANT TO DO IT NOW?  IS THAT

15  WHAT YOU ARE ASKING?

16         **MR. DOMINGUEZ:**  NO, YOUR HONOR, I CAN HANG ON FOR A

17  FEW MORE MINUTES.

18         THE GOVERNMENT'S POSITION IS THAT THE PREVIOUS

19  SENTENCE IMPOSED BY THE COURT WAS CORRECT.  THE STATUTE

20  REQUIRES FOR CONVICTION OF A DRUG KINGPIN IN A CONTINUING

21  CRIMINAL ENTERPRISE THAT SINCE THE AMOUNT OF DRUGS INVOLVED IN

22  THE CONTINUING CRIMINAL ENTERPRISE WAS 300 TIMES OR MORE

23  GREATER THAN THE STATUTORY MINIMUM AND THAT THE DEFENDANT WAS

24  THE DRUG KINGPIN OF THE ENTERPRISE INVOLVING FIVE OR MORE

25  PEOPLE, THAT THE MANDATORY SENTENCE IS LIFE.

1       YOU DON'T HAVE TO DO A GUIDELINE CALCULATION.  IT IS

2   JUST LIFE WITHOUT PAROLE.

3       THE DEFENSE HAS ARGUED THAT THE C.C.E. WAS THE OBJECT

4   OF THE CONSPIRACY, AND THE GOVERNMENT'S POSITION IS WE ARE NOT

5   GOING TO LET THEM GET AWAY WITH THAT KIND OF ASSUMPTION.  THAT

6   IS TOTALLY WRONG.

7       THE CONSPIRACY TO DISTRIBUTE DRUGS IS A PREDICATE

8   OFFENSE FOR THE CONTINUING CRIMINAL ENTERPRISE, NOT VICE VERSA,

9   AS THE DEFENSE ARGUED IN ITS PLEADINGS.

10      WE WOULD ASK THE COURT TO IMPOSE A SEPARATE SENTENCE

11  FOR THE CONSPIRACY EVEN AT THIS TIME, EVEN THOUGH LEGALLY IT

12  SHOULD MERGE WITH THE CONTINUING CRIMINAL ENTERPRISE.  HOWEVER,

13  THE GOVERNMENT'S POSITION IS --

14      THE COURT:  THAT IS NOT QUITE CORRECT, MR. DOMINGUEZ.

15  IT DOESN'T MERGE.  THE CRIME OF CONSPIRACY, WHEN THE GOVERNMENT

16  CHOOSES TO INDICT A DEFENDANT FOR CONTINUING CRIMINAL

17  ENTERPRISE, A CRIME OF THAT, THE CRIME OF CONSPIRACY IS A

18  LESSER INCLUDED OFFENSE.

19      IN THIS DISTRICT, THE UNITED STATES ATTORNEY'S OFFICE

20  AND OTHERS IN OTHER CIRCUITS HAVE DONE THE SAME THING YOU DID,

21  NAMELY, CHARGE A C.C.E. COUNT AND THEN ALSO CHARGE

22  INDEPENDENTLY THE CRIME OF CONSPIRACY.

23      NOW, TWO APPELLATE COURTS AT LEAST, AS I RECALL, THE

24  SECOND AND FOURTH CIRCUITS, HAVE HELD THAT IF A CONVICTION FOR

25  THE CRIME OF CONTINUING CRIMINAL ENTERPRISE IS UPHELD, THEN IN

1  THOSE INSTANCES, THEY REMANDED THE INDEPENDENT SENTENCE FOR THE

2  CRIME OF CONSPIRACY FOR THE PURPOSE OF HAVING IT VACATED.

3         IF YOU WILL RECALL -- I GUESS YOU WEREN'T HERE -- BUT

4  IF YOU WILL LOOK AT THE JUDGMENT AND COMMITMENT AND IF YOU LOOK

5  AT THE TRANSCRIPT, YOU WILL FIND THIS COURT, TAKING COGNIZANCE

6  OF THOSE DECISIONS, SENTENCED MR. EDMOND TO LIFE ON THE

7  CONSPIRACY COUNT BUT SPECIFICALLY PROVIDED THAT IT WOULD BE

8  VACATED UPON THE AFFIRMANCE OF THE CONVICTION OF THE CRIME OF

9  CONTINUING CRIMINAL ENTERPRISE.

10        THAT DOES NOT MEAN THAT IT WAS NOT A UNITARY

11 INDEPENDENT SENTENCE FOR THE CRIME OF CONSPIRACY BECAUSE IT

12 STILL WAS AN INDEPENDENT SENTENCE.  I WAS ONLY NOTIFYING THE

13 BUREAU OF PRISONS, THIS DEFENDANT, AND ANY OTHERS THAT MIGHT

14 HAVE AN INTEREST IN THE MATTER, OF WHAT THE COURT WOULD DO

15 BASED ON THE APPELLATE GUIDANCE WE HAD AT THAT TIME.

16        **MR. DOMINGUEZ:**  THE GOVERNMENT DOES NOT DISPUTE

17 ANYTHING THE COURT HAS SAID ABOUT EXPLAINING THE C.C.E. AND THE

18 CONSPIRACY.

19        **THE COURT:**  THEIR ARGUMENT WITH RESPECT TO THIS IS

20 CIRCULAR AT BEST.  I DON'T MEAN TO BE CRITICAL, BUT IT IS

21 CIRCULAR AND NOT LEGALLY SOUND.

22        **MR. DOMINGUEZ:**  IN ADDITION, YOUR HONOR, THE

23 GUIDELINE RANGE, AS STATED IN THE REVISED PRE-SENTENCE REPORT,

24 IS 44 WHICH IS OFF THE CHART ON THE HIGH END.  ANYTHING ABOVE

25 OFFENSE LEVEL 43 IS A MANDATORY LIFE WITHOUT PAROLE.

1          EVEN A GUIDELINE RANGE OF 42 PROVIDES A SENTENCE OF

2   LIFE ALTHOUGH IT SAYS 360 TO LIFE.  THE GOVERNMENT IS NOT GOING

3   TO STAND BEFORE THE COURT AND QUIBBLE OVER TWO POINTS.

4          UNLESS THE COURT HAS ANY OTHER QUESTIONS, WE WOULD

5   LIKE TO SIMPLY CONCLUDE IN OUR ALLOCUTION THAT THE DEFENDANT

6   SHOULD BE IMPRISONED FOR LIFE WITHOUT PAROLE IN ACCORDANCE WITH

7   THE STATUTE, AND THAT THIS MAN RAN THE LARGEST DRUG COCAINE

8   ENTERPRISE IN THE HISTORY OF THE DISTRICT OF COLUMBIA, AND HE

9   SHOULD BE SENTENCED ACCORDINGLY.

10         **THE COURT:**  VERY WELL.  THE COURT WILL NOW, TO

11  ACCOMMODATE YOU AND OTHERS, TAKE A SHORT RECESS.

12         [RECESS FROM 11:10 A.M. TO 11:56 A.M.]

13         **THE COURT:**  MR. DOMINGUEZ, MY COURTROOM CLERK OR

14  SOMEBODY ADVISED ME THAT YOU ARE NOT FEELING WELL, AND THE

15  COURT EXPRESSES ITS REGRET.

16         MR. ELLENBOGEN, DO YOU HAVE ANYTHING YOU WANT TO SAY

17  IN RESPONSE TO THE GOVERNMENT?

18         **MR. ELLENBOGEN:**  THE ONLY THING IN RESPONSE TO WHAT

19  THE GOVERNMENT SAID, YOUR HONOR, IS SIMPLY THAT WE ARE NOT

20  ARGUING THAT THE CONSPIRACY IS THE OBJECT OF THE CONSPIRACY,

21  WHICH IS WHAT IT APPEARS -- I MAY HAVE WRITTEN DOWN WHAT THEY

22  SAID WRONG -- OUR ARGUMENT IS THAT THE C.C.E. IS THE TRUE

23  OBJECT OF WHAT THE CONSPIRACY IS.

24         **THE COURT:**  ALL RIGHT.

25         **MR. ELLENBOGEN:**  YOUR HONOR, I WOULD ALSO LIKE TO

1  MAKE ONE ADDITIONAL COMMENT THAT I OVERLOOKED WHEN I WENT OVER
2  MY NOTES, WHICH ADDRESSES THE FOUR-LEVEL ENHANCEMENT FOR ROLE
3  IN THE OFFENSE.

4        **THE COURT:**  WITH RESPECT TO COUNT WHAT?

5        **MR. ELLENBOGEN:**  IN RESPECT TO COUNT TWO.

6        **THE COURT:**  THE CONSPIRACY CHARGE.

7        **MR. ELLENBOGEN:**  WITH RESPECT TO THAT, ASIDE FROM OUR
8  EARLIER ARGUMENTS THAT WE MADE WHICH WOULD PRECLUDE THE FOUR-
9  LEVEL ENHANCEMENT BY VIRTUE OF THE C.C.E. GUIDELINES AND ITS
10 DICTATES, WE WOULD SUBMIT THAT A FOUR-LEVEL ENHANCEMENT FOR THE
11 CONSPIRACY WHEN THAT HAS BEEN INCORPORATED WITHIN THE OFFENSE
12 OF CONVICTION ON COUNT ONE WOULD AMOUNT TO A DOUBLE JEOPARDY
13 PROBLEM IN TERMS OF AN ENHANCED SENTENCE FOR HIS ROLE IN THE
14 OFFENSE.

15       **THE COURT:**  THAT WAS IN YOUR PLEADINGS.  THE COURT
16 UNDERSTANDS YOUR POSITION WITH RESPECT TO THAT.

17       **MR. ELLENBOGEN:**  I WANTED TO MAKE SURE THAT IT WAS
18 ABUNDANTLY CLEAR IN THE RECORD THAT WE RAISE THAT ARGUMENT
19 ALSO.

20       **THE COURT:**  I HOPE I CAN ARTICULATE ALL THAT NEEDS TO
21 BE SAID WITH RESPECT TO THIS MATTER AND PULL TOGETHER ALL OF
22 THE NOTES AND DOCUMENTS THE COURT HAS BEFORE IT WITH RESPECT TO
23 THIS MATTER.

24       THIS DEFENDANT WAS FOUND GUILTY ON DECEMBER 6, 1989,
25 OF THE CRIME OF CONTINUING CRIMINAL ENTERPRISE, OF THE CRIME OF

1  CONSPIRACY, UNLAWFUL EMPLOYMENT OF PERSONS UNDER 18 YEARS OF

2  AGE IN COUNT FIVE, INTERSTATE TRAVEL IN AID OF RACKETEERING IN

3  COUNT ELEVEN, UNLAWFUL USE OF A COMMUNICATIONS FACILITY IN

4  COUNTS FOURTEEN, FIFTEEN, SIXTEEN AND EIGHTEEN.

5       NOW, THE FOLLOWING DATES AND FACTS HAVE BEEN SUPPLIED

6  TO THE COURT BY THE PROBATION OFFICER DURING THE RECESS.  IF

7  COUNSEL OR THE DEFENDANT OR THE GOVERNMENT QUARRELS WITH ANY OF

8  THESE, I WANT YOU TO TELL ME NOW.

9       THIS DEFENDANT WAS INTERVIEWED ON DECEMBER 1, 1990,

10  BY THE PROBATION OFFICER WHO WROTE THE PRE-SENTENCE

11  INVESTIGATION REPORT IN THE CELL BLOCK OF THIS COURTHOUSE IN

12  THE PRESENCE OF HIS COUNSEL.  DECEMBER 11, 1989.  THE INTERVIEW

13  TOOK PLACE ON DECEMBER 11, 1989.

14       TO REPEAT, HE WAS FOUND GUILTY ON DECEMBER 6, 1989.

15  THE FIRST PRE-SENTENCE INVESTIGATION REPORT INTERVIEW TOOK

16  PLACE IN THAT CONNECTION IN THE CELL BLOCK OF THIS COURTHOUSE

17  BETWEEN THIS DEFENDANT AND THE AUTHOR OF THE REPORT ON DECEMBER

18  11, 1989.

19       I MIGHT ADD PARENTHETICALLY THAT WAS IN THE PRESENCE

20  OF A YOUNG WOMAN FROM THE WASHINGTON POST WHO WAS BROUGHT THERE

21  WITH THE ASSISTANCE OF PROFESSOR ROBERTSON, WHO WAS COUNSEL TO

22  MR. EDMOND.

23       ON JULY 24, 1990, THE INITIAL PRE-SENTENCE

24  INVESTIGATION REPORT NOW BEFORE THE COURT WAS DISCLOSED TO ALL

25  OF THE PARTIES AND THEIR COUNSEL.  ON AUGUST 7, 1990, THE

1  GOVERNMENT FILED ITS OBJECTIONS.

2        ON AUGUST 27, 1990, A REVISED PRE-SENTENCE

3  INVESTIGATION REPORT WAS DISCLOSED TO ALL THE PARTIES, AND THAT

4  INCLUDED PARAGRAPH 23(a) ABOUT WHICH THERE HAS BEEN MUCH

5  DISCUSSION THIS MORNING, AND PARAGRAPH 23(a) CONTAINED MATERIAL

6  THAT THE GOVERNMENT REQUESTED IN ITS AUGUST 7, 1990 PLEADING OR

7  MEMORANDUM.

8        ON AUGUST 28, 1990, THIS DEFENDANT FILED HIS WRITTEN

9  OBJECTIONS WITH THE PROBATION OFFICE.  ON SEPTEMBER 11, 1990,

10  THE PROBATION OFFICE SUBMITTED AN ADDENDUM TO THE PRE-SENTENCE

11  INVESTIGATION REPORT WHICH ADDRESSES THE DEFENDANT'S OBJECTIONS

12  TO THE PRE-SENTENCE INVESTIGATION REPORT.

13        NOW, DOES ANYBODY HAVE ANY QUARREL WITH THIS

14  ARTICULATION OF THOSE DATES?  MR. ELLENBOGEN.

15      **MR. ELLENBOGEN:**  I WOULD JUST TAKE ISSUE WITH THE

16  CHARACTERIZATION OF DISCLOSURE, WHETHER OR NOT THE REPORTS WERE

17  ACTUALLY DISCLOSED.  ON TWO OCCASIONS, I CONTACTED MR.

18  MECZKOWSKI TO ATTEMPT TO SECURE A COPY OF THE SECOND REPORT.

19        I WAS ADVISED THAT MR. HUNT WAS NOT IN HIS OFFICE.

20  BECAUSE OF OBLIGATIONS IN COURT THE NEXT DAY, I WAS UNABLE TO

21  MAKE IT THERE BEFORE 4:00, AND IT WAS A FEW DAYS LATER THAT IT

22  WAS FINALLY MADE AVAILABLE TO ME.

23      **THE COURT:**  WHAT DATE WAS THAT?

24      **MR. ELLENBOGEN:**  JUST A SECOND.  THE 7TH OF SEPTEMBER

25  WAS WHEN I GOT A COPY OF THE REVISED PRE-SENTENCE REPORT, AND

1  IT WASN'T UNTIL THE MORNING OF THE 14TH THAT MR. EDMOND FIRST

2  HAD AN OPPORTUNITY TO REVIEW THAT WITH ME.

3         ON TOP OF THAT, YOUR HONOR, I WOULD NOTE THAT MR.

4  EDMOND WAS TRANSPORTED ALSO THAT AFTERNOON.  SO WE ONLY HAD AN

5  OPPORTUNITY TO MEET TO GO OVER THAT FOR ABOUT AN HOUR, HOUR AND

6  A HALF.

7         **THE COURT:**  WAS HE NOT BROUGHT BACK TO THE DISTRICT

8  OF COLUMBIA ON OR ABOUT AUGUST 1ST?  WEREN'T YOU, MR. EDMOND,

9  BROUGHT BACK HERE ABOUT AUGUST 1ST?

10         **THE DEFENDANT:**  NO, NOT THAT I CAN REMEMBER.

11         **THE COURT:**  WHAT DOES THE RECORD SHOW?  MY CLERK

12  ADVISES ME THAT I ISSUED AN ORDER DIRECTING THAT THE MARSHAL

13  SERVICE BRING ALL THE DEFENDANTS BACK BY AUGUST 1ST OF THIS

14  YEAR.

15         **MR. ELLENBOGEN:**  THAT IS CORRECT.

16         **THE DEFENDANT:**  I WAS HELD AT PETERSBURG.  I WAS

17  THERE.  I HAVE BEEN BACK SINCE APRIL, BUT I WAS IN PETERSBURG.

18         **MR. ELLENBOGEN:**  MR. EDMOND HAS BEEN KEPT IN

19  PETERSBURG SINCE THE END OF APRIL.

20         **THE DEFENDANT:**  I HAVE BEEN THERE SINCE APRIL IN

21  PETERSBURG.  I HAVEN'T BEEN NOWHERE IN THE CITY.

22         **MR. ELLENBOGEN:**  AS FAR AS I AM AWARE, THIS WEEKEND

23  IS THE FIRST WEEKEND.

24         **THE COURT:**  MR. ELLENBOGEN, LET ME READ OUR LOCAL

25  RULE SINCE YOU HAVE REFERRED TO IT SO OFTEN.

1    LOCAL RULE 311 PROVIDES THAT THE PRE-SENTENCE REPORT

2  SHALL BE DEEMED TO HAVE BEEN DISCLOSED (1) WHEN A COPY OF THE

3  REPORT IS PHYSICALLY DELIVERED, (2) ONE DAY AFTER THE REPORT'S

4  AVAILABILITY FOR INSPECTION IS ORALLY COMMUNICATED, OR (3)

5  THREE DAYS AFTER A COPY OF THE REPORT OR NOTICE OF ITS

6  AVAILABILITY IS MAILED.

7    SO THAT TAKES US BACK AT LEAST UNTIL AUGUST 27TH; AND

8  BY YOUR PLEADING, YOU HAVE BEEN IN THIS CASE -- I DON'T HAVE IT

9  BEFORE ME -- BUT I THINK YOU SAID SINCE YOUR APPOINTMENT ON

10  JULY 11, 1990.  CORRECT?

11    **MR. ELLENBOGEN:**  THAT IS WHEN YOU CALLED TO ASK ME TO

12  ACCEPT THIS.

13    **THE COURT:**  THAT IS CORRECT.  THAT IS WHEN I

14  APPOINTED YOU, AND YOU ACCEPTED, RIGHT?

15    **MR. ELLENBOGEN:**  THAT IS CORRECT, YOUR HONOR.

16    **THE COURT:**  NOW, LET'S BACK UP A MOMENT.  PARAGRAPH

17  23(a), THE COURT HAS DISCERNED, WHICH WAS INSERTED, AS I

18  MENTIONED EARLIER, AT THE BEHEST OF THE PLEADING OF THE UNITED

19  STATES GOVERNMENT, CONTAINS THE ONLY ESSENTIAL DIFFERENCE IN

20  THE CURRENT PRE-SENTENCE INVESTIGATION REPORT BEFORE THE COURT

21  AS AGAINST THE ORIGINAL ONE WHICH THE COURT RELIED UPON IN

22  SENTENCING MR. EDMOND IN THE EARLY PART OF 1990.  THAT IS THE

23  ONLY DIFFERENCE.

24    PUTTING THAT OBJECTION ASIDE FOR THE MOMENT, THE

25  COURT SENT FOR THE JACKET, AND THE COURT RETURNED IT WITH A

1   FILE STAMP OF FEBRUARY 13, 1990, SIGNED BY MR. EDMOND ON THE

2   SAME DATE AND PROFESSOR JAMES W. ROBERTSON ON THE SAME DATE, IN

3   MR. ROBERTSON'S HANDWRITING AND IN MR. EDMOND'S HANDWRITING,

4   INDICATING THAT THERE ARE NO MATERIAL INACCURACIES IN THAT

5   REPORT.

6           THE COURT HAS ALSO EXAMINED THE TRANSCRIPT OF THAT

7   PROCEEDING AS WELL AS THE PLEADING FILED IN THIS CASE BY

8   PROFESSOR ROBERTSON ON BEHALF OF MR. EDMOND.  AND AFTER A

9   COLLOQUY ON FEBRUARY 13, 1990, BEGINNING AT 10:00 A.M. THAT

10  DAY, I SAID TO MR. ROBERTSON, "I TAKE IT YOUR POSITION IS THAT

11  AS A MATTER OF LAW, NOT AS A MATTER OF DISPUTED FACT, THAT

12  THERE ARE NO MATERIAL FACTUAL INACCURACIES IN THE REPORT, BUT

13  THAT YOU, BASED ON THE FACTS PRESENTED TO THE COURT TODAY,

14  ARGUE THAT THE TWO-LEVEL INCREASE FOR THE GUN AND THE FOUR-

15  LEVEL INCREASE BECAUSE OF THE GROUPING OF THE VARIOUS OTHER

16  OFFENSES FOR WHICH MR. EDMOND WAS CONVICTED -- "

17          "MR. ROBERTSON:  THE ROLE, THE PRINCIPAL

18  ADMINISTRATOR, SUPERVISOR, ORGANIZER ROLE, THE FOUR-LEVEL BUMP

19  FOR THAT.

20          "THE COURT:  THE FOUR-LEVEL OFFENSE LEVEL INCREASE

21  SHOULD NOT OBTAIN.  I UNDERSTAND THAT.  THOSE ARE LEGAL

22  QUESTIONS, NOT FACTUAL DISPUTES.

23          "MR. ROBERTSON:  WELL, WE HAVE SOME FACTUAL -- JUST A

24  MOMENT.  ALL RIGHT, JUDGE.

25          "THE COURT:  THEREFORE, THAT BEING THE CASE, IN ORDER

1  TO ASSIST YOU AND MR. EDMOND, I AM GOING TO ASK THE CLERK TO

2  GIVE YOU THAT NEW FORM TO RE-EXECUTE BECAUSE FROM WHAT YOU

3  SUBMITTED, THERE IS NO FACTUAL DISPUTE."

4      THAT IS ON PAGES 24 AND 25 OF THE SENTENCING

5  PROCEEDING OF MR. EDMOND BEFORE THE COURT. THE LAST REFERENCE

6  WAS TO THE PLEADING PROFESSOR ROBERTSON FILED IN THE JACKET.

7      NOW, WITH RESPECT TO ANOTHER HOUSEKEEPING MATTER,

8  THERE IS A FILE-STAMPED DOCUMENT ENTITLED "DEFENDANT'S MOTION

9  FOR A CONTINUANCE," DATED SEPTEMBER 14, 1990, WHICH WAS LAST

10  FRIDAY, REPORTEDLY SIGNED BY A GREGORY B. ENGLISH OF THE FIRM

11  OF ENGLISH & SMITH OF ALEXANDRIA, VIRGINIA, REQUESTING THAT

12  THIS COURT CONTINUE THE SENTENCING DATE SCHEDULED FOR TODAY FOR

13  A PERIOD OF 30 DAYS.

14      MR. ENGLISH SAYS, AND I QUOTE, "THERE ARE TWO REASONS

15  FOR THIS REQUEST. FIRST, COUNSEL WAS RETAINED YESTERDAY AND

16  WILL NEED TIME TO EXAMINE THE VOLUMINOUS RECORD OF TRIAL IN

17  ORDER TO PROPERLY PREPARE FOR SENTENCING.

18      "SECOND, COUNSEL IS SCHEDULED TO BE AT THE FEDERAL

19  CORRECTIONAL INSTITUTION AT ASHLAND, KENTUCKY, ON THE 17TH AND

20  18TH OF SEPTEMBER FOR A PAROLE HEARING. SO HE IS NOT AVAILABLE

21  AT THIS TIME."

22      SIMULTANEOUSLY, OR ON THE SAME DATE, MR. ENGLISH

23  FILED A PRAECIPE STATING AS FOLLOWS, AND I QUOTE, "ON SEPTEMBER

24  13, 1990, THE UNDERSIGNED COUNSEL WAS RETAINED TO REPRESENT THE

25  DEFENDANT AT SENTENCING. THIS REPRESENTATION DOES NOT INCLUDE

1 THE APPEAL IN THIS CASE." WITH A CERTIFICATE OF SERVICE TO

2 WILLIAM O'MALLEY OF THE UNITED STATES ATTORNEY'S OFFICE.

3      NOW, THE RECORD SHOWS THAT THE UNITED STATES COURT OF

4 APPEALS FOR THIS CIRCUIT APPOINTED MR. ELLENBOGEN TO HANDLE MR.

5 EDMOND'S APPEAL AND THAT DANIEL ELLENBOGEN HAS TRIED CASES IN

6 THIS COURT AND IS ON THE APPROVED LIST OF COUNSEL AUTHORIZED TO

7 REPRESENT INDIGENT DEFENDANTS IN THIS COURT.

8      BECAUSE MR. ELLENBOGEN IS FAMILIAR WITH THE TRIAL

9 RECORD IN THIS CASE BECAUSE OF HIS REPRESENTATION OF MR. EDMOND

10 ON APPEAL, THIS COURT APPOINTED MR. ELLENBOGEN TO REPRESENT MR.

11 EDMOND FOR THE PURPOSE OF HIS RE-SENTENCING.

12      ON MAY 2, 1990, BEGINNING AT 9:30 A.M. -- AND THE

13 COURT HAS THE TRANSCRIPT -- THIS DEFENDANT TESTIFIED BEFORE

14 MAGISTRATE PATRICK J. ATTRIDGE OF THIS COURT TO THE EFFECT THAT

15 HE WAS INDIGENT AND HAD NO FUNDS WITH WHICH TO HIRE AN

16 ATTORNEY.

17      A TRANSCRIPT OF THAT HEARING BEFORE MAGISTRATE

18 ATTRIDGE IS A PART OF THE RECORD IN THIS CASE. AS A RESULT,

19 THE COURT APPOINTED MR. PLATO CACHERIS, AND HE, ALONG WITH HIS

20 ASSOCIATE, MR. PHILIP INGLIMA, HAVE WORKED DILIGENTLY ON BEHALF

21 OF MR. EDMOND, WERE AND ARE PREPARED TO PROCEED TO TRIAL ON MR.

22 EDMOND'S MURDER CASE, AND ALSO AGREED TO HANDLE THE OPPOSITION

23 TO THE GOVERNMENT'S APPEAL OF THIS COURT'S RULING ON JULY 10,

24 1990, WHEREIN THIS COURT HELD THAT MR. EDMOND COULD NOT BE

25 TRIED FOR FIRST DEGREE MURDER AND COULD ONLY BE TRIED FOR

1  SECOND DEGREE MURDER FOR THE REASONS SET FORTH THEREIN.

2  NOW, AS I HAVE INDICATED, THIS COURT IS IN RECEIPT OF

3  MR. ENGLISH'S MOTION. AND FURTHER THE COURT IS CONFIDENT THAT

4  MR. DANIEL ELLENBOGEN HAS BEEN ACTING IN CONCERT WITH MR.

5  EDMOND'S CO-COUNSEL AND HAS BEEN WITNESSED IN THIS COURTROOM

6  REGULARLY FROM THE TIME OF THE FIRST TRIAL AND ON MANY

7  OCCASIONS DURING ITS VARIOUS SENTENCING HEARINGS. THE COURT

8  HAS DETERMINED THAT MR. EDMOND HAS BEEN REPRESENTED EFFECTIVELY

9  TO DATE BY MR. ELLENBOGEN, WHOSE WORK HAS BEEN ADOPTED AND RE-

10  ADOPTED BY MANY OF THE CO-DEFENDANTS' LAWYERS IN THIS CASE.

11  FINALLY, IT IS WELL ESTABLISHED IN THE LAW THAT A

12  DEFENDANT DOES NOT HAVE AN ABSOLUTE RIGHT TO COUNSEL OF HIS

13  CHOICE, AND THE COURT HAS BROAD DISCRETION IN RULING ON

14  REQUESTS FOR CONTINUANCES IN SUCH MATTERS.

15  THE COURT RELIES ON THE CASE OF MORRIS VERSUS SLAPPY,

16  A 1983 DECISION OF THE SUPREME COURT OF THE UNITED STATES, AT

17  461 U.S. PAGE 1, AND THERE IS ANOTHER COMPARATIVELY RECENT CASE

18  OF UNITED STATES VERSUS FREEMAN, 815 F.2D. AT 558, DECIDED BY

19  THE TENTH CIRCUIT IN 1987.

20  IT IS ALSO A FACT THAT SINCE THE CONTINUING CRIMINAL

21  ENTERPRISE STATUTE, NAMELY, 21 U.S.C. SECTION 848, REQUIRES THE

22  COURT TO IMPOSE -- THE COURT REPEATS -- REQUIRES THE COURT TO

23  IMPOSE A MANDATORY LIFE SENTENCE BECAUSE THE JURY FOUND BEYOND

24  A REASONABLE DOUBT THAT THIS DEFENDANT WAS THE PRINCIPAL

25  ADMINISTRATOR, ORGANIZER, OR LEADER OF A CONTINUING CRIMINAL

1  ENTERPRISE INVOLVING AT LEAST 150 KILOGRAMS OF COCAINE AND/OR

2  1.5 KILOGRAMS OF COCAINE BASE OR CRACK, AND BECAUSE THE COURT

3  FINDS BASED ON ITS OWN INDEPENDENT REVIEW OF THE RECORD HEREIN,

4  INCLUDING THE TRIAL, AND ALL OTHER MATTERS THAT ARE RELEVANT TO

5  SENTENCING WHICH THE COURT FINDS REASONABLY RELIABLE -- THE

6  JURY'S VERDICT IS SUPPORTED NOT ONLY BY A PREPONDERANCE FOR THE

7  PURPOSES OF SENTENCING BUT BEYOND A REASONABLE DOUBT -- THEN IT

8  DOES NOT APPEAR TO THE COURT THAT THIS LAST-MINUTE REQUEST FOR

9  A CONTINUANCE OR DELAY IN THE RE-SENTENCING OF RAYFUL EDMOND,

10 III, WOULD SERVE ANY LEGITIMATE PURPOSE FOR HIM.

11         IN ADDITION TO THAT, THIS COURT ALREADY GRANTED MR.

12 ELLENBOGEN A TWO-WEEK CONTINUANCE IN THIS SENTENCING HEARING

13 SCHEDULED FOR TODAY.

14         THE COURT FINDS, BOTH AS A MATTER OF FACT AND AS A

15 MATTER OF LAW, THAT THIS DEFENDANT HAS HAD MORE THAN AMPLE TIME

16 WITHIN WHICH TO PREPARE AND DO THE ABLE JOB WHICH HE HAS DONE,

17 AND AGAIN NO LEGITIMATE PURPOSE OR REASON HAS BEEN ADVANCED BY

18 MR. ENGLISH OR OTHERWISE BY MR. ELLENBOGEN, AS TO WHY THIS

19 SENTENCING HEARING AND THE IMPOSITION OF THE SENTENCE TODAY

20 SHOULD BE CONTINUED ANY FURTHER.

21         NOW, WITH RESPECT TO THE PRE-SENTENCE INVESTIGATION

22 REPORT --

23         **MR. ELLENBOGEN:**  YOUR HONOR.

24         **THE COURT:**  YES, MR. ELLENBOGEN.

25         **MR. ELLENBOGEN:**  JUST A BRIEF NOTE FOR THE RECORD AND

1   FOR YOUR OWN UNDERSTANDING, MR. ENGLISH'S INVOLVEMENT AND

2   PARTICIPATION OR ATTEMPTED PARTICIPATION IN THIS WAS DONE

3   WITHOUT MY FOREKNOWLEDGE OR -- I MEAN I WAS ADVISED THAT IT WAS

4   DONE AFTER IT HAD BEEN COMPLETED.  I HAD NEVER BEEN ADVISED IN

5   ADVANCE THAT IT WAS GOING TO GO ON, AND IT WAS DONE OUTSIDE OF

6   MY KNOWLEDGE OR AWARENESS.

7           **THE COURT:**  CONTINUING AGAIN, WITH RESPECT TO THE

8   PRE-SENTENCE INVESTIGATION REPORT, AND IN ORDER TO MAKE THE

9   RECORD CRYSTAL-CLEAR, THE COURT HAS REVIEWED IT AND WISHES TO

10  MAKE THE FOLLOWING CORRECTIONS.

11          PARAGRAPH 5, PAGE 3.  WE WILL AMEND LINES 3 AND 4 TO

12  READ:  "AT LEAST 150 KILOGRAMS OF A MIXTURE CONTAINING COCAINE

13  AND/OR 1.5 KILOGRAMS OF A MIXTURE CONTAINING COCAINE BASE."

14          PARAGRAPH 6, PAGE 4.  THE COURT DOES NOT ADOPT THE

15  SENTENCE AT LINES 2 THROUGH 4 STATING, "MR. LEWIS HAD HIS OWN

16  OPERATION WHICH DISTRIBUTED DRUGS ON THE STREET LEVEL IN THE

17  BATES STREET, NORTHWEST AREA OF THE CITY."

18          IN ITS PLACE, THE COURT FINDS BY A PREPONDERANCE THE

19  FOLLOWING:  "DRUGS WERE SOLD ON BATES STREET AS PART OF THE

20  EDMOND ORGANIZATION.  FOR INSTANCE, ROYAL BROOKS TESTIFIED THAT

21  RAYFUL EDMOND, III, DIRECTED HIM TO DELIVER DRUGS TO THE BATES

22  STREET AREA ON NUMEROUS OCCASIONS.  TONY LEWIS MANAGED THE

23  PORTION OF THE EDMOND ORGANIZATION WHICH OPERATED OUT OF THE

24  BATES STREET AREA."

25          THE COURT ALSO CHANGES THE PHRASE "THEIR COCAINE" IN

1   LINES 5 THROUGH 6 TO "A LARGE QUANTITY OF HIS COCAINE."

2          PARAGRAPH 7, PAGE 4.  THE COURT ALSO CHANGES THE

3   SENTENCE ON PAGE 4 TO READ AS FOLLOW:  "DURING 1988, MR. MATHIS

4   MADE 8 TO 10 TRIPS FOR MR. BUTLER DURING A 10-MONTH PERIOD TO

5   THE WASHINGTON, D.C. AREA TO DELIVER COCAINE."

6          THE COURT CHANGES THE SECOND SENTENCE OF PARAGRAPH 8

7   ON PAGE 4 TO READ:  "STEVEN G. WHITE AND ANTHONY A. JESSIE WERE

8   SEEN LEAVING THE BUCHANAN HOUSE APARTMENTS WITH SUITCASES AND

9   WERE SUBSEQUENTLY ARRESTED."

10         PARAGRAPH 17, PAGES 7 THROUGH 8.  ACCORDING TO ALTA

11   RAE ZANVILLE'S TESTIMONY, SHE PACKAGED COCAINE WITH BERNICE AND

12   DAVID MCCRAW THREE TIMES A WEEK RATHER THAN TWO TIMES A WEEK

13   AND EACH TIME THEY BAGGED 1 TO 2 KILOGRAMS OF COCAINE RATHER

14   THAN 2 KILOGRAMS OF COCAINE.  THE COURT, THEREFORE, AMENDS

15   PARAGRAPH 17 ACCORDINGLY.

16         NOW, WITH RESPECT TO PARAGRAPH 23(a) ON PAGE 10,

17   WHICH HAS BEEN DISCUSSED SO EXTENSIVELY BY MR. ELLENBOGEN ON

18   BEHALF OF MR. EDMOND THIS MORNING, THE COURT FINDS AND HOLDS

19   THAT EVEN ASSUMING THE DEFENDANT'S ARGUMENT THAT 14 KILOGRAMS

20   PICKED UP BY DAVID MCCRAW ON SEPTEMBER 28, 1988, WERE DOUBLE

21   COUNTED AS ALLEGED, THIS IS IMMATERIAL TO THIS SENTENCING

22   PROCEEDING BECAUSE THE QUANTITY OF COCAINE DESCRIBED IN THAT

23   PARAGRAPH EXCEEDS 150 KILOGRAMS WITHOUT THOSE 14 KILOGRAMS

24   ALLEGEDLY DOUBLE COUNTED.  IN OTHER WORDS, IT EXCEEDS 150

25   KILOGRAMS IN ANY EVENT WHICH THUS TRIGGERS THE STATUTE.

1          GOING ON TO PARAGRAPH 24 ON PAGE 10, THE COURT DOES

2    NOT ADOPT THE PORTION OF LINES 2 THROUGH 5, WHICH STATE THAT

3    TONY LEWIS "HAD HIS OWN STREET LEVEL ORGANIZATION IN THE BATES

4    STREET, NORTHWEST AREA OF THE CITY."

5          THE COURT AMENDS THAT PORTION TO READ THAT TONY LEWIS

6    "MANAGED THE EDMOND ORGANIZATION'S STREET LEVEL OPERATIONS IN

7    THE BATES STREET, NORTHWEST AREA."

8          THE COURT ALSO DOES NOT ADOPT THE SENTENCE AT LINES

9    18 AND 19, WHICH STATES, "ALSO OF EQUAL CULPABILITY AT THIS

10   LEVEL WOULD BE ALTA RAE ZANVILLE AND ROYAL S. BROOKS."

11         PARAGRAPH 30, PAGE 11.  THE SENTENCING GUIDELINES DO

12   NOT ASSIGN THE OFFENSE OF CONSPIRACY A SEPARATE BASE OFFENSE

13   LEVEL.  SECTION 2D1.4 REQUIRES A SENTENCING COURT TO APPLY THE

14   BASE OFFENSE LEVEL ASSIGNED TO THE OFFENSE WHICH IS THE OBJECT

15   OF A CONSPIRACY.

16         THE DEFENDANT EDMOND HERE CONTENDS THAT THE PROBATION

17   OFFICE CALCULATED HIS BASE OFFENSE LEVEL BY REFERRING TO THE

18   WRONG OBJECT OF THE CONSPIRACY.  THE PROBATION OFFICE AND THE

19   GOVERNMENT MAINTAIN THAT THE OBJECT OF THE CONSPIRACY OF WHICH

20   THIS DEFENDANT STANDS CONVICTED WAS THE DISTRIBUTION OF, AND

21   THE POSSESSION OF WITH INTENT TO DISTRIBUTE, COCAINE OR COCAINE

22   BASE.

23         IN CONTRAST, THIS DEFENDANT ARGUES THAT THE OBJECT OF

24   THE CONSPIRACY WAS ENGAGING IN A CONTINUING CRIMINAL

25   ENTERPRISE.  EITHER WAY THE BASE OFFENSE LEVEL WOULD BE 36, AND

1   THE COURT SO FINDS.

2           HOWEVER, IF THE OBJECT OF THE CONSPIRACY WERE

3   DISTRIBUTION OF OR POSSESSION WITH INTENT TO DISTRIBUTE,

4   COCAINE OR COCAINE BASE, THE COURT COULD ARRIVE AT A

5   SIGNIFICANTLY HIGHER ADJUSTED BASE OFFENSE LEVEL BY APPLYING

6   ENHANCEMENT OR ENHANCEMENTS FOR THE DEFENDANT'S ROLE IN THE

7   OFFENSE AND POSSESSION OF FIREARMS WHEREAS THE APPLICATION

8   NOTES THROUGH THE C.C.E. GUIDELINE PROVISION DO CONTEMPLATE

9   THESE ENHANCEMENTS.

10          IN MAKING THIS ARGUMENT, THE DEFENDANT IGNORES COMMON

11  SENSE AND THE LAW OF CONTINUING CRIMINAL ENTERPRISE AND

12  CONSPIRACY AND DISTORTS THE MANNER IN WHICH THE GOVERNMENT

13  PROSECUTED THIS CASE.

14          THIS INDICTMENT CHARGED MR. EDMOND WITH, AMONG OTHER

15  THINGS, THE CRIME OF CONTINUING CRIMINAL ENTERPRISE AND IN A

16  SEPARATE COUNT WITH CONSPIRACY TO DISTRIBUTE OR POSSESS WITH

17  INTENT TO DISTRIBUTE COCAINE OR COCAINE BASE, AND NEITHER THE

18  GOVERNMENT'S MANNER OF TRYING THIS CASE NOR THE JURY'S VERDICT

19  ON BOTH COUNTS WERE INCONSISTENT WITH THE CHARGES SET FORTH IN

20  THIS INDICTMENT.

21          FURTHERMORE, IT WAS CLEAR THAT THE CONSPIRACY OF

22  WHICH THE DEFENDANT EDMOND WAS CONVICTED WAS ONE OF THE

23  "CONTINUING SERIES" OF NARCOTICS-RELATED PREDICATE OFFENSES

24  REQUIRED BY THE C.C.E. STATUTE.

25          HERE AGAIN, THIS EXPOSES THE CIRCULAR NATURE OF THE

1  DEFENDANT'S ARGUMENT THAT WOULD HAVE C.C.E. BE THE OBJECT OF A

2  CONSPIRACY WHICH, IN TURN, AS EVERYBODY KNOWS, IS AN ELEMENT OF

3  THE CRIME OF CONTINUING CRIMINAL ENTERPRISE.

4  THUS, A CONSPIRACY WITH C.C.E. AS ITS OBJECT IN

5  EFFECT WOULD BE A CONSPIRACY TO CONSPIRE, AND THIS WOULD NOT BE

6  AN OFFENSE EVEN UNDER THE MOST EXPANSIVE VIEW OF CONSPIRACY

7  LAW.

8  ACCORDINGLY, AGAIN IN CALCULATING THIS DEFENDANT'S

9  ADJUSTED OFFENSE LEVEL, THE COURT WILL LOOK TO THE DISTRIBUTION

10  OF OR THE POSSESSION WITH INTENT TO DISTRIBUTE MORE THAN 5

11  KILOGRAMS OF COCAINE OR MORE THAN 50 GRAMS OF COCAINE BASE AS

12  THE OBJECT OF THE CONSPIRACY.

13  NOW, HE DIDN'T ARGUE IT THIS MORNING, BUT HE MAKES AN

14  ARGUMENT IN HIS PAPERS, SO THE COURT FEELS IT MUST DEAL WITH

15  IT, AND THAT IS AN ALTERNATIVE ARGUMENT ADVANCED BY THE

16  DEFENDANT EDMOND, NAMELY, THAT HIS BASE OFFENSE LEVEL SHOULD BE

17  A LEVEL 32 BASED ON THE 5 KILOGRAMS OF COCAINE AND 50 GRAMS OF

18  COCAINE BASE SPECIFIED IN THE CONSPIRACY COUNT OF THE

19  INDICTMENT.

20  THIS IS REJECTED AS WELL. THE GUIDELINES AND THE

21  CASE LAW CONSTRUING THEM MAKE IT CLEAR THAT A SENTENCING COURT

22  MAKING A FINDING AS TO THE QUANTITY OF DRUGS INVOLVED IS NOT

23  BOUND BY THE QUANTITY OF DRUGS FOR WHICH A DEFENDANT WAS

24  INDICTED OR CONVICTED. THERE ARE CASES IN SUPPORT OF THAT

25  PROPOSITION WHICH THE COURT WILL NOT SET FORTH HERE BUT WILL

1 │ SOON ISSUE IN THE FORM OF AN OPINION.

2 │       IT MIGHT EVEN BE ERROR FOR THE COURT TO CALCULATE THE

3 │ DEFENDANT'S BASE OFFENSE LEVEL BASED ON THE QUANTITY OF COCAINE

4 │ SPECIFIED IN THE INDICTMENT ONLY BECAUSE HERE THE COURT HAS

5 │ FOUND, AND DOES FIND, BY A PREPONDERANCE OF THE EVIDENCE THAT

6 │ THE CONSPIRACY OF WHICH THIS DEFENDANT STANDS CONVICTED

7 │ INVOLVED MORE THAN 50 KILOGRAMS OF COCAINE AND MORE THAN 500

8 │ GRAMS OF COCAINE BASE AND THAT THE QUANTITY OF COCAINE INVOLVED

9 │ IN THE CONSPIRACY WAS REASONABLY FORESEEABLE TO THIS DEFENDANT.

10 │       FOR THESE REASONS, THE COURT ADOPTS THE PROBATION

11 │ OFFICER'S CALCULATION OF A BASE OFFENSE LEVEL OF 36 FOR THIS

12 │ DEFENDANT.

13 │       DIRECTING YOUR ATTENTION TO PARAGRAPH 30 ON PAGE 11,

14 │ HERE THE GOVERNMENT IS SEEKING A TWO-LEVEL ENHANCEMENT FOR THE

15 │ POSSESSION OF FIREARMS PURSUANT TO CHAPTER 2D1.1(b)(1).

16 │       BASED ON THE EVIDENCE ADDUCED AT TRIAL, THE COURT

17 │ CONCLUDES THAT THE GOVERNMENT HAS ESTABLISHED BY A

18 │ PREPONDERANCE OF THE EVIDENCE THAT ONE OR MORE OF THE

19 │ DEFENDANT'S CO-CONSPIRATORS KNOWINGLY POSSESSED A FIREARM

20 │ DURING THE COURSE OF THE CONSPIRACY OF WHICH THIS DEFENDANT

21 │ STANDS CONVICTED AND THAT SUCH POSSESSION WAS REASONABLY

22 │ FORESEEABLE TO THIS DEFENDANT AND ESPECIALLY IN VIEW OF HIS

23 │ ROLE AS THE HIGHEST RANKING MEMBER OF THIS CONSPIRACY AS SHOWN

24 │ BY THE EVIDENCE.

25 │       AGAIN, SEVERAL MEMBERS OF THE POLICE DEPARTMENT

1  TESTIFIED ABOUT PISTOLS, REVOLVERS, RIFLES, MACHINE GUNS, AND

2  ASSORTED AMMUNITION WHICH WERE FOUND ALONGSIDE COCAINE AND

3  PACKAGING MATERIALS IN THE VARIOUS STASH HOUSES OUT OF WHICH

4  THIS CONSPIRACY OPERATED.

5      DETAILS AS TO THE TYPES OF WEAPONS SEIZED AND WHEN

6  AND WHERE THEY WERE SEIZED ARE CONTAINED IN PARAGRAPH 23 OF THE

7  DEFENDANT'S P.S.I., WHICH THE COURT AGAIN NOTES WERE NOT

8  OBJECTED TO IN A PLEADING FILED ON FEBRUARY 12 AT 3:43 P.M. BY

9  THIS DEFENDANT'S COUNSEL.

10      BECAUSE OF THE PROXIMITY OF THESE WEAPONS AND

11  AMMUNITION TO COCAINE DISTRIBUTED DURING THE CONSPIRACY, THE

12  COURT FINDS BY A PREPONDERANCE THAT THESE WEAPONS WERE

13  KNOWINGLY POSSESSED BY MEMBERS OF THE CONSPIRACY DURING THE

14  COURSE OF IT.

15      IN ADDITION, THE COURT FINDS THAT THE CO-DEFENDANT

16  JOHN MONFORD REACHED FOR AN OPERABLE 9-MILLIMETER SEMI-

17  AUTOMATIC PISTOL IN THE BEDROOM OF 407 M STREET, NORTHEAST, ON

18  THE DAY THE OFFICERS WERE EXECUTING A SEARCH WARRANT FOR THESE

19  PREMISES WHICH WAS FEBRUARY 5, 1988.

20      THE PRESENCE OF THE GUN IN THE CONSPIRACY'S PREMISES

21  AT 407 M STREET, NORTHEAST OUT OF WHICH MANY OF THE

22  TRANSACTIONS IN THIS CASE WERE NEGOTIATED AND IN WHICH MUCH OF

23  THE COCAINE WAS STORED STRONGLY SUPPORTS A FINDING WHICH THIS

24  COURT ADOPTS TODAY THAT THIS PISTOL WAS KNOWINGLY POSSESSED BY

25  A MEMBER OF THE CONSPIRACY DURING THE COURSE OF IT.

1    AGAIN, THE COURT FINDS BY A PREPONDERANCE THAT THIS

2  DEFENDANT KNEW OF HIS VARIOUS CO-CONSPIRATORS' POSSESSION OF

3  FIREARMS DURING THE COURSE OF THE CONSPIRACY IN VIEW OF HIS

4  MANAGEMENT OF MOST, IF NOT ALL, OF THE CONSPIRACY'S MEMBERS.

5    EVEN ASSUMING ARGUENDO THAT THIS DEFENDANT DID NOT

6  KNOW THAT SOME OF HIS CO-CONSPIRATORS POSSESSED WEAPONS DURING

7  THE CONSPIRACY, THE COURT FINDS TODAY BY A PREPONDERANCE THAT

8  IT WAS REASONABLY FORESEEABLE TO THIS DEFENDANT THAT HIS CO-

9  CONSPIRATORS WOULD HAVE POSSESSED FIREARMS IN ORDER TO PROTECT

10  THE VERY SUBSTANTIAL QUANTITIES OF COCAINE THE CONSPIRACY

11  DISTRIBUTED AND THE RESULTING PROFITS HE AND HIS FELLOW CO-

12  CONSPIRATORS DERIVED FROM THIS AND OF WHICH HE HAD FIRSTHAND

13  KNOWLEDGE.

14    PARAGRAPH 31, PAGE 11.  THIS DEFENDANT OBJECTS, NOT

15  ONCE BUT SEVERAL TIMES, TO A FOUR-LEVEL ENHANCEMENT FOR HIS

16  ROLE IN THE CONSPIRACY UNDER COUNT TWO OF WHICH HE STANDS

17  CONVICTED BECAUSE HE MAINTAINS THAT SUCH ENHANCEMENT IS BARRED

18  BY THE DOUBLE JEOPARDY CLAUSE OF THE CONSTITUTION.

19    ALTHOUGH THE DEFENDANT DOES NOT EXPLAIN THIS

20  OBJECTION WITH ANY PARTICULARITY, THE COURT PRESUMES THE

21  DEFENDANT IS ARGUING THAT HIS RECEIPT OF BOTH THE FOUR-LEVEL

22  ENHANCEMENT FOR HIS ROLE IN THE CONSPIRACY AND A SENTENCE FOR

23  LEADING A CONTINUING CRIMINAL ENTERPRISE CONSTITUTES A

24  VIOLATION OF THE DOUBLE JEOPARDY CLAUSE'S PROHIBITION AGAINST

25  BEING PUNISHED TWICE FOR THE SAME OFFENSE.

1    BECAUSE, AT THE CONCLUSION HEREOF, THE COURT INTENDS
2  TO DO EXACTLY AS IT DID ON THE FIRST OCCASION THAT THIS
3  DEFENDANT WAS SENTENCED, NAMELY, TO ANNOUNCE AND PRONOUNCE
4  SENTENCES ON COUNT ONE AND COUNT TWO SEPARATELY AND DISCRETELY
5  AND ALSO TO PROVIDE IN THE JUDGMENT AND COMMITMENT ORDER THAT
6  THE SENTENCE ON COUNT TWO FOR CONSPIRACY WILL ONLY BE VACATED
7  UPON AFFIRMANCE OF THE CONVICTION OF THE CRIME OF CONTINUING
8  CRIMINAL ENTERPRISE, IF THAT SHOULD HAPPEN, THEN THE RECEIPT OF
9  A FOUR-LEVEL ENHANCEMENT FOR THIS DEFENDANT'S LEADERSHIP ROLE
10 IN THE OFFENSE OF THE CRIME OF CONSPIRACY IN COUNT TWO DOES NOT
11 CONSTITUTE A DOUBLE JEOPARDY VIOLATION.

12    PARAGRAPH 33, PAGE 12.  THIS GENTLEMAN, THE
13 DEFENDANT, HAD BEEN ASSIGNED A TWO-LEVEL ENHANCEMENT FOR
14 OBSTRUCTION OF JUSTICE PURSUANT TO PARAGRAPH 3C1.1.  THAT
15 ARGUMENT WAS REJECTED BY THE COURT BEFORE ON FEBRUARY 13, 1990.
16 BECAUSE OF THAT, THE COURT WILL NOT ADOPT IT TODAY BECAUSE THAT
17 WOULD CONSTITUTE AN ENHANCEMENT OF A SENTENCE PREVIOUSLY HANDED
18 DOWN EVEN THOUGH AT THE BEHEST OF THIS DEFENDANT THAT SENTENCE
19 WAS VACATED.

20    PARAGRAPH 41, PAGE 12.  THE COURT DOES NOT ADOPT
21 PARAGRAPH 41 AS IT NOW READS.  THE COURT AMENDS THIS PARAGRAPH
22 TO READ AS FOLLOWS:  "THE DEFENDANT HAS ONE COUNT OF FIRST-
23 DEGREE MURDER WHILE ARMED PENDING AGAINST HIM IN THE UNITED
24 STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.  IT IS
25 ALLEGED THAT ON JUNE 23, 1988, THE DEFENDANT DIRECTED COLUMBUS

1   DANIELS TO SHOOT AND KILL BRANDON TERRELL AFTER THE DEFENDANT

2   AND MR. TERRELL HAD AN ARGUMENT OVER A DEBT MR. TERRELL OWED

3   THE DEFENDANT FOR COCAINE THE DEFENDANT HAD FRONTED FOR HIM."

4         PARAGRAPH 49, PAGE 14. AT LINE 12, THE REFERENCE TO

5   "RAYFUL EDMOND, II," IS INCORRECT, BECAUSE RAYFUL EDMOND, JR.,

6   IS RAYFUL EDMOND, III'S FATHER, AS THE COURT RELIABLY KNOWS

7   FROM REPRESENTATIONS MADE IN OPEN COURT.

8         THIS DEFENDANT, AS PREVIOUSLY INDICATED, STANDS

9   CONVICTED OF EIGHT CRIMES WHICH ARE AMONG THE MOST SERIOUS

10   VARIETY OF CRIMINAL CONDUCT ANYONE COULD BE CONVICTED OF IN ANY

11   COURT OF THE UNITED STATES.

12         YES, MR. ELLENBOGEN AND THIS DEFENDANT ARE ABSOLUTELY

13   CORRECT. NOTWITHSTANDING THAT, AND WHILE NO ONE CAN CONDONE

14   THIS KIND OF CONDUCT, ANY COURT WITH ANY DEGREE OF COMPASSION

15   CAN ALSO AND SHOULD ALSO FEEL SORRY FOR A YOUNG MAN OF THIS

16   YOUNGSTER'S AGE WHO HAS SO WASTED HIS LIFE BECAUSE, AS THE

17   COURT SAID UPON THE RETURN OF THE VERDICT AND STILL SAYS AGAIN

18   TODAY, THIS DEFENDANT IS A HUMAN BEING.

19         AS HE PUT IT IN A LETTER TO ME, IT IS HIS LIFE AT

20   STAKE; AND THE COURT IS WELL AWARE OF THAT. BUT THAT DOES NOT

21   MEAN THAT THE COURT CAN IN ANY WAY BE EXCUSED FROM DOING ITS

22   DUTY AS REQUIRED BY THE LAW.

23         AND HAVING FOUND THE FACTS AS SET FORTH IN THE PRE-

24   SENTENCE INVESTIGATION REPORT AS AMENDED AND WITHOUT REGARD, AS

25   THE COURT HAS PREVIOUSLY INDICATED, TO PARAGRAPH 23(a) EXCEPT

1  AS AMENDED IN THE COURT'S FINDINGS THIS MORNING, A FEW MOMENTS

2  AGO, THIS DEFENDANT'S GUIDELINE RANGE ON COUNT ONE IS LIFE IN

3  PRISON.  THE COURT HAS ABSOLUTELY NO DISCRETION ABOUT THAT AS

4  THE STATUTE ENACTED BY THE CONGRESS OF THE UNITED STATES

5  SPECIFIES.

6          WITH RESPECT TO COUNT TWO, THIS DEFENDANT, IN VIEW OF

7  THE QUANTITY OF DRUGS WHICH THE COURT HAS FOUND WERE POSSESSED

8  DURING THE COURSE OF THIS CONSPIRACY AND WHICH ARE ATTRIBUTABLE

9  TO HIM, REQUIRE A MANDATORY MINIMUM SENTENCE OF 10 YEARS TO

10  LIFE.

11          WITH RESPECT TO COUNT FIVE, IN VIEW OF THE FACTORS

12  ENUMERATED TO WHICH THERE HAVE BEEN NO OBJECTION IN THE PRE-

13  SENTENCE INVESTIGATION REPORT, AGAIN, THERE IS A MANDATORY

14  MINIMUM OF 10 YEARS TO LIFE.

15          WITH RESPECT TO COUNT ELEVEN, HE FACES IMPRISONMENT

16  FOR NOT MORE THAN FIVE YEARS, AND WITH RESPECT TO THE LAST FOUR

17  CRIMES FOR WHICH HE STANDS BEFORE THE BAR OF THIS COURT TODAY,

18  COUNTS FOURTEEN, FIFTEEN, SIXTEEN, AND EIGHTEEN, HE FACES A

19  TERM OF IMPRISONMENT OF FOUR YEARS ON EACH OF THOSE COUNTS.

20          THE COURT ADOPTS AS ITS FINDINGS OF FACT AND

21  CONCLUSIONS OF LAW THOSE SET FORTH IN THE PRE-SENTENCE

22  INVESTIGATION REPORT EXCEPT AS I HAVE MODIFIED THIS MORNING IN

23  THE ANNOUNCEMENT OF THE COURT'S FINDINGS.

24          THEREFORE, THE COURT SENTENCES THIS DEFENDANT, RAYFUL

25  EDMOND, III, TO THE CUSTODY OF THE UNITED STATES BUREAU OF

1 PRISONS WHEREBY HE SHALL BE COMMITTED FOR IMPRISONMENT FOR THE

2 BALANCE OF HIS NATURAL LIFE AS TO COUNT ONE.

3 THE SAME SENTENCE OF LIFE IMPRISONMENT SHALL OBTAIN

4 AS TO COUNTS TWO AND FIVE, 60 MONTHS ON COUNT ELEVEN, AND 48

5 MONTHS ON COUNTS FOURTEEN, FIFTEEN, SIXTEEN, AND EIGHTEEN, ALL

6 TO BE SERVED CONCURRENTLY BY THE COUNT EXCEPT AS TO THE SERVICE

7 OF COUNTS ONE AND TWO, AS PREVIOUSLY ARTICULATED, IF THE

8 SENTENCE OF LIFE IMPRISONMENT ON COUNT ONE SHOULD BE AFFIRMED,

9 THE COURT WILL VACATE THE LIFE SENTENCE ON COUNT TWO, BUT ONLY

10 IN THAT EVENT.

11 OTHERWISE, THE SENTENCES JUST ENUMERATED SHALL RUN

12 CONCURRENT BY THE COUNT.

13 UPON RELEASE FROM IMPRISONMENT, THE COURT IS REQUIRED

14 TO IMPOSE A TERM OF SUPERVISED RELEASE, AND THAT SHALL BE A

15 TERM OF EIGHT YEARS, CONSISTING OF EIGHT YEARS ON COUNT FIVE,

16 FOUR YEARS ON COUNT TWO, AND THREE YEARS ON COUNTS ELEVEN,

17 FOURTEEN, FIFTEEN, SIXTEEN AND EIGHTEEN, ALL SUCH TERMS TO RUN

18 CONCURRENTLY.

19 WHILE ON SUPERVISED RELEASE THIS DEFENDANT SHALL

20 ABIDE BY THE STANDARD CONDITIONS OF RELEASE AS PROMULGATED BY

21 THE UNITED STATES SENTENCING COMMISSION NOW OR HEREAFTER.

22 IN ADDITION TO THE SENTENCE JUST ANNOUNCED, THIS

23 DEFENDANT SHALL PAY A SPECIAL ASSESSMENT, AS REQUIRED BY LAW,

24 OF $50 ON EACH COUNT, FOR A TOTAL OF $400 DURING THE FIRST SIX

25 MONTHS OF SUPERVISED RELEASE UNLESS PAID PRIOR TO THE

1 COMMENCEMENT OF SUPERVISION.

2        THE COURT IS IN A QUANDARY WITH RESPECT TO ITS LAST

3 OBLIGATION. MR. EDMOND HAS TESTIFIED BEFORE THIS COURT UNDER

4 OATH, AS PREVIOUSLY INDICATED, BEFORE MAGISTRATE PATRICK J.

5 ATTRIDGE ON MAY 2, 1990, THAT HE WAS WITHOUT FUNDS AND

6 INDIGENT.

7        COUNSEL AND THIS DEFENDANT ARE BOTH AWARE OF THE

8 MILLIONS OF DOLLARS THAT WERE INVOLVED IN THIS CONSPIRACY.

9 WHAT HAPPENED TO THOSE MILLIONS OF DOLLARS OTHER THAN THEIR USE

10 FOR THE PURCHASE OF COCAINE, BUT WHAT HAPPENED AFTER THEY WERE

11 REPACKAGED AND SOLD ON THE STREETS FOR THE PROFIT OF THIS

12 CONSPIRACY THIS COURT IS NOT AWARE OF.

13        IT DOES NOT KNOW WHAT THIS DEFENDANT AND HIS CO-

14 CONSPIRATORS DID WITH THE MONEY. THERE IS NOTHING BEFORE THE

15 COURT AS TO THAT UPON WHICH IT CAN MAKE A FINDING OF FACT THAT

16 THIS DEFENDANT HAS THE RESOURCES TO PAY A FINE, THE COST OF

17 INCARCERATION, OR THE COST OF SUPERVISION.

18        THAT MONEY WENT SOMEWHERE, BUT IN VIEW OF THE

19 STRICTURES OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND THE

20 SENTENCING REFORM ACT OF 1984, AS AMENDED, THIS COURT IS LEFT

21 HELPLESS AND WITHOUT THE ABILITY TO ORDER THE PAYMENT OF A

22 FINE, THE COST OF INCARCERATION OR SUPERVISION, AND THEREFORE,

23 WILL NOT MAKE SUCH AN ORDER IN THIS CASE.

24        THAT IS ONE OF THE BENEFITS OF THE LAW THAT MR.

25 EDMOND WILL GET, I GUESS, BECAUSE OF THE INABILITY OF THE

1  GOVERNMENT OR THE PROBATION OFFICER TO LOCATE THE MONEYS THAT

2  HE MAY VERY WELL HAVE UNDER HIS CUSTODY OR CONTROL.

3        IF THE DAY EVER COMES THAT THEY ARE LOCATED, PERHAPS

4  THAT CAN BE DEALT WITH IN A SEPARATE PROCEEDING ON THE BASIS OF

5  HIS TESTIMONY BEFORE THE MAGISTRATE ON MAY 2, 1990.

6        THE CLERK JUST HANDED ME A NOTE INDICATING YOU WISH

7  TO CHANGE YOUR RECEIPT AND ACKNOWLEDGMENT FORM ABOUT INACCURACY,

8  FROM WHAT YOU SIGNED BEFORE.  YOU NOW SAY THAT THERE ARE

9  INACCURACIES, IS THAT RIGHT, MR. EDMOND?

10       **THE DEFENDANT:**  YES, SIR.

11       **THE COURT:**  ALL RIGHT.  IF YOU WANT TO, YOU CAN DO

12  SO, AND HAND IT BACK TO THE CLERK AND MR. ELLENBOGEN.

13       THAT IS THE JUDGMENT AND SENTENCE OF THE COURT.  DOES

14  ANYBODY HAVE ANYTHING TO SAY?

15       **MR. ELLENBOGEN:**  ONE FURTHER ITEM, YOUR HONOR.  SINCE

16  MR. EDMOND'S ARREST, HE HAS BEEN MAINTAINED IN A LOCKDOWN

17  SITUATION.  I WOULD ASK THE COURT AS PART OF ITS JUDGMENT AND

18  COMMITMENT TO MAKE A RECOMMENDATION THAT THE DEFENDANT NO

19  LONGER BE KEPT IN A LOCKDOWN SITUATION.

20       HE IS BEING HELD IN ISOLATION, NO PRIVILEGES, LIMITED

21  ACCESS TO ANY FACILITIES THAT MIGHT BE AVAILABLE TO HIM, AND

22  ANY REASON THAT MIGHT HAVE BEEN PRESENT WHEN THIS CASE FIRST

23  ENTERED THE SYSTEM THAT MIGHT JUSTIFY THE HEIGHTENED SECURITY

24  CONCERNS HAVE CERTAINLY DISSIPATED OR VANISHED AS OF THIS

25  JUNCTURE.

1      **THE COURT:** I DON'T KNOW WHETHER THEY HAVE DISSIPATED

2  OR VANISHED BECAUSE THE COURT RECEIVED A THREAT, I WILL TELL

3  YOU RIGHT NOW FROM THIS BENCH, WITHIN THE LAST 48 HOURS VIA THE

4  TELEPHONE.

5      **MR. ELLENBOGEN:** I WOULD SUBMIT, YOUR HONOR, THAT DID

6  NOT COME FROM THIS DEFENDANT.

7      **THE COURT:** I DON'T KNOW WHO IT CAME FROM. GO AHEAD.

8  YOU MAY PROCEED.

9      **MR. ELLENBOGEN:** I WOULD NOTE FOR THE COURT THAT HE

10  HAS HAD A SPOTLESS RECORD IN INSTITUTIONS AND WOULD ASK THE

11  COURT IN EXERCISING ONE OF THOSE LIMITED AREAS OF COMPASSION

12  THE COURT CAN, THAT THE COURT ALLOW THE DEFENDANT TO BE IN THE

13  GENERAL POPULATION WHEREVER HE IS CONFINED.

14      **THE COURT:** MR. ELLENBOGEN, I ASSUME YOU KNOW AND

15  THINK YOU KNOW THAT THE COURT HAS NO DISCRETION TO INTERFERE

16  WITH THE MANAGEMENT OF OUR PRISON SYSTEMS AND THE

17  CLASSIFICATION AND LOCATION OF PRISONERS WITHIN THE FEDERAL

18  BUREAU OF PRISONS.

19      WE DO HAVE THE POWER TO MAKE RECOMMENDATIONS AS TO

20  THE PLACE AND LOCATION OF CONFINEMENT. UNDER THE CIRCUMSTANCES

21  OF THIS CASE, THE COURT WILL RELY UPON THE INTEGRITY AND THE

22  WISDOM OF THE BUREAU OF PRISONS AND ITS CLASSIFICATION SYSTEM

23  TO DEAL WITH THAT ISSUE. I CANNOT DO THAT.

24      I HAVE NOT DONE IT FOR OTHERS AND WILL NOT DO IT IN

25  THIS CASE. IT IS UP TO THEM. I HAVE NOT FASHIONED MY SENTENCE

1  IN ACCORDANCE WITH THAT IN ANY EVENT.

2          SO THAT WILL BE UP TO THEM TO DECIDE, AND I WISH MR.

3  EDMOND GOOD LUCK.

4          YOU HAVE 10 DAYS WITHIN WHICH TO APPEAL.

5      [PROCEEDINGS CONCLUDED AT 12:55 P.M.]

6                  CERTIFICATE OF REPORTER

7          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

8  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9

10

11  WILLIAM D. MCALLISTER
    OFFICIAL COURT REPORTER